# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAELA ESPINAL, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-05807-LAK |
| Plaintiff, | |
| v. | |
| DIDI GLOBAL INC. F/K/A XIAOJU KUAIZHI INC., et al, | |
| Defendants. | |
| JATIN CHOPRA, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-05973-LAK |
| Plaintiff, | |
| v. | |
| DIDI GLOBAL INC. F/K/A XIAOJU KUAIZHI INC., et al, | |
| Defendants. | |
| MICHAL KUCHARSKI, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-06603-LAK |
| Plaintiff, | |
| v. | |
| DIDI GLOBAL INC. f/k/a XIAOJU KUAIZHI INC., et al, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF ALAKA HOLDINGS LTD.'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD <u>PLAINTIFF, AND APPROVAL OF LEAD COUNSEL</u>**

Alaka Holdings Ltd. ("Alaka") respectfully submits this memorandum of law in support of its motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*, and 15 U.S.C. § 77z-1, *et seq*[1] (the "PSLRA") for an Order: (1) consolidating the above-captioned related actions; (2) appointing Alaka as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B); (3) approving Alaka's selection of Glancy Prongay & Murray LLP as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.    PRELIMINARY STATEMENT

This is a class action on behalf of persons and entities other than Defendants that purchased or otherwise acquired DiDi Global Inc. ("DiDi" or the "Company") securities (a) pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's June 2021 initial public offering (the "IPO" or the "Offering"); and/or (b) between June 30, 2021 and July 21, 2021, inclusive (the "Class Period").

The PSLRA provides that the Court shall appoint the most adequate plaintiff—*i.e.* the plaintiff most capable of adequately representing the interests of class members—as lead plaintiff. The PSLRA also provides a presumption that the movant with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff."

Alaka believes that it is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on its financial losses suffered as a result of

---

[1] These two sections of the PSRLA (15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1) are nearly identical, except that 78u-4 pertains to the Exchange Act claims, and 77z-1 pertains to the Securities Act claims.

defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Alaka satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as its claims are typical of other class members' claims and it is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Alaka respectfully submits that it is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Alaka's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved because the firm has substantial expertise in securities class actions, and the experience and resources to efficiently prosecute this action.

## II.     FACTUAL BACKGROUND[2]

DiDi purports to be the world's largest mobility technology platform. Its four key components are: shared mobility, auto solutions, electronic mobility, and autonomous driving. The Company claims to be the "go-to brand in China for shared mobility," offering a range of services including ride hailing, taxi hailing, chauffeur, and hitch.

On June 30, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 316,800,000 shares at a price of $14.00 per share. The Company received proceeds of approximately $4.3 billion from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to invest in the Company's technology capabilities, grow its presence in certain international markets, introduce new products and expand existing offerings, and general corporate purposes.

---

[2] This section is adapted from the complaints in the above-captioned actions.

However, on July 2, 2021, the Cyberspace Administration of China ("CAC") stated that it had launched an investigation into DiDi to protect national security and the public interest. It also reported that it had asked DiDi to stop new user registrations during the course of the investigation. On this news, the Company's share price fell $0.87, or approximately 5.3%, to close at $15.53 per share on July 2, 2021, on unusually heavy trading volume.

On July 5, 2021, *The Wall Street Journal* reported that the CAC had asked the Company as early as three months prior to the IPO to postpone the offering because of national security concerns and to "conduct a thorough self-examination of its network security." On this news, the Company's stock price fell $3.04 per share, or 19.6%, to close at $12.49 per share on July 6, 2021, on unusually heavy trading volume.

On July 9, 2021, *The Wall Street Journal* reported, among other things, that "China ordered mobile app stores to remove 25 more apps operated by Didi Global Inc.'s [] China arm, saying the apps illegally collect personal data, escalating its regulatory actions against the ride-hailing company."

On July 12, 2021, before the market opened, the Company issued a press release announcing that "[t]he Company expects that the app takedown may have an adverse impact on its revenue in China." On this news, the Company's share price fell $0.87 per share, or approximately 7.23%, to close at $11.16 per share on July 12, 2021, further damaging investors.

