

September 9, 2024

**BY ECF**
Honorable Lewis A. Kaplan
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *In re Didi Global Inc. Securities Litigation*, Case No. 1:21-cv-05807-LAK:
     <u>Plaintiffs' Motion to Compel Production of Documents from DiDi Defendants</u>

Dear Judge Kaplan:

   Plaintiffs served their initial requests for production of documents ("RFP") on May 22, and DiDi Global, Inc., and individual defendants Will Wei Cheng, Jean Qing Liu, Stephen Jingshi Zhu, Alan Yue Zhuo, and Adrian Perica ("DiDi"), collectively served their responses and objections ("R&O") on June 25.[1] Following an initial meet-and-confer, Plaintiffs modified some requests and expressly withdrew others. Thereafter, protracted negotiations have spanned two months.[2] The matters set forth below represent the issues as to which Plaintiffs now seek judicial intervention.[3]

   Thus far, DiDi has not produced a single document – even failing to timely produce insurance policies. Plaintiffs respectfully request that in addition to ordering DiDi to produce documents responsive to individual RFPs, the Court resolve several overarching discovery issues which will likely recur with respect to future discovery. *See Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 162 F.R.D. 25, 28 (S.D.N.Y. 1995) (Rule 16 vests the Court with "broad supervisory powers" over the conduct of discovery).

  **A. DiDi Must Produce Documents Pertaining to All Relevant PRC Agencies**

   Despite the Complaint's allegations that multiple agencies had jurisdiction to enforce the laws and regulations that DiDi allegedly violated (*see, e.g.*, Cmplt. at ¶251 & n.102), DiDi initially refused to produce documents pertaining to any PRC agency except the Cyberspace Administration of China ("CAC").[4] DiDi later agreed to produce documents pertaining to seven

---

[1] Mr. Perica is excluded from this motion as he is an outside director and situated differently than DiDi's officers.

[2] Exs. A and B hereto are the initial and modified RFPs. Exs. C and D are two of DiDi's responses to the modified RFPs, served via letter. Mindful not to burden the Court with the parties' complete letter exchange, Plaintiffs attach only their letter of July 10 and DiDi's July 18 and August 9 letters to comply with Local Civil Rule 37.1.

[3] Establishing the scope of the requests will also inform the parties' negotiations on custodians and search terms.

[4] *See* Ex. C at 4 ("**[RFP 6]:** … Documents relating to the year-long investigation of DiDi in connection with its IPO and violations of various laws (including but not limited to cybersecurity, national security, data privacy and personal privacy laws) by numerous PRC government agencies … **Response:** … DiDi will … produce relevant, non-privileged documents, if any, responsive to this Request that reference discussions with the CAC about DiDi's IPO …").

1

agencies that descended on DiDi's offices in July 2021. Plaintiffs seek documents pertaining to *all* PRC agencies that communicated with DiDi both before and after the IPO about laws and regulations pertaining to cybersecurity, data privacy, and national security or the IPO.

Because Plaintiffs could not name the agencies that **DiDi knows it dealt with**, DiDi called the request a "fishing expedition." When Plaintiffs *did* name two agencies, the Chinese Securities Regulatory Commission ("CSRC") and the Ministry of Industry and Information Technology ("MIIT"), DiDi refused to include them in their searches, bizarrely agreeing to produce responsive documents only if located by coincidence. Reports indicate that in June 2021, DiDi had discussions with the CSRC, the National Development Reform Commission ("NDRC"), and CAC, *inter alia*, about its IPO plans; while the CAC, CSRC and NDRC may have been generally supportive, the CSRC and NDRC apparently joined the CAC in seeking a delay because of data security issues. *See, e.g.,* Cmplt. at ¶¶173-75 & nn. 65-66, and Ex. 14 (Dkt. No. 106-1 at 80). Thus, the CSRC and NDRC likely participated in the CAC Directives. Also, if DiDi will raise in its defense that the CSRC green lit the IPO, DiDi must produce evidence of its exchanges with the CSRC. The MIIT and NDRC are also relevant because, along with the CAC, they promulgated the Measures of Cybersecurity Review (Cmplt. at ¶¶116-18 & n. 43), pursuant to which the cybersecurity investigation of DiDi proceeded. *Id.; see also* Cmplt. at ¶19 n.4 and Ex. 2 (Dkt. No. 106-1 at 8) (describing the punishments meted out to thousands of apps found in violation of law by both the CAC and MIIT). Indeed, the MIIT gave a press briefing *on the day* multiple agencies raided DiDi, specifically noting the DiDi app removals in its efforts to rectify violations of data privacy laws.[5]

Consequently, with respect to **RFPs 1, 2, 5, 6, 9, 11, 12, 13, 14, 18, 28, 32, 40, & 41**, DiDi must search for responsive documents pertaining to *all* agencies that, before or after the IPO, communicated with DiDi concerning the IPO, or the laws and regulations referenced in the complaint or found Didi in violation thereof. At a minimum, Didi must add the CSRC, MIIT and NDRC to all searches.

