UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

This document applies to:          All Actions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master Docket
21-cv-5807 (LAK)

## MEMORANDUM OPINION

Appearances:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/22/25

Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
Robin Bronzaft Howald
THE ROSEN LAW FIRM, P.A.

Gregory Linkh
GLANCY PRONGAY & MURRAY LLP

*Attorneys for Plaintiffs*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP

Scott Musoff
Robert Fumerton
Michael Griffin
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

*Attorneys for Defendant Didi Global Inc.*

Jonathan Rosenberg
Abby F. Rudzin
Shane A. Hunt
William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
*Attorneys for Defendants Goldman Sachs (Asia)
L.L.C., Morgan Stanley & Co. LLC, J.P.
Morgan Securities LLC, BofA Securities Inc.,*

*Barclays Capital Inc., Citigroup Global Markets Inc., China Renaissance Securities (US) Inc., HSBC Securities (USA) Inc., UBS Securities LLC, and Mizuho Securities USA LLC*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Will Wei Cheng, Jean Qing Liu, Stephen Jingshi Zhu, Alan Yue Zhuo, and Daniel Yong Zhang*

Sheryl Shapiro Bassin
Ignacio E. Salceda (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
*Attorneys for Defendant Zhiyi Chen*

Matthew S. Kahn
Michael D. Celio (*pro hac vice*)
Kevin J. White
GIBSON DUNN & CRUTCHER LLP
*Attorneys for Defendant Martin Chi Ping Lau*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Adrian Perica and Kentaro Matsui*

Jeffrey T. Scott
Andrew M. Kaufman
SULLIVAN & CROMWELL LLP
*Attorneys for Defendant Kentaro Matsui*

LEWIS A. KAPLAN, *District Judge.*

Plaintiffs move to compel deposition testimony from the Rule 30(b)(6) witness for

defendant DiDi Global, Inc. ("DiDi") on DiDi's interactions with Chinese regulators. DiDi contends

that Chinese data security, state secret, and criminal laws prohibit disclosure of the information

3

sought. Plaintiffs counter that Chinese law does not bar discovery and, even if it purports to do so, that the Court should compel testimony.

### Facts and Procedural History

On May 6, 2024, plaintiffs issued a Rule 30(b)(6) deposition notice to DiDi. The list of topics covered by the notice included "Discussions and Communications with [Chinese] Regulators Pre-IPO."[1] At a conference with the parties held approximately two weeks later, the Court instructed the parties, "If a foreign party invokes blocking statutes and the like, it will not stop me from ordering discovery and a timetable that suits the needs of this case in this court."[2] DiDi's counsel assured the Court, "Defendants are not objecting to production based on any blocking statutes or foreign statutes."[3] After plaintiffs issued an amended notice, DiDi moved on July 8, 2024, for a protective order with respect to the deposition because it allegedly was premature and the noticed topics were objectionable.[4] DiDi did not raise any concerns about blocking statutes.[5] On September 30, 2024, DiDi served its responses to the amended notice. DiDi objected to each noticed topic to the extent it sought "information prohibited from disclosure by . . . any relevant [Chinese] laws." Plaintiffs served an amended notice on October 4, 2024, and Didi served responses to that

---

[1]      Dkt 195-2 at 9–10.

[2]      Dkt 244-1 at 5.

[3]      *Id.*

[4]      Dkt 195. The Court denied this motion as moot. Dkt 198.

[5]      Dkt 195 at 1–4.

notice on October 24, 2024, containing the same objections.

On October 30 and 31, 2024, plaintiffs took the deposition of DiDi's Rule 30(b)(6) witness, Jimin Pang. DiDi did not move for a protective order before the deposition. At the deposition, DiDi's counsel objected to questions about DiDi's interactions with Chinese regulators, stating that the witness could not discuss the specifics of any meetings with Chinese regulatory agencies. Based on those objections, Mr. Pang refused to answer fully dozens of questions posed by plaintiff's counsel. On November 26, 2024, DiDi sent a letter to plaintiffs explaining that Chinese law prevents DiDi from providing "all forms of discovery, including document productions and interrogatories," with respect to DiDi's interactions with Chinese regulators.

On December 17, 2024, plaintiffs moved to compel deposition testimony from DiDi's Rule 30(b)(6) witness on DiDi's interactions with Chinese regulators. In support, plaintiffs attached an expert report from a professor at Beijing Normal University Law School, Zhang Hong. Mr. Hong opines that (1) the vast majority of the requested information does not concern state secrets, intelligence, or other topics implicated by Chinese law, and (2) to the extent that any of the requested information would implicate those topics, disclosure under Chinese law is permitted unless a government authority has designated the information as confidential.

