# Exhibit 1

O5MCdidC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     JATIN CHOPRA, Individually and
 3   On Behalf of All Others
     Similarly Situated,
 4                   Plaintiffs,
                v.                          21 Civ. 5807 (LAK)
 5
     DIDI GLOBAL INC. F/K/A XIAOJU
 6   KUAIZHI INC., WILL WEI CHENG,
     ALAN YUE ZHUO, JEAN QING LIU,
 7   STEPHEN JINGSHI ZHU, ZHIYI
     CHEN, MARTIN CHI PING LAU,
 8   KENTARO MATSUI, ADRIA PERICA,
     DANIEL YONG ZHANG, GOLDMAN
 9   SACHS (ASIA) L.L.C., MORGAN
     SECURITIES LLC, BOFA
10   SECURITIES, INC., BARCLAYS
     CAPITAL INC., CHINA
11   RENAISSANCE SECURITIES (HONG
     KONG) LIMITED, CHINA
12   INTERNATIONAL CAPITAL
     CORPORATION HONG KONG
13   SECURITIES LIMITED, CITIGROUP
     GLOBAL MARKETS INC., GUOTAI
14   JUNAN SECURITIES (HONG KONG)
     LIMITED, HSBC SECURITIES (USA)
15   INC., UBS SECURITIES LLC, BOCI
     ASIA LIMITED, BOCOM
16   INTERNATIONAL SECURITIES
     LIMITED, CCB INTERNATIONAL
17   CAPITAL LIMITED, CLSA LIMITED,
     CMB INTERNATIONAL CAPITAL
18   LIMITED, FUTU INC., ICBC
     INTERNATIONAL SECURITIES
19   LIMITED, MIZUHO SECURITIES USA
     LLC, AND TIGER BROKERS (NZ)
20   LIMITED,
                   Defendants.
21   ------------------------------x
                                            New York, N.Y.
22                                          May 22, 2024
                                            10:30 a.m.
23   Before:

24                HON. LEWIS A. KAPLAN,

25                                          District Judge
```

O5MCdidC

1                                   APPEARANCES

2    THE ROSEN LAW FIRM PA
          Attorneys for Plaintiffs
3    BY:  LAURENCE ROSEN
          DANIEL TYRE-KARP
4
     SKADDEN ARPS SLATE MEAGHER & FLOM LLP
5         Attorneys for Defendants Didi Global Inc., Will Wei Cheng,
          Alan Yue Zhuo, Jean Qing Liu, Stephen Jingshi Zhu, Adria
6         Perica
     BY:  ROBERT FUMERTON
7         -and-
     QUINN EMANUEL URQUHART & SULLIVAN LLP
8    BY:  RENITA SHARMA

9    O'MELVENY & MYERS LLP
          Attorneys for Defendants Certain Underwriters
10   BY:  ABBY F. RUDZIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O5MCdidC

1           (Case called)

2           MR. ROSEN:  Lawrence Rosen from the Rosen Law Firm.  I

3    have with me Daniel Tyre-Karp from the Rosen Law Firm.

4           THE COURT:  Thank you.

5           MR. FUMERTON:  Good morning, your Honor.  Robert

6    Fumerton, Skadden Arps, for defendant Didi and certain

7    individuals.  I'm joined by my colleagues Michael Griffin,

8    Maisie Wilson, and Jew did Flumenbaum.

9           THE COURT:  Good morning.

10          MR. FUMERTON:  Good morning.

11          THE COURT:  Ms. Flumenbaum I know, right?

12          MS. FLUMENBAUM:  Yes.

13          THE COURT:  Ms. Flumenbaum's father was one of my

14   partners and a friend.  In my view, it's not a ground for

15   recusal, but if anybody has another view, you want to make that

16   view known promptly, and then I'll rule on it.

17          Next.  Anybody else?

18          MS. SHARMA:  Renita Sharma from Quinn Emanuel, also

19   for --

20          THE COURT:  I'm sorry.  My listening apparatus doesn't

21   go as fast as your speech.

22          MS. SHARMA:  I'm sorry, your Honor.  Renita Sharma

23   from Quinn Emanuel, also for Didi and certain of the

24   individuals.

25          MS. RUDZIN:  Good morning, your Honor.  Abby Rudzin

O5MCdidC

1     from O'Melveny & Myers for the underwriter defendants.

2              THE COURT:  Good morning.

3              Folks, I called you in because I read this proposed

4     scheduling order, and I had the feeling you were going to issue

5     bonds pursuant to it.  I have never seen one like this and I

6     don't think I'm going to start by signing one now.

7              I don't, for the life of me, see why this case can't

8     be trial ready within 12 months.  If anybody seriously

9     disagrees with that, you have now got to tell me that and tell

10    me why.

