UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

This document applies to:                 All Actions

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master Docket
21-cv-5807 (LAK)

## MEMORANDUM OPINION

Appearances:

Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
Robin Bronzaft Howald
THE ROSEN LAW FIRM, P.A.

Gregory Linkh
GLANCY PRONGAY & MURRAY LLP

*Attorneys for Plaintiffs*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP

Scott Musoff
Robert Fumerton
Michael Griffin
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

*Attorneys for Defendant Didi Global Inc.*

Jonathan Rosenberg
Abby F. Rudzin
Shane A. Hunt
William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
*Attorneys for Defendants Goldman Sachs (Asia)
L.L.C., Morgan Stanley & Co. LLC, J.P.
Morgan Securities LLC, BofA Securities Inc.,*

*Barclays Capital Inc., Citigroup Global Markets Inc., China Renaissance Securities (US) Inc., HSBC Securities (USA) Inc., UBS Securities LLC, and Mizuho Securities USA LLC*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Will Wei Cheng, Jean Qing Liu, Stephen Jingshi Zhu, Alan Yue Zhuo, and Daniel Yong Zhang*

Sheryl Shapiro Bassin
Ignacio E. Salceda (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
*Attorneys for Defendant Zhiyi Chen*

Matthew S. Kahn
Michael D. Celio (*pro hac vice*)
Kevin J. White
GIBSON DUNN & CRUTCHER LLP
*Attorneys for Defendant Martin Chi Ping Lau*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Adrian Perica and Kentaro Matsui*

Jeffrey T. Scott
Andrew M. Kaufman
SULLIVAN & CROMWELL LLP
*Attorneys for Defendant Kentaro Matsui*

LEWIS A. KAPLAN, *District Judge.*

Defendant Didi Global, Inc. ("Didi") moves for certification for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of this Court's January 22, 2025, order ("January 22 Order") directing Didi to produce a Rule 30(b)(6) witness to testify to certain topics without invoking

Chinese blocking statutes.[1]  Didi seeks also a stay of the January 22 Order.

*Background*

*1.    Facts*

As set forth in the Court's opinion denying defendants' motion to dismiss, plaintiffs

allege that:[2]

> Didi decided to offer its American Depository Shares to the public and list on a U.S.
> stock exchange.  Before it did so, however, "the [Cyberspace Administration of
> China ("CAC")] directed Didi to postpone its IPO in the United States until after
> Didi had completed — to the CAC's satisfaction — a thorough self-inspection of its
> business, operations and policies."[3]  This self-inspection was to include "a
> cybersecurity review, to ensure compliance with all applicable laws and regulations
> concerning national security, network security, data security, and/or the collection
> and protection of private personal information."[4] . . . Although Didi did not disclose
> the CAC Directives publically, it privately gave "the CAC the impression that it
> would follow the Directives."[5]  Instead, it moved forward with the IPO and listed on
> the New York Stock Exchange on June 30, 2021.[6]

The IPO consisted of 316.8 million Didi shares priced at $14.00 per share for total proceeds of $4.4

---

[1]    Dkt 292.

[2]    Dkt 158 at 4–5.

[3]    Second Am. Compl. ("SAC") ¶ 10.

[4]    *Id.*

[5]    *Id.* ¶ 11.

[6]    *Id.* ¶¶ 8, 49.

4

billion.[7]

   Plaintiffs further allege that, within two days of the IPO, the CAC posted a notice online that it was conducting a cybersecurity review of Didi and that Didi must halt new user registration.[8]  Two days later, on July 4, 2021, the CAC announced further measures, including prohibiting Didi's existing customers from downloading Didi's primary app, Didi Travel, and requiring Didi to remove the app from app stores in China.[9]  Then, on July 5, 2021, the Wall Street Journal reported that "[w]eeks before Didi Global Inc. [] went public in the U.S., China's cybersecurity watchdog suggested the Chinese ride-hailing giant delay its initial public offering and urged it to conduct a thorough self-examination of its network security, according to people with knowledge of the matter.  But for Didi, waiting would be problematic. In the absence of an outright order to halt the IPO, it went ahead."[10]

   Plaintiffs allege that, as a result of the July 4 CAC penalties and the July 5 news report, Didi's stock price fell by over 24 percent from its previous closing price upon the opening of trading July 6, 2021.[11]  In the weeks following this "massive . . . sell-off ,"[12] the Chinese

---

[7]

   *Id.* ¶ 342.

[8]

   *Id.* ¶ 344.

[9]

   *Id.* at ¶ 14.

[10]

   *Id.* ¶ 235 (second alteration in original).

[11]

   *Id.* at ¶ 15.

[12]

   *Id*. at ¶ 16.

5

government imposed further penalties on Didi, and Didi's stock price continued to fall.[13]  By July 23, 2021, Didi ADS had fallen by more than 40 percent from the IPO price,[14] wiping out over $2.5 billion in share value.  By May 2022, following additional setbacks, Didi stock price had fallen to $1.94, or 14 percent of the IPO price.[15]  This drop-off amounted to a $3.82 billion reduction in total share value.

