NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

This document applies to:        All Actions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master Docket
21-cv-5807 (LAK)

# MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

      Plaintiffs move to compel Defendant DiDi Global, Inc. ("DiDi") to respond to two of plaintiffs' interrogatories.[1] DiDi contends that Chinese data security, state secrets, and criminal laws prohibit disclosure of the documents. Plaintiffs counter that Chinese law does not bar discovery and, even if it did, the Court should still order production, leaving the question of the sanctions to be imposed, if any, in the even of non-compliance for the future.

      The Court addressed similar issues in a memorandum opinion dated January 22, 2025, granting plaintiffs' motion to compel deposition testimony from DiDi's Rule 30(b)(6) witness ("January 22 Order")[2] and an order dated March 7, 2025, which granted in part and denied in part plaintiffs' motion to compel the production of documents ("March 7 Order").[3] In the January 22 Order, the Court held that (1) it was not clear whether Chinese law prohibited the sought after testimony, and (2) regardless of whether Chinese law prohibited the testimony, an order compelling

---

[1] Dkt 314.

[2] Dkt 276.

[3] Dkt 320.

2

disclosure was appropriate based on an international comity analysis.[4] In particular, the Court held that the balance of national interests — the most important factor in that analysis[5] — favored disclosure.[6] In the March 7 Order, the Court held that (1) Chinese law prohibited the disclosure of the documents there at issue without authorization from Chinese authorities, and (2) an international comity analysis did not then warrant an order compelling disclosure of all of the documents there at issue.[7]

## *Facts and Background*

On November 15, 2024, plaintiffs served their third set of interrogatories on DiDi, which included the following:[8]

- **Interrogatory No. 13**: Identify the dates, locations, attendees (including names, titles and employer) and describe the purposes of, and matters discussed at, all meetings from February 1, 2021 to July 23, 2021, between representatives of DiDi and representatives of PRC government agencies concerning any of the following subject matters: (i) data collection; (ii) national security; (iii) Geographical Mapping Information; (iv) state secrets; (v) storage of data or information overseas or cross-border data transfer; (vi) cybersecurity; (vii) data protection; (viii) personal privacy; (ix) information security; (x) network security; (xi) critical information infrastructure or the obligations of a critical information infrastructure operator; (xii) DiDi's IPO.

- **Interrogatory No. 14**: For the period from January 1, 2021 through July 2, 2021, identify

---

[4] Dkt 276 at 7.

[5] *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 206 (S.D.N.Y. 2013).

[6] Dkt 276 at 7–8.

[7] Dkt 320 at 7–10.

[8] Dkt 314 at 2.

all inquiries or requests for information or documents from any PRC government agency regarding the collection, processing, use, sharing or storage of personal data or security protocols for such data, or sensitive, valuable or consumer data, and identify the PRC government agencies making the inquiry, or issuing the request, the date of the inquiry or request, the documents or information requested or inquired about, and if and when DiDi provided such documents or information to the PRC government agencies.

DiDi objected that these interrogatories sought information "prohibited from disclosure by applicable law governing the disclosure of certain types of information, including, but not limited to, state secrets or intelligence, working secrets of government agencies, important data, core data, or other data, that, if leaked, will be detrimental to national security or public interest under [People's Republic of China ("PRC")] law." In response to Interrogatory 13, DiDi provided only the names of members of its management and government affairs team. DiDi did not provide any other information called for by the interrogatory, such as dates, locations, attendees (other than those employed by DiDi), and matters discussed. In response to Interrogatory 14, DiDi responded that it was "unable to provide information in response to this Interrogatory pursuant to PRC law."

### Discussion

1. *Legal Standard*

The January 22 and March 7 Orders set forth the legal standard governing discovery disputes in which a party invokes a foreign blocking statute. In sum, the analysis consists of two questions: (1) would disclosure of the sought after information violate the statute or other relevant foreign law and, if so, (2) should the Court nevertheless order disclosure notwithstanding the foreign statute in consideration of the principles of international comity.[9] As discussed previously, the

---

[9] Dkt 276 at 6.

