June 6, 2025

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street, New York, NY 10007

**Re:** *In re Didi Global Inc. Securities Litigation* **(S.D.N.Y.), Case No. 1:21-cv-05807-LAK**

Dear Judge Kaplan:

    DiDi Global Inc. ("DiDi") respectfully submits this opposition to Plaintiffs' motion to compel (ECF No. 383, the "Motion" or "Mot.") documents withheld based on attorney-client privilege and work product. Plaintiffs' Motion should be denied.

    At the threshold, the Motion should be rejected as an improper attempt to circumvent a Court order through procedural gamesmanship. Plaintiffs already moved to compel these same documents. ECF No. 370. However, those documents were withheld (and logged) on *both* privilege and PRC law grounds and the briefing was negotiated and so-ordered by the Court. ECF No. 368. Plaintiffs should not be permitted to bring successive motions seeking the same relief. *See, e.g.*, *PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharm.*, 2024 WL 1199500, at *10 (S.D.N.Y. Mar. 20, 2024) ("[N]othing separates the instant Motion from the mine run of cases where courts deny 'successive motions seeking the same relief[.]'") (collecting cases). Plaintiffs' seriatim motions have created an awkward posture in which the Court cannot order the requested relief on the basis of either motion alone—*i.e.*, compelling production of the same documents. By failing to raise their privilege objections in the prior motion, Plaintiffs have waived their right to challenge the same documents on those grounds. *See Fezzani v. Bear, Stearns & Co.,* 2023 WL 2612454, at *3 (S.D.N.Y. Mar. 23, 2023) (party "'waive[s] an argument by failing to raise it in a timely manner'").

**A.**    **DiDi Did Not Waive Attorney-Client Privilege Or Work Product Protection**

    Plaintiffs argue that DiDi waived privilege over 954 documents. Mot. at 1. They are wrong on both the facts and the law. At the threshold, Plaintiffs mischaracterize the development of DiDi's privilege log. DiDi first placed these documents on a PRC law log without conducting a privilege review, and subsequently clarified on its revised logs that certain documents were also protected by attorney-client privilege or work product and logged those assertions. DiDi's good-faith and production efforts are nowhere close to the threshold for waiver of privilege.[1] *See Chevron Corp. v. Donziger*, 2013 WL 4045326, at *3 (S.D.N.Y. Aug. 9, 2013) (granting second chance to revise privilege log); *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 159 (E.D.N.Y. 1994) (permitting defendants to revise privilege log to assert additional privileges); *In re Welspun Litig.*, 2018 WL 4693587, at *3 (S.D.N.Y. Sept. 21, 2018) ("[W]aiver is a 'harsh remedy' that generally is reserved for egregious noncompliance."). DiDi diligently worked to produce documents and did so as soon as it determined the documents were not privileged *and* authorities cleared those documents for production.

    Further, Plaintiffs have been on notice of the existence of the documents since December 2024 and have thus suffered no prejudice, as is required for waiver. *See* ECF No. 320 at 6 (DiDi did not waive "any protection of the withheld and redacted documents" because "plaintiffs have

---

[1] Plaintiffs' citations (Mot. at 1) are inapposite. The court in *S.E.C. v. Yorkville Advisors, LLC* deemed privilege claims abandoned where log descriptions were so inadequate that the court could not determine if documents were privileged communications. 300 F.R.D. 152, 156 (S.D.N.Y. 2014). In *AU New Haven v. YKK Corp.*, the defendant provided five iterations of privilege logs and still failed to provide complete and accurate information. 2017 WL 4838793, at *2-3 (S.D.N.Y. Oct. 24, 2017).

1

not shown that they were prejudiced"); *Baptiste v. Cushman & Wakefield, Inc.*, 2004 WL 330235, at *1, *5 (S.D.N.Y. Feb. 20, 2004) (no privilege waiver where asserted more than two months after disclosure of documents' existence and plaintiff was "not prejudiced because of any delay").

**B.     The Documents Are Privileged Because They Touch Base With The U.S.**

The challenged documents are privileged under U.S. law because they touch base with the U.S.  "Under the touch base test, a court applies the law of the country that has the predominant or the most direct and compelling interest in whether communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 99 (2d Cir. 2020).