On July 18, 2021, *The Wall Street Journal* published an article entitled "In the New China, Didi's Data Becomes a Problem" which reported on the amount and types of data the Company holds and compiles, including that, among other things, "[u]sers turn over their cellphone numbers, which in China are linked to their real names and identifications"; that "[t]hey also often voluntarily share photos, frequent destinations such as home and office, their

gender, age, occupation and companies"; that "[t]o use other Didi services such as carpooling or bike sharing, customers might also have to share other personal information including facial recognition data"; that "[d]rivers must give Didi their real names, vehicle information, criminal records, and credit- and bank-card information"; that "[t]he 25 million daily rides on its platform in China feed a database of pickup points, destinations, routes, distance and duration"; and that "a Guangdong province transportation official said the company hadn't fully complied with regulations." On this news, the Company's share price fell $0.91 per share, or 7.6%, to close at $11.06 per share on July 19, 2021, further damaging investors.

Finally, on July 22, 2021, before the market opened, *Bloomberg* published an article entitled "China Weighs Unprecedented Penalty for Didi After U.S. IPO" which reported, *inter alia*, that "Chinese regulators are considering serious, perhaps unprecedented, penalties for Didi Global Inc. after its controversial initial public offering last month" including "a fine, suspension of certain operations or the introduction of a state-owned investor." The article also raised the possibility of a "forced delisting or withdrawal of Didi's U.S. shares," and that "Beijing is likely to impose harsher sanctions on Didi than on Alibaba Group Holding Ltd., which swallowed a record $2.8 billion fine." On this news, the Company's share price fell $3.44 per share, or nearly 30%, over the next two trading days to close at $8.06 per share on July 23, 2021, further damaging investors.

The complaints filed in the above-captioned actions allege that in the Registration Statement and throughout the Class Period the defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies by failing to disclose that: (i) DiDi's apps did not comply with applicable laws and regulations governing privacy protection and the collection of personal information; (ii) the CAC had already asked

4

DiDi weeks or months prior to the IPO to delay its IPO to conduct a self-examination of its network security and because of national security concerns; (iii) the Company was likely to incur heightened regulatory scrutiny and adverse regulatory action by ignoring the CAC's request to postpone the IPO; (iv) as a result of the foregoing, DiDi's apps were reasonably likely to be taken down from app stores in China, which would have an adverse effect on its financial results and operations; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the class members have suffered significant losses and damages.

## III.    PROCEDURAL BACKGROUND

On July 6, 2021, Plaintiff Rafaela Espinal commenced a securities class action against DiDi and certain of its executive officers and directors, as well as the underwriters of DiDi's IPO, captioned *Espinal v. DiDi Global Inc. et al*, Case No. 21-cv-05807 (the "*Espinal* Action"). It is brought pursuant to the Securities Act and Exchange Act on behalf of (1) persons that acquired DiDi shares pursuant and/or traceable to the Registration Statement and/or (2) persons that acquired DiDi securities between June 30, 2021 and July 2, 2021, inclusive.

On July 12, 2021, Plaintiff Jatin Chopra filed a substantially similar lawsuit, captioned *Chopra v. DiDi Global Inc., et al*, Case No. 21-cv-05973 (the "*Chopra* Action"). It is also brought pursuant to the Securities Act and Exchange Act on behalf of (1) persons that acquired DiDi shares pursuant and/or traceable to the Registration Statement and/or (2) persons that acquired DiDi securities between June 30, 2021 and July 2, 2021, inclusive.

On August 4, 2021, Plaintiff Michal Kucharski filed a substantially similar lawsuit, except with a longer class period, captioned *Kucharski v. DiDi Global Inc., et al*, Case No. 21-cv-06603 (the "*Kucharski* Action," and together with the *Espinal* Action and the *Chopra* Action, the "Related Actions"). It is brought pursuant to the Securities Act and Exchange Act on behalf of (1) persons that acquired DiDi shares pursuant and/or traceable to the Registration Statement and/or (2) persons that acquired DiDi securities between June 30, 2021 and ***July 21, 2021***, inclusive.[3]

## IV. ARGUMENT

### A. The Related Actions Should be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each action alleges violations of the Securities Act and Exchange Act, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011)