### B. DiDi Must Produce Discovery Pertaining to Its Violations of Laws and Regulations Enumerated in the Complaint and Any Investigations Thereof

One point of contention surprisingly concerns the scope of Plaintiffs' claims. Repeatedly, Plaintiffs have explained to DiDi that they allege: (1) that DiDi made false statements of material fact in the Underwriting Agreement (publicly filed as part of the Registration Statement) that it was in compliance with applicable laws and regulations as of the date of its June 30, 2021, IPO, and that there were no government actions, including inquiries and investigations, that would have a Material Adverse Effect on DiDi; and (2) the Officer Certificates misrepresented the continued validity of those representations, as well as that there hadn't been any development having a Material Adverse Effect on DiDi as of the IPO closing. The officers issued the certificates *after* the announcement on the morning of the closing, July 2, 2021, that DiDi was the subject of a cybersecurity investigation and banned from taking on new customers. *See* Cmplt. at ¶¶367-380 and ¶¶202-233, respectively. (Dkt. No. 106). The Court held that these allegations state a §11 claim. *See* Dkt. No. 158 at 30-38.

DiDi's insists that the case is only about whether the CAC directed DiDi to perform a self-inspection to ensure privacy and data security prior to its U.S. IPO.[6] DiDi expressly ignores

---

[5] http://english.scio.gov.cn/pressroom/node_8025087.htm (relevant excerpts attached as Ex. E hereto, pgs. 3-4).

[6] *See, e.g.,* Ex. C at 4 (in response to RFP 5: "[D]ocuments relating to any investigations or reviews into DiDi's

allegations pertaining to the scope of the post-IPO investigation: The CAC-led, multiagency investigation focused upon *both* the decision to go forward with the IPO in defiance of the CAC Directive *and* DiDi's pre-IPO violations of laws and regulations. *See, e.g.,* Cmplt. at ¶¶181-186. Moreover, Plaintiffs allege specific laws and regulations that pertain to DiDi's business and DiDi's acknowledgment of the importance of compliance. Cmplt. at ¶¶97-126.

As a separate argument against producing evidence pertaining to violations of those laws and regulations, DiDi disingenuously inverts the allegations of the complaint: "[N]owhere in the Complaint do Plaintiffs allege that DiDi failed to disclose to the market that DiDi was not in compliance with one or many laws, or that they had a duty to so disclose." Ex. D at 8 n.4. Plaintiffs allege that DiDi *affirmatively misstated* (in the Underwriting Agreement and in Officer Certificates) that it was in compliance with applicable laws and regulations, and that there were no government actions, investigations or inquiries – other than those disclosed in the Registration Statement – that could result in a Material Adverse Event, not that DiDi *omitted* its violations.

Despite insisting – on June 25, July 18 and August 9 – that the case only concerns the CAC Directives, DiDi asserts that its August 9 amended R&Os to **RFPs 1, 2, 5, 6, 9, 14, 32, 40 & 41** removed that limitation. However, because DiDi only did so as a compromise on these RFPs, while refusing to acknowledge the case concerns false statements about compliance with laws and regulations,[7] Plaintiffs fear DiDi may revert to its earlier position in future discovery if the Court does not put the matter to rest. *See Int'l Bhd. of Teamsters*, 162 F.R.D. at 27-28 ("an issue of relevancy that has broad implications for discovery in this action" can be addressed prospectively).

### C. DiDi Seeks to Impermissibly Narrow The Scope of Specific RFPs

<u>RFP 5 and 6</u>:  RFP 5 seeks production "[f]or the time period from July 2, 2021 to July 21, 2022, [of] Documents evidencing, referring or relating to DiDi's cybersecurity review announced on July 2, 2021." RFP 6 similarly seeks production: "[f]or the time period from June 29, 2021 to July 21, 2022, [of] Documents relating to the year-long investigation of DiDi in connection with its IPO and violations of various laws (including but not limited to cybersecurity, national security, data privacy and personal privacy laws) by numerous PRC government agencies … This request is limited to "transcripts, notes, recordings, interviews, findings, sanctions, reports, memoranda, orders, regulatory and official actions, and communications with government regulators."

DiDi seeks to limit its production to documents that "reference an investigation." Ex. D at 8. A document does not have to make reference to "the cybersecurity review" or "the investigation" before it is produced. Also, although both requests specify a time period, DiDi objects (to RFP 6):

> "[Y]ear-long investigation" and "relating to" [are] vague and ambiguous. Moreover, DiDi objects to this Request as overbroad and unduly burdensome to the extent the

---

compliance with law after the IPO are not relevant to the issues in dispute. Instead, Plaintiffs' claims rest on its allegations that DiDi failed to inform the market that the CAC directed it to postpone the IPO until it had completed a self-inspection of its business ... *See* SAC ¶ 31."; Ex. D at 6 (in response to RFP 1: "Notably, however, the core allegations in the Complaint relate solely to the CAC's purported directive that DiDi postpone its IPO until it had completed a 'self-inspection' to the CAC's satisfaction. *See* Cmplt. ¶ 10.").

[7] In an August 28 letter about **RFP 27**, DiDi would "not agree to 'acknowledge' that Plaintiffs' interpretation of the scope of this case is correct." Unless the Court rules that misstatements in the Underwriting Agreement and Officer Certificates are part of the claims in this action, Plaintiffs cannot be certain that DiDi's discovery responses are complete.

phrase "relating to" this undefined investigation can be read broadly to seek all documents pertaining to DiDi's compliance with an unlimited number of laws. This, in turn, would effectively seek all documents pertaining to DiDi's business …

*Id.* But Plaintiffs *do not seek* the documents evidencing the millions of violations found by the CAC; indeed, RFP 6's enumeration of the types of documents sought expressly excludes them. Plaintiffs request that the Court order production of all such documents that *evidence or relate* to the cybersecurity review and CAC-led investigation, not just those that expressly *refer* to them.

RFP 18(i): For the period July 2-23, 2021, "Documents evidencing or relating to Defendants' inquiries, analyses, discussions, or conclusions concerning the impact of the July 2, 4 and 9 Penalties on DiDi's business and financial performance." Various defendants' assessments of the detrimental impact of these penalties are relevant to the elements of materiality and falsity as to the §11 claim, *cf.* MTD Order at 35-36 (the July 2, 4 and 9 announcements "support the inference that … [DiDi] was more than likely not in compliance in late June, when the registration statement became effective"), as well as to scienter and loss causation for the §10 claims.

RFP 18(ii): For the period July 2-23, 2021, "Defendants' inquiries, analyses, discussions, or conclusions concerning the likelihood the July 2 Penalties would have a Material Adverse Effect on DiDi." Even though the Officer Certificates delivered at the July 2 closing assured the underwriters of no MAE, at first, DiDi would not produce anything (Ex. C at 8), only later agreeing to produce documents from July 2 – the day the penalties were announced and the Officer Certificates issued. Ex. D at 11. Although DiDi agreed to extend the period to July 9, the effects of the CAC's punitive actions taken two days after the IPO were likely analyzed and discussed for more than a week. Seeking production through July 23, 2021 is a very reasonable request.

RFP 18(iv): For the period July 2-23, 2021, "communications with the CAC or other government regulators concerning the July 2, 4 and 9 Penalties." DiDi ultimately agreed to search for communications with seven PRC regulators and produce responsive documents as to all PRC regulators that are otherwise collected. As set forth in Sec. A, above, this is insufficient.

RFP 47(c): "All Documents evidencing, referring or relating to, or reflecting the delisting of DiDi's ADSs from the NYSE, including all discussions thereof and any suggestions or directives from the CAC." Ex. A at 20. Delisting was mentioned as a possible CAC penalty before the market opened on July 22, and is the corrective disclosure that closes the class period. Cmplt. ¶¶18; 253-54. Moreover, in its Initial Disclosures DiDi specified "Documents relating to the delisting of DiDi from the NYSE" as a category of documents upon which it will rely in its defense. *See* Ex. F at 7.

RFP 47(d): "All Documents evidencing, referring or relating to, or reflecting Ant Group's initial public offering, including the governmental investigations and the suspension of the initial public offering." The Complaint referenced Ant's blocked IPO as evidence of the *known* risk of defying PRC regulators, especially because one of DiDi's directors was the CEO of Alibaba Group, which controlled Ant. Cmplt. at ¶190. The documents are relevant to the Item 303 analysis.[8]

---

[8] Plaintiffs misnumbered four requests as "RFP 47." Ex. A at 20. Due to this error, the modified RFPs only referred to the first RFP 47. Ex. B at 11. Despite Plaintiffs *not* expressly withdrawing (what DiDi has labelled as) "RFPs 47(b)-(d)," as they had RFPs 19, 21, 26, 30, 34, 36, 37 and 48 (Ex. B at 7-11), DiDi claims they relied to their detriment on this purported withdrawal in agreeing to amend their responses to completely unrelated requests.

Dated: September 9, 2024 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Laurence M. Rosen*
Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
Robin Bronzaft Howald
275 Madison Ave, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com
jchen@rosenlegal.com
dtyrekarp@rosenlegal.com
rhowald@rosenlegal.com

*Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Laurence M. Rosen*