DiDi has submitted reports from two experts: Wang Jingbo, a professor at Heilongjiang University, and Jacques deLisle, a professor at the University of Pennsylvania who specializes in Chinese law and politics. Mr. Jingbo opines that (1) DiDi may not disclose *any* information stored in China — including deposition testimony about such information — without Chinese government authorization, (2) disclosing the information at issue would violate Chinese criminal law, government work secrets, and other laws, and (3) DiDi and its employees could face

5

severe legal liabilities if they disclosed the information at issue. Mr. deLisle opines that Chinese law concerning state secrets, intelligence, data protection, and other areas would be construed and applied to prohibit DiDi's disclosure of the information sought by plaintiffs.

DiDi submit also a declaration from its general counsel, Calvin Liu, stating that his "team reached out to the Chinese governmental authority that has supervisory authority over DiDi to seek instruction on whether certain types of information are prevented from disclosure for the purpose of the U.S. litigation" before the deposition. Mr. Liu does not say when or with whom specifically this communication occurred. He adds that "[a]ccording to the instruction my team received from the Chinese governmental authority, the questions that Jimmy Pang refused to answer in his deposition invoke answers . . . the disclosure of which . . . would violate Chinese laws and regulations and is not allowed." Mr. Liu provides no further information about what the instruction was or the legal basis for the instruction.

### *Discussion*

"Foreign blocking statutes often have been invoked in an attempt to bar discovery in an American lawsuit."[6] When such a statute is invoked, the first question is whether the statute in fact prevents disclosure.[7] Even where a foreign law does preclude disclosure, the law does not foreclose an order compelling discovery.[8]

---

[6] *Vringo, Inc. v. ZTE Corp.*, No. 14-cv-4988 (LAK), 2015 WL 2380061, at *2 (S.D.N.Y. May 14, 2015).

[7] *Id.*

[8] *Id.* at *3.

6

The Supreme Court has made clear that foreign statutes do not deprive American courts of the power to order parties subject to their jurisdiction to produce evidence even though the act of production may violate such statutes.[9] A district court may require discovery when it has personal jurisdiction over the foreign party notwithstanding provisions of foreign law that would prohibit production. In determining whether to exercise that power, a court should undertake a particularized analysis of the respective interests of the foreign nation and the requesting nation before doing so.[10] That analysis involves consideration of "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."[11] Some courts in this Circuit consider also the hardship of compliance on the party or witness from whom discovery is sought.[12] For present purposes, the Court gives limited weight to this consideration, as it is not among the relevant factors listed by the Supreme Court.[13]

---

[9]

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 28 (1987).

[10]

*Chevron Corp. v. Donziger*, 296 F.R.D. 168, 198 (S.D.N.Y.2013).

[11]

*Id.* at 204 (alteration in original) (quoting *Aérospatiale*, 482 U.S. at 544 n. 28).

[12]

*Id.* (citing cases).

[13]

*Aérospatiale*, 482 U.S. at 544 n. 28.

The parties dispute whether Chinese law prevents disclosure of the solicited testimony. As outlined above, the parties have submitted conflicting expert testimony on this question. Based on these reports, the answer is not clear cut. But regardless of whether Chinese law in fact would prohibit the testimony sought, an order compelling disclosure is appropriate.

This suit arises from DiDi's 2021 initial public offering (IPO) and listing on the New York Stock Exchange. "[T]he United States possesses a keen interest in its securities markets," and "[t]he trading at issue in this action occurred on a United States exchange in stock registered under the Exchange Act."[14] Moreover, "the United States has a substantial interest in fully and fairly adjudicating matters before its courts, and achieving that goal is only possible with complete discovery."[15] To be sure, China has legitimate interests in compliance with its data privacy, state secrets, and criminal laws. But it is not evident that disclosure of information about DiDi's interactions with Chinese regulators would undermine those interests in any material way. "[A] foreign government's failure to express a view that the disclosure at issue [would] threaten[] its national interests militates against a finding that strong national interests of the foreign country are at stake."[16]

Here, there is no reliable evidence that the Chinese government has objected to

---

[14]  *S.E.C. v. Euro Sec. Fund*, No. 98 CIV. 7347 (DLC), 1999 WL 182598, at *4 (S.D.N.Y. Apr. 2, 1999); *see also S.E.C. v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117 (S.D.N.Y. 1981) ("The strength of the United States interest in enforcing its securities laws to ensure the integrity of its financial markets cannot seriously be doubted.").

[15]  *Chevron*, 296 F.R.D. at 206 (cleaned up) (quoting *Gucci Am., Inc. v. Curveal Fashion*, No. 09-cv-8458(RJS)(THK), 2010 WL 808639, at *2 (S.D.N.Y. Mar. 8, 2010)).

[16]  *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 424 (S.D.N.Y. 2016) (quoting *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993)).

disclosure of this information.[17] The "very broad flexibility in defining state secrets" under Chinese law further weakens the nexus between China's legitimate interests and non-disclosure.[18] Accordingly, the balance of national interests — the most important factor in the analysis[19] — favors requiring disclosure.

The other relevant considerations also cut in plaintiffs' favor:

- Whether there is a true conflict between Chinese and U.S. law is debatable.

- The sought-after information is important to plaintiffs' ability to prove their claims, which heavily rely on interactions between DiDi and Chinese regulators.[20]

- The noticed topics for the deposition are specific.

- There are no other readily available means of obtaining the sought-after information. DiDi suggests that plaintiffs can obtain the information through the Hague Convention on Evidence. First, the Supreme Court has declined to "require first resort to Convention procedures whenever discovery is sought from a foreign

---

[17]
As described above, DiDi asserts that (1) its general counsel's team reached out to "the Chinese governmental authority that has supervisory authority over DiDi" prior to the deposition, and (2) it allegedly was informed that "the questions that [the deponent] refused to answer in his deposition invoke answers . . . the disclosure of which . . . would violate Chinese laws[.]" DiDi's submission provides no additional information about what the instruction was or the legal basis for it. On this record, there is not sufficient indication that the Chinese government has expressed a view that the disclosure at issue would violate Chinese law or threaten its national interests.

[18]
*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *13 (D.N.J. Dec. 20, 2021).

[19]
*Chevron*, 296 F.R.D. at 206

[20]
Dkt 158 at 2–7.

9

litigant."[21] Second, courts in this district repeatedly have held that proceeding via the Hague Convention is "not a viable alternative method" of securing discovery from China.[22] "[T]he outcome of a request pursuant to the Convention is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration. Thus, the mere fact that the Hague Convention provides an alternative method for obtaining the documents is not proof that it is necessarily an effective, or efficient, method for doing so in this case."[23]

- Although the information originated in China, "where 'the information cannot be easily obtained through alternative means, the origin of the information can be counterbalanced with the inability to obtain the information through an alternative means, thus favoring disclosure.'"[24]

- While DiDi argues that disclosure would subject it and its deponent to severe criminal sanctions in China, each of the examples cited by their experts involves military-related secrets, collaboration with foreign intelligence services, provision of sensitive information to foreign entities in exchange for money, and/or documents

---

21

*Aérospatiale*, 482 U.S. at 542.

22

*Owen v. Elastos Found.*, 343 F.R.D. 268, 287 (S.D.N.Y. 2023); *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 557 (S.D.N.Y. 2012); *Gucci Am., Inc. v. Weixing Li*, No. 10 CIV. 4974 RJS, 2011 WL 6156936, at *9 (S.D.N.Y. Aug. 23, 2011), *vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014).

23

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 53 (E.D.N.Y. 2010).

24

*Chevron*, 296 F.R.D. at 206 (quoting *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 793 (S.D.N.Y. 2012)).

10

expressly designated as confidential by the Chinese government. None of these circumstances applies here. Moreover, DiDi has provided "no information demonstrating that a Chinese individual or entity has been penalized under the [Data Security Law] or other Chinese laws for compliance with a discovery demand in a U.S. court."[25] And as explained above, there is no reliable evidence that the Chinese government actually has objected to disclosure of the sought after information or threatened DiDi with penalties for complying with a discovery demand.

## *Conclusion*

For the foregoing reasons, plaintiffs' motion to compel (Dkt 244) is GRANTED. Defendant DiDi Global Inc. shall, on a mutually agreeable date, which shall be on or before February 21, 2025, produce a Rule 30(b)(6) witness who shall testify with respect to the topics covered by plaintiffs' October 4, 2024, list of modified deposition topics.

SO ORDERED.

Dated:        January 22, 2025

_____

Lewis A. Kaplan

United States District Judge

---

[25]    *Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 532 (D. Vt. 2023).