11             MR. FUMERTON:  Your Honor, we're going to do

12    everything we can to expedite and streamline document

13    discovery.  As your Honor is aware, we think the majority of

14    documents, the relevant documents are located in the PRC in

15    accordance with PRC data privacy laws.  PRC counsel has to

16    review this material before U.S. lawyers can even see it, and

17    that injects a layer of time.

18             There's also some uncertainty with providing the

19    materials to local regulators for approval for production,

20    which we're dealing with in several other cases, including with

21    Mr. Rosen.  We're actually going across the river this

22    afternoon in the Neo case before Judge Garaufis where we're

23    dealing with a lot of these PRC discovery issues.

24             So we hope to work together with Mr. Rosen like we're

25    doing in that case to streamline and get discovery done as

O5MCdidC

1    quickly as possible.  We haven't gotten a single document

2    request yet, but it will take additional time beyond the time

3    that's normally required where the documents are located purely

4    in the U.S.  We'd like to put that marker down and if we need

5    more time, we'll come back to the Court.

6            THE COURT:  I understand that, but you also need to

7    understand, and I think I've had occasion to write on this

8    previously, that is the U.S. rules that apply.  If a foreign

9    party invokes blocking statutes and the like, it will not stop

10   me from ordering discovery and a timetable that suits the needs

11   of this case in this court.

12           MR. FUMERTON:  Your Honor, we completely understand.

13   Defendants are not objecting to production based on any

14   blocking statutes or foreign statutes.  We're simply asking the

15   Court for a little bit more time because, again, there's

16   another layer of review, the documents are in Chinese for the

17   most part.  It just takes more time than it takes when the

18   documents are all here.

19           THE COURT:  I understand that.  So what's your

20   proposal?

21           MR. FUMERTON:  Well, we were in agreement with

22   plaintiffs to try to complete fact discovery by October of

23   2025.  So a little over a year from now.

24           THE COURT:  Okay.  And then what?

25           MR. FUMERTON:  Your Honor, then we would have a period

O5MCdidC

1    of time for expert discovery, dispositive motions, and we would

2    expect to be trial ready after the Court has had an opportunity

3    to rule on dispositive motions.

4              THE COURT:  Why can't you serve your expert reports by

5    October 2025?

6              MR. FUMERTON:  Your Honor, I think we can -- I think

7    we can take that back.  I think the idea was to have some

8    period of time after of close of fact discovery.  We've agreed

9    with plaintiffs on 60 days, but if your Honor wants to cut that

10    back or wants to be on the same day, we can certainly consider

11    that.

12              THE COURT:  What sort of experts do you anticipate,

13    other than damages?  I understand there will be damage experts,

14    but what other kind of expert discovery?

15              MS. RUDZIN:  Your Honor, as to the experts, I expect

16    we'll have an expert on the underwriters' due diligence, and

17    that would, of course, require that expert to have access to

18    all the depositions, which might not take place until the

19    waning weeks of the discovery period.

20              THE COURT:  And why can't you front-end load that?

21              MS. RUDZIN:  It's up to the plaintiff when they notice

22    the depositions of our people.

23              THE COURT:  Well, why don't you address that.  Thank

24    you.

25              MR. ROSEN:  Yes, your Honor.  So, we actually have

O5MCdidC

1    issued 30(b)(6) deposition notices already.  As far as taking

2    depositions, we need the documents.  Today is the date we said

3    we would send document requests to the defendants, and we will.

4         As far as us taking depositions, we will need to get

5    the documents, translate them — it takes a least a month to

6    translate them from Chinese to English — then a first-level

7    review of them and then -- so, our position is we can complete

8    discovery within six months of full production of the

9    documents.  So we just need six months to review them,

10    translate them, review them, and then take depositions.

11         THE COURT:  Let me come back to you.  A due diligence

12    expert would testify to what?

13         MS. RUDZIN:  Would explain the standards of care for

14    underwriters and what type of diligence and tasks they go

15    through to make sure they are comfortable with what's in the

16    registration statement.  Almost like an industry expert, but

17    more on like the --

18         THE COURT:  Almost like jury instructions.

19         MS. RUDZIN:  I don't think jurors know how investment

20    bankers conduct diligence.

21         THE COURT:  I suppose that's right.  What due

22    diligence means is a legal issue, yes?

23         MS. RUDZIN:  I think what is a reasonable standard of

24    care for an underwriter is a fact issue.

25         THE COURT:  The statute defines, perhaps not the way

O5MCdidC

1    you or I would have written it, but defines in due diligence.

2    And why is this any different than saying, in an automobile

3    negligence case, that you need an expert on what the standard

4    of care is for driving an automobile on the New York Thruway

5    where the key issue is speed?

6        MS. RUDZIN:  Because driving is something that the

7    ordinary average juror has experience with and knows what it

8    means.  The average juror does not know what it means to be an

9    underwriter, to be an investment banker, to review documents,

10   things like that.  That's why there are actual experts on this

11   who can explain to the jury what's typically done by

12   underwriters to conduct their due diligence.  It's not within

13   the purview of the average juror about how to go about

14   undertaking an IPO.

15       THE COURT:  Well, let me then just back up for a

16   minute.  I understand your point.  I'm not sure I ultimately

17   agree that you're directly getting at what I'm asking you

18   because, obviously, it's true that I can see an expert who

19   explains what the underwriting process is and how it's done.

20   But you were, a moment ago, talking about an expert on the

21   standards of care, and that to me is something else.  I could

22   see an expert explaining what is involved in doing due

23   diligence, but the question of whether what's involved in doing

24   due diligence, if it's done, actually amounts to due diligence

25   as a matter of law I see as a different question.  But this is

O5MCdidC

1    for another day.

2            MS. RUDZIN:  I don't disagree, your Honor.  If I was

3    inartful in how I explained it, I apologize.  The expert will

4    go to the ultimate issue, but I do think there is some value in

5    having the expert explain to the jury what the underwriters do.

6            THE COURT:  Obviously, that's for another day.  I

7    imagine also that there could well be an argument about the

8    underwriters who did the due diligence explaining what they

9    did.  Then the question of whether that satisfies due

10    diligence, it seems, may wind up just being for the jury.  But

11    let's get down the road.

12            If the expert you're talking about is on how folks

13    like your clients go about doing due diligence and what it is,

14    do you need any Chinese documents for that?

15            MS. RUDZIN:  You're really putting me on the spot

16    here.

17            THE COURT:  Well, I'm doing my best.

18            MS. RUDZIN:  So, certainly, no.  And I thought you

19    were going to go in a different direction, which is, do they

20    need to hear the testimony of your underwriters if they're

21    supposed to be talking in an objective sense about what they

22    do.

23            THE COURT:  That's also a good point.  Sorry I didn't

24    make it.

25            MS. RUDZIN:  But I just think, and this is all, you

O5MCdidC

1    know, we haven't even had document requests yet.  I think it's

2    fair to give us the opportunity to have an expert review the

3    record before we make decisions about what exactly the expert

4    will say or, to your point, whether the expert will need to be

5    called if the underwriters themselves testify about what a

6    great job they did.

7              THE COURT:  Are the underwriters all Americans or --

8              MS. RUDZIN:  No, they're not.  That was the other

9    thing I was going to make about the Chinese documents --

10             THE COURT:  Well, where are they?

11             MS. RUDZIN:  In Hong Kong, I think.  Some might

12   actually be on mainland China, but I think most of them are in

13   Hong Kong.

14             THE COURT:  Can they get out of China?

15             MS. RUDZIN:  I assume so.  I don't know.

16             But the other point is there might be --

17             THE COURT:  So their depositions could be taken.

18             MS. RUDZIN:  Yes.  I don't think we've objected to any

19   depositions yet.

20             I do just want to make the point, though, to your

21   question about the Chinese documents, is there might be -- I'm

22   not saying there are, but there might be nuances to

23   underwriting a Chinese company where you have language issues

24   and government issues --

25             THE COURT:  That's been suggested before.

O5MCdidC

1          MS. RUDZIN:  So, I'm just saying that might be

2     slightly different testimony.

3          THE COURT:  I don't think anybody ever called it

4     "nuances."

5          MS. RUDZIN:  I'm just saying the sort of expert

6     explanation of the underwriting process and the diligence

7     process might differ slightly with the Chinese issuer than it

8     would with a U.S. issuer.  So the Chinese documents might

9     matter, is all I'm saying.

10          THE COURT:  Look, I haven't decided any of these

11     questions and I may never have to.  All I'm saying is it seems

12     to me unlikely that any delays in document discovery as a

13     result of whatever goes on in China are likely to be critical

14     to your being able to retain and tender for deposition an

15     underwriting expert.  So I offer that for your consideration.

16     If you want such an expert, it might be sensible to try to

17     pursue that course at the earliest time so that you don't wind

18     up getting caught in the switches at the end.

19          MS. RUDZIN:  Fair enough, your Honor.  And just to be

20     clear, I think the parties were talking about a single date for

21     all expert reports.  So it's not like the underwriters would be

22     dragging behind or anything like that.

23          THE COURT:  Well, no, I understand that.  The fact

24     that you were talking about a single date for all experts

25     doesn't mean that has to happen.

O5MCdidC

1           MS. RUDZIN:  Agreed, Judge.

2           THE COURT:  What else do I need to know about before I

3  decide what the schedule's going to be?  Any of these disputes

4  that are laid out in your proposal?

5           MR. FUMERTON:  Your Honor, I think the only other

6  dispute concerns a number of depositions, which we think is

7  entirely premature.  Plaintiffs haven't told us who they want

8  to depose yet in this document, they want relief from the

9  Court, the 10-deposition limit in Rule 31 and Rule 30 without

10  any showing of good cause, we're prepared to work with

11  plaintiffs, meet and confer once we see a list of who they want

12  to depose, and hopefully we can work it out on our own, but if

13  not, we'll come back to your Honor.  But, to agree to a limit

14  of 20 to 30 depositions of 14 hours each in here, we just don't

15  think it's a reasonable way to proceed.

16           THE COURT:  Well, that's certainly not a necessary way

17  to proceed.

18           Is the usual mediation that always happens in these

19  cases in view?

20           MR. ROSEN:  Your Honor, there hasn't been any

21  discussion of mediation or settlement or anything like that at

22  this stage.

23           THE COURT:  But we all know there will be.

24           MR. ROSEN:  Yes, your Honor.

25           THE COURT:  We also know who the mediator is going to

O5MCdidC

1    be, don't we?

2              MR. ROSEN:  Yeah, there's a short list of maybe five

3    or seven mediators.

4              THE COURT:  I didn't think it was that large.

5              MR. ROSEN:  It's probably closer to four, but yeah.  I

6    think we will head in that direction.  I think right now, we

7    have -- I think it's important to get some evidence to have

8    some understanding of the strength of the claims and of the

9    evidence because, without any documentation, it's hard to

10   really understand the value of the case.  So that would be our

11   preference, would be to get some documents in order to make a

12   reasoned decision to see what the value of the case is.

13             THE COURT:  Look, I don't mean to oversimplify, but I

14   do mean to simplify.  We all know what this case is about, and

15   you ought to be exchanging information and talking about what

16   the facts really are and getting to the key documents promptly

17   so that you can move toward a disposition without funding

18   trusts for the college educations of all the offspring of all

19   the lawyers.  These things take on a life of their own and I

20   suggest that's not a good thing.

21             MR. ROSEN:  Yes, your Honor, I agree.  I think that we

22   did notice the 30(b)(6), which is going to give us a lot of

23   information up front and allow us to target the depositions.  I

24   think that if we can get some documents or some understanding

25   of what exactly happened, that would go a long way to resolving

O5MCdidC

1    the case earlier.  I think that starting with the 30(b)(6) and

2    have it by a date by which the documents will be produced, I

3    mean, certainly, the underwriters have all the due diligence

4    documents easily producible and available, well organized

5    already.  So that should be simple enough.

6          While a lot happened in this case, this is, at bottom,

7    the government relations department at Didi, and they're going

8    to have a log with all their interactions with the government,

9    and getting sort of the -- those essential documents, I think,

10   shouldn't be too difficult.  If we can get those, then that

11   would, I think, go a long way to getting this thing resolved

12   very early.

13          THE COURT:  Thank you.

14          How about that, Mr. Fumerton.

15          MR. FUMERTON:  Your Honor, with respect to the

16   30(b)(6), plaintiffs served a list of over 50 topics a couple

17   weeks ago.  This issue is not ripe before the Court.  We'll

18   meet and confer with plaintiffs.  A lot of the issues go to the

19   merits and substance of the case.  That should await document

20   production.  I mean,they ask for things like a minute-by-minute

21   account of the substance of the written oral communications

22   between Didi and various governmental agencies.  Your Honor, we

23   need to prepare a witness to do that.  To do that before the

24   parties have produced documents or even had a single document

25   request we think isn't an efficient way to proceed, but we hope

O5MCdidC

1    to resolve those issues with plaintiffs.  And again, if we

2    can't, we'll come back to your Honor.

3           THE COURT:  Well, I highly recommend that you resolve

4    them in a practical and expeditious way because I don't like

5    just extending things until the 12th of never, and you

6    shouldn't count on my doing that as this moves along.

7           MR. FUMERTON:  Agreed, your Honor.  And as we've done

8    with Mr. Rosen in past cases, we've had our respective PRC

9    counsels work together to identify the appropriate governmental

10   authorities, to streamline those applications, and we would

11   hope that Mr. Rosen will do that again, again, so we can get

12   the document productions done as quickly as possible, which is

13   what we want, as well.

14          THE COURT:  I will reflect on what you've told me this

15   morning and I will issue a scheduling order probably next week,

16   which is not going to be as loosey-goosey as you would like.

17          Anything else I should know?

18          (Pause)

19          All right.  Thank you.

20                              *  *  *

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300