2.    *Procedural History*

        In the months following the IPO, plaintiffs respectively filed four putative class actions alleging that Didi was required but failed to disclose that the Chinese government had directed it to postpone its IPO until it had resolved various cybersecurity and privacy concerns.  On October 12, 2021, the Court issued an order consolidating the actions for all purposes and appointed lead plaintiff and lead counsel.[16]  Plaintiffs filed a consolidated amended complaint on January 7, 2022[17], and, after defendants filed motions to dismiss,[18] they filed a consolidated second amended

---

[13]     *Id.* at ¶¶ 17–18.

[14]     *Id.* at ¶¶ 18, 254.

[15]     *Id.* at ¶ 29.

[16]     Dkt 69.

[17]     Dkt 88.

[18]     Dkt 92; Dkt 95.

6

complaint ("SAC") on May 5, 2022.[19]  Defendants moved to dismiss the SAC[20] and the Court denied those motions on March 14, 2024.[21]

On May 29, 2024, the Court issued the scheduling order for this case.[22]  The scheduling order (1) required plaintiffs' motion for class certification to be filed by January 6, 2025,[23] and (2) requires that discovery, other than expert discovery, close by April 1, 2025, and dispositive motions and a joint pretrial order be filed by July 1, 2025.  This case is likely to be set for trial at the end of 2025 or the beginning of 2026.

3.    *Discovery Disputes*

Thus far, there have been seven motions to compel in this case.[24]  The Court has issued orders resolving six[25] and one remains pending.

This motion arises from plaintiffs' motion to compel deposition testimony from

---

[19]    Dkt 106.

[20]    Dkt 112 (Didi Mot.); Dkt 115 (Underwriters Mot.); Dkt 128 (Cheng et al. Mot.); Dkt 130 (Lau Mot.); Dkt 151(Matsui & Perica Mot.).

[21]    Dkt 158.

[22]    Dkt 192.

[23]    Plaintiffs filed their motion for class certification on that date.  Dkt 261.  The motion is pending.

[24]    Dkt 199; Dkt 203; Dkt 219; Dkt 230; Dkt 244; Dkt 286; Dkt 314.

[25]    Dkt 209; Dkt 210; Dkt 225; Dkt 252; Dkt 276; Dkt 320.

7

Didi's Rule 30(b)(6) witness.[26]  At the original 30(b)(6) deposition, held in October 2024, Didi's counsel objected to questions about Didi's interactions with Chinese regulators and Didi's Rule 30(b)(6) witness refused to answer them.  Thereafter, plaintiffs moved to compel deposition testimony on Didi's interactions with Chinese regulators, and Didi argued in opposition that Chinese law prevented disclosure of the sought after testimony.

On January 22, 2025, the Court granted the motion, holding that (1) whether Chinese law prevented disclosure of the sought after testimony was not clear cut, and (2) regardless of whether Chinese law would prohibit the testimony sought, an order compelling disclosure was appropriate.[27]

In so ruling, the Court analyzed the five factors set forth by the Supreme Court in *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa* ("*Aérospatiale*")[28] pertinent to determining whether to compel production where production may violate a foreign statute.[29]  These factors are distinct from those at issue in determining the appropriate sanctions for failure to comply with an order requiring production.  In *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers,*[30] the Supreme Court held that the non-producing party's good faith and fear of criminal prosecution under foreign law (*i.e.*, hardship of compliance)

---

[26]     Dkt 244.

[27]     Dkt 276 at 7.

[28]     482 U.S. 522 (1987).

[29]     *Id.* at 544 n.28.

[30]     357 U.S. 197 (1958).

were relevant considerations in determining the appropriate sanctions for failure to comply with production order.[31]   The Court did not mention those factors in *Aérospatiale*, which was decided decades after *Rogers*.

Against the backdrop of these decisions, the Court gave primary weight to the five factors enumerated in *Aérospatiale*.  Nevertheless, in view of Didi's argument that the Court should consider Didi's claimed good faith and hardship of compliance with a production order, the Court considered those factors as well in granting the motion to compel.  With respect to good faith, the Court recounted that (1) Didi's counsel, in May 2024, assured the Court that defendants were "not objecting to production based on any blocking statutes," (2) Didi did not move for a protective order based on a blocking statute before the deposition, even though it moved for a protective order with respect to the deposition on other grounds, and (3) Didi's invocation of Chinese law rested on a vague account from its general counsel of an alleged instruction Didi received from the Chinese government, but Didi did not state what the instruction was, who provided it, or what the legal basis for it was.[32]  Thus, the answer to the question whether Didi's resistance to the motion to compel was made in good faith was not clear.  With respect to the potential hardship of compliance, the Court did not credit Didi's assertion that compliance would subject it to severe criminal sanctions because the examples it cited were inapposite and it had not provided reliable evidence that the Chinese government actually had objected to disclosure of the sought after testimony.[33]

---

[31]        *Id.* at 206–13.

[32]        Dkt 276 at 3–5.

[33]        *Id.* at 9–10.

On February 12, 2025, Didi filed this motion seeking certification to file an interlocutory appeal and a stay of the Court's January 22 Order.[34] The question Didi proposes to raise on appeal is whether a district court — in ruling on a motion to compel disclosure in the face of a blocking statute or comparable foreign law claim, as distinguished from a motion for sanctions for disobedience of a compulsion order — is obliged by *Linde v. Arab Bank, PLC*,[35] to consider the good faith of the party resisting disclosure and any hardship it might suffer in the event a compulsion order were entered. As will appear, that question is not even presented on this record, much less one worthy of an interlocutory appeal.

Pursuant to the January 22 Order, Didi's Rule 30(b)(6) witness was deposed on February 20, 2025. According to Didi, its representative "was able to answer nearly every question posed by Plaintiffs."[36]

## *Discussion*

1.  *Legal Standard*

Section 1292(b) provides that a district judge may certify an order for interlocutory appeal if the judge (1) is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the

---

[34] Dkt 292.

[35] 706 F.3d 92 (2d Cir. 2013)

[36] Dkt 319 at 2 n.2.

10

order may materially advance the ultimate termination of the litigation."[37]   "[I]nterlocutory orders are not to be certified routinely, even where the standards set forth in Section 1292(b) are met."[38]

2.      *Question of Law as to Which There Is Substantial Ground for Difference of Opinion*

As set forth in this Court's order dated March 7, 2025,[39] the Second Circuit in *Arab Bank* stated that consideration of hardship and good faith was appropriate "when deciding whether to impose sanctions."[40]  It did not endorse, much less require, district courts' consideration of those factors in analyzing whether to order production.  Didi points also to the Supreme Court's decision in *Rogers*.  But as set forth above, that decision analyzed those factors in determining the appropriate sanctions for failure to comply with an order requiring production — not in determining whether to order production in the first instance.[41]   Furthermore, how courts ought to weigh different considerations in a multi-factor analysis is not a pure question of law, but an application of law to fact.[42]

---

[37]

28 U.S.C. § 1292(b).

[38]

*Romea v. Heiberger & Associates*, 988 F.Supp. 715, 717 (S.D.N.Y.), *aff'd without consideration of the point*, 163 F.3d 111 (2d Cir.1998); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014); *In re Bisys Sec. Litig.*, No. 04-cv-3840 (LAK), 2005 WL 3078482, at *1 (S.D.N.Y. Nov. 16, 2005).

[39]

Dkt 320 at 4–5.

[40]

706 F.3d at 110.

[41]

357 U.S. at 206–13.

[42]

*See Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) ("Courts interpreting [the Section 1292(b)] standard have maintained that 'the question of law must refer to a pure

Didi therefore has not shown that the Court's January 22 Order involved a controlling question of law as to which there is a substantial ground for a difference of opinion.

3.    *Advancement of the Ultimate Termination of the Litigation*

This case has been pending for almost four years.  Discovery is set to close in less than a month, and dispositive motions and a joint pretrial order are due in less than four months. Although Didi argues that the case could be litigated while an interlocutory appeal is briefed and argued, the pendency of such an appeal and a stay of the January 22 Order would prejudice plaintiffs' ability to obtain complete discovery before the April 1 deadline.  An appeal and stay would affect also the parties' abilities to prepare dispositive motions and a pretrial order before the July 1 deadline.  Such delays inevitably would push back a potential trial in this matter — which, as set forth above, is likely to take place at the end of 2025 or the beginning of 2026 — postponing resolution of this long-pending litigation even further.  Moreover, resolution of the proposed appeal would not hasten the resolution of this case in any way.  Such an appeal therefore would not advance the ultimate termination of the litigation — it would prolong it.

4.    *Discretion to Deny Certification*

Even if the Section 1292(b) factors were satisfied, certification would not be

---

question of law that the reviewing court could decide quickly and clearly without having to study the record.'" (cleaned up) (quoting *Ahrenholz v. Board of Trustees of the University of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000)).

12

warranted.[43]  First, the Court in fact considered the purportedly omitted factors in the January 22

Order.[44]  Any additional consideration of those factors would not have altered the Court's

conclusion.  To the contrary, Didi's failure to establish its vague and weak claims of good faith and

hardship of compliance weighed in favor of compelling production.  Second, since the order was

handed down, Didi asserts that it has complied substantially with the order and that its 30(b)(6)

witness "was able to answer nearly every question posed by Plaintiffs."[45]  The controversy at issue

therefore is largely moot.  This dispute thus is not of "unusual significance."[46] Certification for

interlocutory appeal would not be appropriate.

---

[43]

See *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir.1996) (interlocutory appeal "rare exception to the final judgment rule").

[44]

Dkt 276 at 3–5 (examining Didi's good faith); *id.* at 9–10 (analyzing hardship of compliance).

[45]

Dkt 319 at 2 n.2.

[46]

See *Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) (quoting *In re Bisys Sec. Litig.*, No. 04-cv-3840 (LAK), 2005 WL 3078482, at *1).

### *Conclusion*

For the foregoing reasons, Defendant Didi Global, Inc.'s motion for certification for interlocutory appeal (Dkt 292) is denied.

SO ORDERED.

Dated:        March 17, 2025

_____
Lewis A. Kaplan
United States District Judge