4

question whether sanctions should be imposed for failure to comply with such an order is a separate and subsequent question.

2.   *Conflict of Law*

The parties dispute whether Chinese law prohibits disclosure of the sought after information, namely whether and how Article 36 of China's Data Security Law applies. Article 36 states, "Domestic organizations and individuals must not provide data stored within the mainland territory of the PRC to the justice or law enforcement institutions of foreign countries without the approval of the competent authorities of the PRC."[10] The parties disagree on whether (1) Article 36 applies to civil discovery where documents are produced to a private party, not a justice or law enforcement institution, (2) Article 36 applies only to "important data" and "core data," and (3) the record demonstrates that Chinese competent authorities actually have objected to production of the sought after information.

The Court agrees with DiDi that Article 36 applies to the production of information in civil discovery. Discovery is governed by the Federal Rules of Civil Procedure and is subject to the jurisdiction of this Court. The fact that information initially would be produced to private parties does not remove the data from the ambit of Article 36.

The Court further agrees with DiDi that Article 36 does not apply only to important data and core data. The plain text of Article 36 applies to "data," without any limitation to particular

---

[10] *Translation: Data Security Law of the People's Republic of China (Effective Sept. 1, 2021)*, Stanford Cyber Pol'y Ctr. (June 29, 2021). Article 3 of the Data Security Law defines "data" as "any information record in electronic or any other form." *Id.* The parties do not dispute that information contained in responses to interrogatories constitutes "data."

5

classifications. The fact that China has promulgated formalized processes that apply specifically to important data and core data does not mean that other forms of data are exempt from Article 36, and plaintiffs have not provided any evidence that less significant data in fact is exempt.

Whether the record demonstrates that Chinese competent authorities have objected to production of the sought after information is a closer call.

In the January 22 Order, the Court did not credit DiDi's general counsel's declaration that Chinese authorities objected to providing information sought via deposition testimony ("30(b)(6) Declaration").[11] The 30(b)(6) Declaration stated that DiDi was informed by Chinese authorities that disclosing the sought after information would violate Chinese laws, but did not state what the instruction was, who provided it, or the legal basis for the assertion. Following the January 22 Order, according to DiDi, its Rule 30(b)(6) witness answered nearly all of plaintiffs' questions to which DiDi previously had objected, purportedly on the basis of Chinese law. In the March 7 Order, the Court credited DiDi's general counsel's declaration that DiDi had submitted documents responsive to plaintiffs' requests for production to Chinese authorities, requested permission to produce them, and been told that a subset of documents could not be produced ("RFP Declaration").[12]

Here, the general counsel's declaration ("Interrogatory Declaration") states that (1) DiDi has "consulted Chinese governmental authorities . . . regarding the documents and information it intended to produce in response to Plaintiffs' discovery requests," (2) DiDi was informed by

---

[11] Dkt 276 at 5, 8 n.17.

[12] Dkt 320 at 7.

6

Chinese authorities that it is prohibited from disclosing non-public communications between Chinese governmental agencies and DiDi, as well as non-public government actions, and (3) in accordance with that instruction, DiDi is not permitted to disclose the information sought by Interrogatories 13 and 14. It further declared that, following the January 22 Order, "DiDi's team re-engaged with the Chinese authorities to seek further guidance" but "remains prohibited from disclosing the information sought by" Interrogatories 13 and 14.

The Interrogatory Declaration offers more information that the deficient 30(b)(6) Declaration. It states the substance of the instruction from Chinese authorities that "DiDi is prohibited from from disclosing . . . non-public communications between Chinese governmental agencies and DiDi, as well as non-public government actions." But it does not state the specific legal basis for the instruction or from whom it was received. Moreover, unlike the RFP Declaration, the Interrogatory Declaration does not state that Chinese authorities specifically have objected to production of the sought after information, and there is no indication that DiDi has submitted the interrogatories or any proposed answers to Chinese authorities for their approval pursuant to Article 36.

In view of the instruction received from Chinese authorities, along with Chinese authorities' specific objection to the production of documents detailed in the RFP Declaration, the Court concludes that Chinese law likely prohibits disclosure of the information at issue. Nevertheless, in response to any further motions to compel in this litigation,[13] the Court cautions DiDi that it will not credit a conclusory declaration averring that disclosure is prohibited pursuant

---

[13] In so noting, the Court does not anticipate or encourage additional discovery-related motions practice in this case, especially given the impending close of fact discovery.

7

to an instruction from Chinese authorities. Any declaration attesting to instructions received from Chines authorities should include (1) the substance of the instruction, (2) the governmental authority(ies) from whom the instruction was received, (3) the name(s) of the individual(s) at DiDi to whom the instruction was communicated, and (4) the specific legal basis for the instruction.

3.     *Comity Analysis*

   A.     *Balance of National Interests*

Both the United States and China have legitimate interests at stake. Chinese authorities' instruction not to disclose non-public communications between Chinese governmental agencies and DiDi demonstrates their legitimate interest in nondisclosure. At the same time, "the United States has a substantial interest in fully and fairly adjudicating matters before its courts, and achieving that goal is only possible with complete discovery."[14] This interest is strongest where the sought after information is important to the litigation and there are no other means of obtaining the information, factors discussed below.

   B.     *Importance to the Litigation*

Interrogatory 13 asks DiDi for information regarding meetings between DiDi and Chinese goverment agencies over a six month period concerning twelve topics: (1) data collection, (2) national security, (3) Geographical Mapping Information, (4) state secrets, (5) storage of data or information overseas or cross-border data transfer, (6) cybersecurity, (7) data protection, (8) personal

---

[14] *Chevron*, 296 F.R.D. at 206 (cleaned up) (quoting *Gucci Am., Inc. v. Curveal Fashion*, No. 09-cv-8458(RJS)(THK), 2010 WL 808639, at *2 (S.D.N.Y. Mar. 8, 2010)).

privacy, (9) information security, (10) network security, (11) critical information infrastructure or the obligations of a critical information infrastructure operator, and (12) DiDi's IPO. Interrogatory 14 asks DiDi to identify any inquiries or requests from Chinese government agencies in the six months prior to DiDi's IPO regarding data and security protocols.

DiDi objects that the information sought is not central to plaintiffs' claims because DiDi "operates in a highly regulated industry and is in regular communication with PRC government agencies, most of which do no relate at all to Plaintiffs' claims." Plaintiffs counter that the information sought is central to their allegations that the Cyberspace Administration of China ("CAC") directed DiDi to postpone its IPO until after it had completed a self-inspection of its practices, including a cybersecurity review, and that DiDi falsely gave the CAC the impression that DiDi would follow the CAC's directives.[15]

Some of the information responsive to Interrogatory 13 is relevant to plaintiffs' claims. But plaintiffs have not demonstrated that a comprehensive list of all meetings with Chinese regulators over a six month period touching on a broad range of topics is of central importance to the litigation. Nor have they demonstrated that the mere fact of meetings between DiDi and Chinese authorities and corresponding basic details — as opposed to the substance of what was discussed at those meetings — is central to their ability to prove their claims.[16]

To the extent plaintiffs argue that the information sought is important because it could

---

[15] Second Am. Compl. ¶¶ 10–11.

[16] In addition to dates, locations, and attendees, Interrogatory 13 requests descriptions of the "purposes of, and matters discussed at," meetings between DiDi and regulators. The Court does not believe that such descriptions, provided in response to an interrogatory, would be central to plaintiffs' ability to prove their claims.

lead to the identification of other relevant evidence,[17] the discovery deadlines in this case render that argument moot. Plaintiffs filed this motion on February 28, 2025. Fact discovery closes on April 1, 2025.[18] Even if the Court had granted the motion to compel the next day the Court was open (March 3), without allowing DiDi to respond, and ordered DiDi to comply the same day — a practical impossibility — there still would not have been time for plaintiffs to issue additional interrogatories or requests for production and for DiDi to respond before the close of fact discovery.[19] Further, plaintiffs have not identified any pending depositions for which responses to Interrogatory 13 would prove relevant.

Plaintiffs have a stronger argument with respect to Interrogatory 14. Requests by Chinese authorities for information or documents regarding DiDi's data and security protocols are central to plaintiffs claims. Whereas the mere fact of a meeting taking place is hardly central to plaintiffs' ability to prove their claims, the fact of Chinese authorities inquiring about DiDi's data and security protocols prior to the IPO would in itself be probative of plaintiffs' claims.

### C. *Alternative Means of Obtaining the Information Sought*

There are limited realistic alternative means of obtaining the information sought. Proceeding via the Hague Convention is not a realistic alternative for the reasons given in the

---

[17] Dkt 331-1 at 2.(citing *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 466 (S.D.N.Y. 2013)).

[18] Dkt 192 at 2.

[19] *See* Fed. R. Civ. Proc. 33(b)(2) (30 days to respond to interrogatories); Fed. R. Civ. Proc. 34(b)(2)(A) (30 days to respond to requests for production).

January 22 Order. The same legal basis for objecting to the interrogatories would apply to deposition testimony or the production of documents. DiDi points to its 30(b)(6) witness's testimony that "no PRC regulators suggested to DiDi that its data collection, cybersecurity practices, geographical mapping practices, data storage or cross border data transfer, network security, and national security practices (among other things) were not in full compliance with PRC laws and regulations." But the witness's ability to testify to the non-existence of certain communications is distinct from DiDi's asserted inability to provide information about the communications between DiDi and Chinese regulators that do exist.

DiDi suggests that plaintiffs could obtain the information they seek through requests for admission. This alternative would not provide all of the information plaintiffs seek, especially since DiDi's responses presumably would be limited by the same strictures applicable to its interrogatory responses. Nevertheless, requests for admission could alleviate some of the prejudice, to the extent any exists, that plaintiffs would face due to their inability to obtain complete responses to their interrogatories.

The remaining factors do not point clearly in either direction:

- <u>Specificity of Requests</u>: Interrogatories 13 and 14 provide specific timeframes, subject matters, and instructions.

- <u>Origin of Information</u>: The withheld information originated in China.

- <u>Hardship of Compliance</u>: DiDi argues that compliance would subject DiDi and its officers to severe criminal liability. The Court does not credit this argument for the same reasons stated in the January 22 Order. Moreover, by its own account, DiDi has not faced severe criminal liability — or, based on the information before the Court,

any hardship at all — for substantially complying with the January 22 Order. At the same time, DiDi may be subject to sanctions for producing information in contravention of an instruction not to do so from Chinese authorities.

- <u>Good Faith</u>: The Court has no reason to question DiDi's good faith with respect to the matter before the Court.

Based on the foregoing, an order compelling a response to Interrogatory 13 is not appropriate, while an order compelling a response to Interrogatory 14 is appropriate. In recognition of the impending discovery deadline, the Court would entertain a motion for a short extension of the discovery deadline for the limited purpose of issuing requests for admissions.

## *Conclusion*

For the foregoing reasons, plaintiffs' motion to compel (Dkt 314) is granted to the extent that Defendant DiDi Global Inc. shall, on or before April 1, 2025, provide a complete answer to Interrogatory 14. Plaintiffs' motion is denied in all other respects.

SO ORDERED.

Dated:    March 24, 2025

_____
Lewis A. Kaplan
United States District Judge