As Plaintiffs concede, the "vast majority" of the documents concern the "cybersecurity review" that occurred after DiDi listed in the U.S.—the precise subject of this litigation.  Mot. at 2; ECF No. 1 ¶¶ 65-69; ECF No. 106 ¶¶ 201-02.  "[C]ommunications relating to legal proceedings in the" U.S. touch base with the U.S.  *Mangouras*, 980 F.3d at 99; *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010) (applying U.S. privilege to documents concerning "global litigation strategy" and "parallel lawsuits in Italy and the United States"); *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119 (S.D.N.Y. 2013) (communications touched base with U.S. where they "related to [U.S.] legal issues").  The first U.S. suit against DiDi was filed on July 6, 2021 and alleged that the cybersecurity review stemmed from DiDi's U.S. IPO.  ECF No. 1 ¶¶ 65-69.  Having premised their case on the causal connection between the IPO and cybersecurity review and DiDi's alleged misrepresentations in its U.S. IPO disclosures about issues subject to the cybersecurity review, Plaintiffs cannot now opportunistically divorce that review from the IPO and considerations of U.S. law.  *See* Mot. at 2.  To the contrary, all documents created on or after that date relating to the cybersecurity review touch base with the U.S. because they concern the matters in this litigation and/or were created with this litigation in mind.  *See Gucci*, 271 F.R.D. at 65; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 2977175, at *4 (S.D.N.Y. May 20, 2016) (minutes from board meeting in Belgium touched base with the U.S. where communications related to "contemplated lawsuits in the United States").  The entanglement of PRC and U.S. legal issues here is precisely why the locus of communication is not dispositive of which law applies.  *See, e.g.*, *Gucci*, 271 F.R.D. at 66 (U.S. privilege applied to communications with Italian in-house counsel); *Renfield Corp. v. E. Remy Martin & Co., S.A.*, 98 F.R.D. 442, 443-44 (D. Del. 1982) (similar).  Plaintiffs cite no case in which documents created during, and relevant to, U.S. litigation were found not to touch base with the U.S.

Likewise, communications in the context of the IPO touch base with the U.S. because they concern a U.S. securities offering.  Specifically, the 67 documents preceding DiDi's IPO touch base because they discuss potential disclosures to a U.S. regulator in the lead up to the IPO.  *See In re Philip Servs. Corp. Sec. Litig.*, 2005 WL 2482494 (S.D.N.Y. Oct. 7, 2005) (opinion letter on "public offering of securities in" U.S. touched base); *In re China Med. Techs.*, 539 B.R. 643 (S.D.N.Y. 2015) (internal investigation on "compliance with U.S. securities law" touched base).

**C.     PRC Law Is Not Materially Different From U.S. Law As To the Logged Documents**

It is clear from both parties' experts' reports that, regardless of which law applies, both U.S. and PRC law protect communications between attorneys and their clients from disclosure in civil litigation.  Ex. 1 (Expert Report of Dai Xin) ¶¶ 12-45; Ex. 2 (Expert Report of Haifeng Li) ¶¶ 16-34 (communications between attorney and client in China are protected from disclosure in court by limited discovery practices and a legal obligation of confidentiality); *see* Pls.' Expert Report, ECF No. 383-7 ¶ 97 (attorney confidentiality in China "is a ***legal*** and ethical obligation" (emphasis added)); *id.*¶ 67 ("In Chinese civil litigation, there is no stage of evidence discovery in which parties can require the opposing party to produce evidence.").[2]

---

[2]  Plaintiffs' attorney advertising materials (ECF Nos. 383-9-15) cannot be credited against DiDi's PRC law experts. Exhibits 9-14 are not written by experts opining on PRC law; they are lawyers at international firms opining—without

As explained by DiDi's experts, Chinese law has stringent confidentiality requirements over attorney-client communications, which, coupled with a civil litigation regime that does not require the exchange of internal records and requires each party to rely on its own evidentiary records to carry its burden of proof, affords protection against involuntary disclose of the types of documents that would be protected by legal privilege under U.S. law. Ex. 1 ¶¶ 12-45; Ex. 2 ¶¶ 16-34. Like in the U.S., such assurances of confidentiality under Chinese law ensure full and frank communication between attorneys and their clients. Ex. 1 ¶¶ 12-18.

Tellingly, while Plaintiffs' expert served on the "Supreme People's Court for more than 20 years and, as a judge, concluded nearly 1,000 various civil and commercial cases," he does not cite a single example where a Chinese court compelled disclosure of privileged documents. *See* ECF No. 383-7 at 1, 5-6, 26-28. Plaintiffs opine instead that no PRC privilege exists because any information *could in theory* be compelled by a judge and "attorney-client privilege has never been referenced . . . as a basis for objection" to such power of a judge to order disclosure. Mot. at 3. But none of the Chinese court cases cited by Plaintiffs' expert in fact involved compelled disclosure of attorney-client communications or work product. They involved instead testimonies of attorneys as fact witnesses about discrete facts such as what occurred at a contract signing where both parties were present and whether the attorney personally made a copy of a loan receipt at his/her law firm. Ex. 1 ¶¶ 44-45; Ex. 2 ¶¶ 42-43. Such a mechanism of court-ordered disclosure is not designed to compel confidential attorney-client communications or work product and has never been used for this purpose. Both parties' experts' indicate that, in Chinese civil litigation, a litigant has never been compelled—to the best knowledge of both parties' three expert witnesses—and would not be compelled to disclose attorney-client communications or work product, the type of documents DiDi is withholding. Ex. 1 ¶¶ 43-45; Ex. 2 ¶¶ 42-43. In fact, U.S. seem more likely to compel production of privileged documents, including where "fairness requires" or it is "waived based on the nature of the asserted cause of action." *See, e.g.*, *Davidson v. Goord*, 215 F.R.D. 73, 78 (W.D.N.Y. 2003).[3] But no one can seriously argue that because of such limited circumstances where a U.S. court could compel disclosure of privileged documents, there is no protection of legal privilege under U.S. law, which is exactly the same logic adopted by Plaintiffs and their expert.

Compelling disclosure here would create a perverse and unfair policy of subjecting foreign litigants to the worst of both worlds by imposing U.S. discovery obligations without affording the privilege protection that goes hand-in-hand with such discovery regime, while disregarding the holistic system of protections and practices of the litigant's own foreign legal system.[4] *See Astra Aktiebolag v. Andrx Pharms.*, 208 F.R.D. 92, 100, 102 (S.D.N.Y. 2002) (no compulsion where "documents would not be subject to production" in Korea); *accord Wultz v. Bank of China, Ltd.*, 979 F. Supp. 2d 479, 487 (S.D.N.Y. 2013) ("Chinese law should be informed by attention to the general practices and features of China's legal institutions, rather than . . . inferences drawn from indeterminate legal language."). That is particularly true where the foreign system does not neatly map onto the American system. *E.g.*, *Rojas Mamani v. Sanchz Berzain*, 636 F. Supp. 2d 1326, 1330-31 (S.D. Fla. 2009) ("Many countries around the world have legal systems that do not fit the American model . . . . It would be insultingly parochial for a federal court in the United States . . . to refuse to recognize remedies that are not deemed to be 'judicial' in the English/American common-law tradition."). Here, "ordering discovery without any protection also offends the public policy of this forum." *See Astra*, 208 F.R.D. at 102; *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143

---

citation—on the ways U.S. courts may interpret Chinese law. Plaintiffs' Exhibit 15 is limited to PRC enforcement cases, not civil litigation.

[3] U.S. courts have even compelled disclosure before considering a privilege claim on the basis that "a trial court has broad discretion to fashion discovery orders." *See Fairholme Funds v. U.S.*, 134 Fed. Cl. 680, 687 (2017) (compelling disclosure of privileged documents); *see also* Fed .R. Civ. P. 26(b)(3)(A) (work product "may be discovered if: . . . (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

[4] DiDi's argument is not that attorney-client communications are protected because of its "expectation" of confidentiality. Mot. at 4 n.12. Rather, the Court should deny the Motion because Chinese law mandates protection.

F.R.D. 514, 524 (S.D.N.Y. 1992) (protecting documents from discovery because "Israeli law would protect the documents"); *cf. Gucci*, 271 F.R.D. at 69-70 (similar); *Philips N.V. v. Elec-Tech Intern. Co.*, 2017 WL 10128314, at *4 (Cal. Super. Apr. 25, 2017) (rejecting *Wultz*); *accord* ECF No. 383-7 at 17-18 ("U.S.-style discovery . . . has never been part of Chinese court proceedings").

Finally, the 2013 *Wultz* decision should not be followed. In *Wultz*, the defendant bank did "not seriously contest . . . that Chinese law does not include the attorney-client privilege or work-product doctrine" and the court found the bank's expert "vague, inconclusive, and inconsistent" on the issue. 979 F. Supp. 2d at 492 & n.81. Since *Wultz*, Chinese law regarding the confidentiality requirements of attorney-client communications kept evolving toward a "clearer and more definitive" recognition of such protection, as evident from the various post-2013 statutes and regulations cited in both Plaintiffs' and DiDi's experts' reports. Ex. 1 ¶ 15. Further, in *Wultz*, Bank of China's documents included those generated by non-lawyers at the bank's compliance department "without the involvement of any counsel." 979 F. Supp. 2d at 495. As is apparent from DiDi's logs, the documents withheld here all include counsel.

**D.      Plaintiffs' Other Arguments Are Without Merit**

The 20 PwC audit documents are also properly redacted or withheld. PwC was DiDi's auditor for the IPO and conducted its work at the direction of DiDi's U.S. outside counsel.[5] Nine of the documents involve PwC assisting counsel in drafting DiDi's Registration Statement (ECF No. 383-1 Nos. 1, 25-31, 107); seven concern legal advice on a draft prospectus (ECF No. 383-2 Nos. 10, 12, 54, 60, 61, 63-64); three involve PwC supporting counsel in preparing certain disclosures in the prospectus (ECF No. 383-1 Nos. 22-23, 103); and one concerns a legal opinion for DiDi's IPO (ECF No. 383-2 No. 649). These are privileged because they pertain to the provision of legal advice and there was no adversarial relationship between DiDi and its auditors that would break privilege. *See Merrill Lynch & Co. v. Allegheny Energy*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) (denying compulsion of independent auditor's reports); *U.S. v. Petit*, 438 F. Supp. 3d 212, 214 n.2 (S.D.N.Y. 2020) (no waiver for work product provided to independent auditor).

Additionally, Plaintiffs also challenge 27 documents as not proper work product. Mot. at 4. Notably, DiDi asserted multiple withholding bases for 18 of the 27 documents, including attorney-client privilege. *See* ECF No. 383-4 Nos. 78, 82-85, 88-98, 101, 105. The remaining nine documents are facially attorney-client privileged because they contain a legal opinion and/or legal advice. *Id.* Nos. 79-81, 87, 99-100, 102-104; *see U.S. v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 389 (S.D.N.Y. 2016).

Finally, Plaintiffs erroneously opine (Mot. at 4) that DiDi's in-house counsel are not licensed to practice law. To the contrary, nearly[6] all such counsel had PRC Legal Qualification Certificates at the relevant time. ECF No. 383-16 at Nos. 17-18. Under PRC law, legal advice from in-house counsel receives the same confidentiality protection as advice from outside counsel, and Plaintiffs' assertion (Mot. at 4) that a Lawyer's Practicing Certificate is necessary to create a "qualified lawyer" in the PRC is incorrect.[7] The technical differences between U.S. and PRC attorney licensing is not an adequate basis to compel otherwise privileged documents. *See, e.g.*, *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2017 WL 10059295, at *2 (C.D. Cal. Mar. 13, 2017) (denying compulsion of communications between company and Chinese in-house counsel). And, critically, two in-house attorneys on many of the withheld documents, Jimmy Gao and Xiaoxiao Wang, were admitted to the New York bar at the relevant time. Exs. 3-4.

---

[5] Notably, Plaintiffs failed to meet and confer with DiDi regarding the PwC documents, which could have obviated portions of this motion.

[6] Jimmy Gao, who is licensed to practice in New York, is DiDi's only in-house counsel who did not hold a PRC Legal Qualification Certificate.

[7] Lack of certification to practice at a firm does not disqualify in-house counsel from the practice of law. Ex. 1 ¶¶ 46-51; Ex. 2 ¶¶ 35-39.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester
Renita Sharma
Sam Cleveland
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
coreyworcester@quinnemanuel.com
renitasharma@quinnemanuel.com
samcleveland@quinnemanuel.com

Scott Musoff
Robert Fumerton
Michael Griffin
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendant DiDi Global, Inc.*