---

[3] There are three other actions pending in the United States District Court for the Central District of California that collectively allege claims substantially identical to the claims in the Related Actions. *See Franklin v. DiDi Global Inc., et al*, Case No. 2:21-cv-05486-AB-SK (C.D Cal., Filed July 7, 2021); *Jiao v. DiDi Global Inc., et al*, Case No. 2:21-cv-06113-GW-PLA (C.D. Cal., Filed July 29, 2021); *Hu v. DiDi Global Inc., et al*, Case No. 2:21-cv-07104-FLA-PLA (C.D. Cal., Filed September 2, 2021). Alaka is concurrently filing a motion for consolidation, appointment as lead plaintiff, and approval of counsel in the Central District of California. If appointed as lead plaintiff, Alaka will endeavor to have the actions proceed in a single district.

(Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

### B.    Alaka Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"— *i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

As set forth below, Alaka satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements for appointment as lead plaintiff. Alaka has, to the best of its

knowledge, the largest financial interest in this litigation and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Alaka is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the class. Accordingly, Alaka respectfully submits that it should be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1.    Alaka Filed a Timely Motion

Alaka has made a timely motion in response to a PSLRA early notice. On July 6, 2021, notice was published in connection with this action. *See* Declaration of Gregory B. Linkh ("Linkh Decl.") Ex. A. Therefore, Alaka had sixty days (*i.e.*, until September 7, 2021) to file a motion to be appointed as lead plaintiff. As a purchaser of DiDi securities traceable to the Registration Statement and during the Class Period, Alaka is a member of the proposed class and has hereby timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in its PSLRA certification, Alaka attests that it has reviewed the complaint, and is willing to serve as a representative of the class. *See* Linkh Decl., Ex. B. Accordingly, Alaka satisfies the first requirement to serve as lead plaintiff for the class.

### 2.    Alaka Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii). At the time of this filing, Alaka believes that it has the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

Alaka purchased DiDi securities traceable to the Registration Statement and during the Class Period, and as a result, suffered financial harm. *See* Linkh Decl., Ex. C. To the best of its knowledge, Alaka is not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Alaka believes it has the "largest financial interest in the relief sought by the Class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class. *See Varghese*, 589 F. Supp. 2d at 396.

### 3.    Alaka Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc*. 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv– 7281 (JFK), 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

a)    **Alaka's Claims Are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Kuriakose*, 2008 WL 4974839, at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Alaka's claims are typical of the claims asserted by the proposed members of the class. Like all members of the class, Alaka alleges that Defendants' material misstatements and omissions concerning DiDi's business, operations, and financial prospects violated the federal securities laws. Alaka, like all members of the class, purchased DiDi securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Alaka's interests and claims are "typical" of the interests and claims of the class.

b)    **Alaka Is an Adequate Representative**

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

 Alaka has demonstrated its adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and its financial losses ensure that it has sufficient incentive to provide vigorous advocacy. *See* Linkh Decl., Ex. C. Alaka is not aware of any conflict between its claims and those asserted on behalf of the class. Brahmal Vasudevan ("Vasudevan"), who signed the certification on behalf of Alaka, is a Director and Owner of Alaka. Vasudevan is the Founder and Chief Executive Officer of Creador, a private equity firm focused on the high-growth markets in South and Southeast Asia. Vasudevan earned an MBA from Harvard Business School, and graduated with First Class

Honors in Aeronautical Engineering from Imperial College in London. As such, there is no question that Alaka is adequate to represent the class.

### C.    The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). Here, Alaka has retained Glancy Prongay & Murray LLP as lead counsel to pursue this litigation on its behalf and will retain the firm as the class's lead counsel in the event it is appointed lead plaintiff. Glancy Prongay & Murray LLP possesses extensive experience in securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Linkh Declaration as Exhibit D. Thus, the Court may be assured that, by granting the Motion, the class will receive the highest caliber of legal representation.

## V.    CONCLUSION

For the foregoing reasons, Alaka Holdings Ltd. respectfully requests that the Court grant its Motion and enter an Order (1) consolidating the Related Actions; (2) appointing Alaka as Lead Plaintiff; (3) approving its selection of Glancy Prongay & Murray LLP as Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: September 7, 2021                **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Alaka Holdings Ltd. and Proposed*
*Lead Counsel for the Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On September 7, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 7, 2021, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh