# EXHIBIT 2

# United States District Court

# Southern District of New York

IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

Matter Docket Case No.: 1:21-cv-05807-LAK-VF

This Document Relates To: All Actions

# PRC Law Expert Report of Haifeng Li

# On Document Production & Client-Attorney Privilege

# June 6, 2025

I, Haifeng Li, whose credentials are set forth in Section I of this report, invited by DiDi Global Inc.("**DiDi**") to give my opinions on certain issues related to document production and client-attorney privilege in civil litigation proceedings under the laws of the People's Republic of China ("**PRC Law**"), state as follows:

### I.   Credentials

1. I am over 18 years old, of sound mind, and otherwise competent to make this statement. If called upon to testify in this regard, I would be able to do so competently under affirmation.

2. I make this statement in my capacity as a licensed PRC lawyer, arbitrator and a former corporate inhouse counsel.

3. I graduated from the Department of British and American Literature of Fudan University with a B.A. degree in 1990 and from the Law Department of Peking University with a Master of Laws degree in 2004.

4. Following my graduation from Fudan University, I joined the China Council for the Promotion of International Trade ("**CCPIT**") and worked my way there up the career ladder to the director level. As the name suggests, CCPIT is tasked to promote the business relations between the Chinese business community and their international counterparts. There I was specifically responsible for building and managing cooperation with international business organizations such as the International Chamber of Commerce ("**ICC**"). My 18-year stint with this quasi-government body helped me develop deep insights into how government and business operate and interact with each other in China as well as their ways of dealings with the world.

5. I transferred to private practice as a licensed PRC lawyer in 2008 and have practiced PRC Law as such ever since except for a two-year stint (between 2015 and 2017) as Chief Legal Officer at a subsidiary of

ChemChina. As a licensed lawyer, I have worked at a number of prestigious law firms, including the PRC Joint Office of Baker & McKenzie. My primary area of practice is litigation and arbitration of foreign-related disputes. My core client base is international companies. I have represented clients in hundreds of cases before Chinese courts and Chinese and international arbitration institutions such as the ICC, Hong Kong International Arbitration Center ("**HKIAC**") and China International Economic and Trade Arbitration Commission ("**CIETAC**").

6. Besides my practice as a licensed lawyer, I have also been sitting as arbitrator in scores of cases before arbitration institutions such as the ICC, HKIAC, CIETAC and Shenzhen International Arbitration Court ("**SIAC**"), serving as presiding arbitrator or sole arbitrator in the bulk of cases.

7. In enrichment of my legal practice, I joined ChemChina as Chief Legal Officer of its agricultural division in 2015, before returning to law firm practice again in 2017. There I supervised the inhouse counsel team in support of ChemChina's overseas acquisition endeavors such as the acquisition of Syngenta A.G., the world's number 1 agrichemical company. The acquisition remains China's biggest ever overseas acquisition so far. It was then and there that I had the immersive opportunity to look into how corporate inhouse counsel work and function within the corporate structure.

8. Attached as Exhibit A is a true and correct copy of my curriculum vitae.

   II.   **Compensation**

9. My compensation in connection with this matter is not contingent upon the outcome of the action *In Re DiDi Global Inc. Securities Litigation*, 1:21-cv-05807-LAK-VF. I am compensated at the rate of $450 per hour for preparing this report. Other than providing this report, I have no financial or other interest in the action, and I am not related to either plaintiffs, defendants, or their respective counsels.

### III. Scope of Opinions

10. I have been invited to give opinions on the following issues:

    1) whether the communications between a party to civil litigation proceedings and its legal counsel (including outside counsel and inhouse counsel) ("**Subject Materials**") are subject to involuntary document production under PRC Law;

    2) similarities between the evidence adduction rules under PRC Law ("**Chinese Evidence Regime**") and the client-attorney privilege doctrine under U.S. law;

    3) the role and status of corporate inhouse counsel as opposed to outside counsel, or licensed attorneys for that matter; and

    4) comments on the Plaintiffs' Expert Mr. Zhengyu Xin's opinions as stated in his Declaration dated May 20, 2025 (filed as document 383-7) ("**Xin's Declaration**").

11. In this report, "attorneys" and "lawyers" are presumed having the same meaning for the purpose of this report and will be used interchangeably. "Outside counsel" are presumed to hold license to practice law as "lawyers" and are therefore "licensed lawyers" or "licensed attorneys".

12. The opinions given in this report are only with regard to PRC laws excluding those of Hong Kong and Macao. Where specific laws are referred to without specifying jurisdiction, they are presumably PRC laws.

### IV. Materials Considered

13. For the purpose of this report, I have reviewed the Plaintiffs' Motion to Compel Production of Documents dated May 22, 2025 ("**Motion to Compel**") and its exhibits, especially Exhibit 7, i.e., Xin's Declaration. I have also reviewed the relevant texts of the articles and court

4

judgments cited in Xin's Declaration.

## V. Summary of Opinions

14. For a quicker grasp of the gist of my opinions pertinent to the current case, I summarize my opinions as follows:

    a) The Subject Materials are NOT subject to involuntary document production under PRC Law.

    b) The Chinese Evidence Regime operates to the same effect as the client-attorney privilege doctrine under U.S. law insofar as both of them bar the production of the Subject Materials as evidence in civil proceedings.

    c) Corporate inhouse counsel are no different from outside counsel retained by a company insofar as it relates to document production.

    d) The articles of law and court cases cited in Xin's Declaration do not contradict my foregoing conclusions.

15. I am happy to elaborate as follows.

## VI. Opinions in Detail

    i. *The Chinese Evidence Regime*

16. Before analyzing the Chinese document production rules, it would be helpful to take an overview of the Chinese Evidence Regime in general.

17. Sub-article 1 of Article 67 of the PRC Civil Procedure Law provides that "*A party shall have the responsibility to provide evidence in support of its own claims.*" (¶68, Xin's Declaration). This is the overarching principle of rule for evidence production in PRC civil proceedings, commonly known as the principle of "*he who makes a claim adduces evidence in support*" ("**Self-Evidence Principle**"), as

5

concurred in Xin's Declaration (¶69). Any provisions otherwise are merely exceptions and shall be read in such a context and construed always bearing the principle in mind.

18. The PRC Civil Procedure Law does provide two, and only two, exceptions to this principle, as stated in the second sub-article of Article 67, which reads: "*If a party or its litigation representative is unable, for objective reasons, to collect certain evidence on its own, or if the people's court deems certain evidence necessary for the trial of the case, the people's court shall investigate and collect such evidence.*" (¶68, Xin's Declaration). The two exceptions are: 1) if a party or its litigation representative is unable, <u>for objective reasons</u>, to collect certain evidence on its own; 2) if the people's court deems certain evidence <u>necessary for the trial</u> of the case (emphasis added). Only under these two exceptional circumstances may and will a court investigate and collect evidence instead of a party.

19. In the first exception (the "**Objective Impediment Exception**"), the court might proceed to collect evidence directly from third parties (as opposed to ordering either party to adduce the evidence on their own) upon the application of either party. This is known as Per Application Intervention.

20. In the second exception (the "**Extra-Party Necessity Exception**"), the court might proceed to collect evidence without the application of either party. This is known as Ex Officio Intervention.

21. As explained in ¶70 of Xin's Declaration, the circumstances for the Objective Impediment Exception include: *(i) the evidence in question is kept by state authorities, and the party and its litigation representative are not qualified to access or retrieve it; (ii) the evidence involves state secrets, trade secrets, or personal privacy; and (iii) the evidence is otherwise objectively beyond the capability of the party and its litigation representative to collect on their own*.

22. While the first two types of circumstances as described above are

6

specific enough, the third type, being a catch-all provision, looks a bit vague and seems unlimited. However, this is a frequently used technique in the enactment of statutes just to avoid missing something unforeseen at the time of enactment that might arise in the future and merit the same treatment as the foregoing specified types. Thus, the underlying assumption of the catch-all provision is that the situations to be covered under that provision shall be similar to the foregoing two types of circumstances in nature and character; shall be so rare that they are unforeseeable at the time of enactment; and shall be distinct enough from ordinary circumstances to merit a treatment that would compromise the overarching Self-Evidence Principle to a certain extent.

23. If we examine the first two types of circumstances where "objective reasons" are recognized, we would find that both of them involve the violation of law or some sort of government rules should the party be required to access and collect the evidence in question on their own. Therefore, the third unspecified type should match the first two in this respect.

24. Besides, it's commonly understood that the underlying assumption of the notion of "objective reasons" is that the evidence in question is in the custody of a third party. This is because, should "objective reasons" be extended to the opposing party, it would render the Self-Evidence Principle meaningless as most relevant evidence is either in the custody of the party itself or its opposing party. This view is also supported by the judicial practice of the Chinese Supreme People's Court[1], as well as an article[2] published by a Shanghai court specifically addressing this issue.

25. Obviously the Subject Materials do not fall into any of the three types of "objective reasons" that might call for the court's Per Application

---

[1] (2017) Zui Gao Fa Min Shen No. 1440 of the Chinese Supreme People's Court, and (2021) Zui Gao Fa Zhi Min Zhong No. 420 of the Chinese Supreme People's Court.

[2] Shanghai First Intermediate People's Court, *How would a judge interpretate applying for court-initiated evidence collection and investigation order* (October 2024), available at https://mp.weixin.qq.com/s/t35ALIrxVnjNcpW7HFk9sQ.

Intervention.

26. As explained in ¶71 of Xin's Declaration, circumstances for the Extra-Party Necessity Exception include: *(i) cases involving possible harm to national interests or public interests; (ii) cases involving personal status; (iii) cases provided for in Article 58 of the Civil Procedure Law; (iv) cases where the parties may have colluded in bad faith to damage the lawful rights and interests of others; and (v) cases involving procedural matters such as the addition of parties by the court's authority, suspension or termination of proceedings, recusal, etc.* The aforesaid Article 58 of the Civil Procedure Law refers to public interest litigation concerning subject matters such as environment or consumers.[3]

27. Obviously the Subject Materials do not fall into any of the above-described types of cases that might call for the court's Ex Officio Intervention.

28. As mentioned afore, although the PRC Civil Procedure Law only provides for two exceptions, i.e., the Objective Impediment Exception and Extra-Party Necessity Exception, to the Self-Evidence Principle, the Supreme People's Court introduced a novel mechanism for documentary evidence production by way of Article 112 of the Supreme People's Court's Interpretations on Application of the Civil Procedure Law ("**Civil Procedure Law Interpretations**"), which reads: "*If a documentary evidence is in the custody of the opposing party, the party carrying the burden of evidence adduction may file a motion, within the evidence adduction period, for the court to order the opposing party to produce the said evidence. If the reasons for the motion are found tenable, the court may order the opposing party to produce the said evidence.*" This provision specially enacted for documentary evidence (as opposed to evidence in general), being an apparent attempt by the Supreme People's Court to emulate the

---

[3] First sub-article of Article 58 of the PRC Civil Procedure Law provides that: "*For acts which harm public interest such as environmental pollution, infringement of the legitimate rights and interests of multiple consumers, etc., the authorities stipulated by the law and the relevant organizations may file a lawsuit with a People's Court.*"

document production mechanism in common law jurisdictions, has been widely acclaimed or criticized as a novelty or aberration in the context of the Chinese Evidence Regime because it might compromise the long-standing and overarching Self-Evidence Principle. To confine the impact of Article 112, the Supreme People's Court narrows down the circumstances wherein court orders for document production may be granted to only a few limited situations by way of Article 47 of the Supreme People's Court's Provisions on Evidence in Civil Procedures ("**Evidence Provisions**"), which are set forth as follows:

29. "*In either of the following situations, the party in custody of a documentary evidence shall produce the said evidence:*

    1) *The documentary evidence has been cited by the party in custody;*

    2) *The documentary evidence has been prepared for the benefit of the opposing party;*

    3) *The opposing party has the right to review and obtain the documentary evidence according to law;*

    4) *Accounting books and their underlying documents;*

    5) *Other situations where the court may find it necessary to order the production of documentary evidence.*"

30. Article 112 of the PRC Civil Procedure Law Interpretations (and Article 47 of the Evidence Provisions, which is the application guidance for Article 112) was introduced by the Supreme People's Court on top of and in parallel with the two exceptions provided in the Civil Procedure Law. Since Article 112 is about document production by the opposing party, this would mean by way of logic reasoning that the two exceptions provided in Article 67 of the PRC Civil Procedure Law shall not be about document production by the opposing party to a pending case. If the two exceptions covered document production by parties, the introduction of Article 112 would have been redundant.

9

31. Therefore, the only applicable rules for document production by parties to a pending proceeding are Article 112 of the Civil Procedure Law Interpretations and Article 47 of the Evidence Provisions. It is evident that **the Subject Materials** do not fall into any of the situations as provided in Article 47, nor do they meet the criteria for the Objective Impediment Exception or Extra-Party Necessity Exception, and hence **are not subject to involuntary document production.** Here it's important to note that there is no distinction between inhouse counsel and outside counsel insofar as document production is concerned.

      *ii.    Chinese Evidence Regime v. U.S. Client-Attorney Privilege Doctrine*

32. It is true that there is no doctrine or rule by the exact name of "client-attorney privilege doctrine" under PRC Law. However, I don't believe a mere nominal comparison would serve the purpose of the U.S. court in referring to PRC Law when communications relating to PRC Law are the Subject Materials under requests for document production. It must be something far more essential and fundamental than mere names that counts.

33. As PRC Law and U.S. law have vastly different traditions, structures and approaches, it would be difficult and misguided to attempt to find a rule or doctrine in PRC Law that is identical in every respect with its counterpart in U.S. law before applying it to solve an issue in U.S. proceedings. When it comes to the issue of document production by parties, it is important to recognize that the absence from PRC Law of the exact concept of "client-attorney privilege doctrine" is due to the fact that a party, under the Chinese Evidence Regime, is not required to produce evidence to support the opposing party's claims in the first place, let alone internal documentary evidence, and hence the exact notion of a special "client-attorney privilege doctrine" to restrict the production of communications between clients and attorneys becomes unnecessary. Indeed, the Chinese Evidence Regime provides protection to a broader range of evidence than the client-attorney

privilege doctrine, and encompasses the Subject Materials covered under the latter doctrine.

34. As discussed afore, if the Chinese Evidence Regime is to apply to the Subject Materials, the Subject Materials shall not be subject to court orders of production. In this respect it appears the client-attorney privilege doctrine under U.S. law leads to the same outcome.

   *iii. Inhouse Counsel v. Outside Counsel*

35. Xin's Declaration takes length to discuss the differences between inhouse counsel and licensed lawyers, trying to advance the idea that DiDi's inhouse counsel are not licensed lawyers. In my opinion this discussion in Xin's Declaration doesn't go beyond the nominal level and may be irrelevant to the present case. As far as I can see in the context of the present case, the more pertinent questions to ask would be: why should the client-attorney privilege only cover licensed lawyers? Is there any difference between inhouse counsel and outside counsel (supposedly licensed lawyers) more fundamental that would justify the preclusion of inhouse counsel from the privilege, or is there any similarity between the two cohorts more fundamental that would justify equal treatment as far as privilege is concerned? I understand these questions are primarily to be answered under U.S. law. However, I would nevertheless venture to offer the PRC Law perspective here just in case the court should find it useful, especially as I have been both an in-house counsel at a large corporation in China and an attorney in private practice.

36. As explained in the foregoing sections, under the Chinese Evidence Regime, inhouse counsel and outside counsel/licensed lawyers are treated the same as far as document production is concerned. Having had a 20-year-long career in the legal profession, my observation is that most inhouse counsel in Chinese companies now hold a Legal Qualification Certificate. Their role within the company is to provide independent advice on legal issues to the management. They are

11

required and mandated by the management to give independent opinions without undue influence from the management or other business divisions because that's the very purpose of their existence. They are generally bound for confidentiality obligations under their employment contract with the company or the company's internal rules. Their advice is relied on by the management as credible because they hold credentials in practicing law no less than outside counsel, the Legal Qualification Certificate being one of their credentials.

37. Indeed inhouse counsel and outside counsel frequently transfer from and to each other's camp, just like me personally when I joined ChemChina as their inhouse counsel team leader in 2015 and went back to law firm practice in 2017. The relationship between inhouse counsel and their employer is analogous with that between outside counsel and their client, except that the former is exclusive whereas the latter is not.

38. Inhouse counsel can also and do very often represent and advocate for their employers in litigation proceedings independently (without being accompanied by outside counsel), just like outside counsel.

39. The only meaningful difference between the two cohorts may be that inhouse counsel are not permitted to advise or represent any entity other than their employer while outside counsel are not limited in this respect. However, I fail to see how this difference should make them different with respect to privilege in document production.

    *iv.    Effects of Arguments, Articles and Cases Cited in Xin's Declaration*

40. In general, I find the conclusions reached in Xin's Declaration on the basis of various articles of law and court cases irrelevant to the issues in question in the present case, and can aver that they do not contradict the conclusions reached in this report anyway.

41. Xin's Declaration cited Article 70 of the Civil Procedure Law to

support its view that courts have the power to investigate and collect evidence and the parties being investigated shall not refuse (¶75). However, this article should be read in conjunction with Article 67 of the same law, which provides for the Self-Evidence Principle as well as the Objective Impediment Exception and Extra-Party Necessity Exception, rather than read in isolation. In other words, Article 70 shall be applicable only after the court chooses to exercise its power in accordance with the provisions of Article 67. That condition being met, of course there will be no dispute that the entities or individuals being called on shall comply with the court orders, just like any party in the U.S. shall comply with U.S. court orders once issued. The issue in question is, however, whether the court should issue such an order in the first place rather than whether a court order shall be complied with.

42. Xin's Declaration cited 3 court cases in Table 4 and 5 cases in Table 5 to advance the opinion that lawyers could testify in court on matters related to their clients. However, after a thorough review of the case judgments in question, I have three findings: 1) all the cases were about testimony rather than document production; 2) in all the cases, the testimonies were about certain specific facts they learned in the course of their work rather than about the legal advice they gave to their clients or the information their clients disclosed with a view to obtaining legal advice, nor the testified facts were state secrets, trade secrets or information of privacy which are covered under the confidentiality clause of the Lawyers Law[4]; and 3) All the testifying lawyers testified voluntarily without being compelled by court orders. **As such the cases cited in Xin's Declaration do not contradict the conclusions and opinions reached in this report and are irrelevant to the present case anyway.**

43. It is important to note that the PRC Law is not a case law regime. As

---

[4] Article 38 of the PRC Lawyers Law provides that: "*A lawyer shall keep confidential any state secret or trade secret which has come into his/her knowledge in the course of his/her practice, and shall not divulge any privacy of the parties concerned. A lawyer shall keep confidential any related not-to-be-divulged information of the client or any other person, except for the facts and information relating to the client or any other person's criminal intent or conduct of jeopardizing national security, public safety and serious harm to others' personal safety.*"

13

such court cases in China do not have binding power on subsequent cases. All judgments are supposed to be made strictly in accordance with the statutes, applicable customs and trade usages in certain types of cases, and the official interpretations of laws issued by the Supreme People's Court. It is not uncommon for various courts to take a different and even wrong interpretation of the laws and thence make judgments that are widely viewed as erroneous. Higher courts frequently overturn the rulings of lower courts. Even the Supreme People's Court renders divergent judgments on cases with similar circumstances from time to time. Therefore court cases in China, especially those of the courts below the Supreme People's Court, do not carry much guidance value as to the correct interpretation of PRC Law.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on June 6, 2025 in Beijing, China.

By _____

    Haifeng Li

# Exhibit A

## Curriculum Vitae of Haifeng LI

**Haifeng Li**
Partner
Beijing Chongguang Lw Firm
Beijing, China
M: +86 18612783583
E: lihaifeng@chglawfirm.com

### Practice Areas

Dispute resolution (arbitration/litigation), specially foreign-related; M&A.

### Recognitions

- Widely recognized by clients and the legal community as a distinguished professional.
- Legal 500 once noted: "The superb tactician Li Haifeng has acted as counsel or arbitrator in many international arbitral or litigation proceedings."
- "Recognized arbitration practitioner"-Chambers 2019.
- "Recommended arbitration practitioner"-Chambers 2023 & 2024

### Career in Overview

Li Haifeng has practiced PRC law at a number of prestigious law firms, including the Joint Operation Office of Baker & McKenzie in China. Besides private practice, he had stints at China National Agrochemical Corp. ("CNAC") as General Counsel/Chief Legal Officer, and at the China Council for the Promotion of International Trade (CCPIT), which is the supervisory body of CIETAC, and ICC CHINA, which is the China chapter of ICC, for over ten years, as Director of CCPIT, Deputy Secretary General of ICC CHINA respectively.

During his tenure at CNAC, which is part of ChemChina, he supervised the legal work in the $49bn acquisition of Syngenta, the largest ever overseas deal of China.

Li Haifeng sits as arbitrator at world-renowned arbitration institutions such as the ICC, HKIAC, CIETAC, Shenzhen International Arbitration Court, etc., and has arbitrated scores of cases, in most of which as presiding arbitrator or sole arbitrator.

## Education

- Master of Laws, Peking University
- B.A. majoring in English literature, Fudan University

## Languages

Chinese as native language; fluent in English

## Professional Affiliations as Arbitrator or Otherwise

- ICC International Court of Arbitration
- Hong Kong International Arbitration Center
- China International Economic and Trade Arbitration Commission
- Asian International Arbitration Center
- Shenzhen International Arbitration Center
- Shanghai International Arbitration Center
- Shanghai Arbitration Commission
- Qingdao Arbitration Commission
- Beijing Bar Arbitration Committee
- ICC Task Force member on Drafting of Consortium Model Contract
- Attorney Corps of International Investment Law hosted by the Ministry of Commerce, China
- Accredited as Expert of Finance Law of Central SOEs by SASAC

## Published Works

1. International Standby Practices ISP98 (Chinese translation)
2. Incoterms 2000 (Chinese translation)
3. Supplement to UCP for the Presentation of Electronic Documents (Chinese translation)
4. Collection of Opinions of the ICC Banking Commission (ICC pub. 632) (Chinese translation)
5. International Standard Banking Practices (Chinese translation)
6. ICC Uniform Rules on Collection（URC522）(Chinese translation)
7. ICC Commentary on Uniform Rules on Collection（URC550）(Chinese translation)
8. ICC Model Form Contract for Agency (Chinese translation)
9. ICC Uniform Rules on Demand Guarantee（URDG 458）(Chinese translation)
10. ICC Uniform Rules for Reimbursements under Documentary Letter of Credits（URR 525）(Chinese translation)
11. ICC Model Form Contract for Distributorship (Chinese translation)

12. ICC Guide to Uniform Rules for Contract Bonds (Chinese translation)
13. Uniform Customs and Practice for Documentary Credits（UCP 600）(Chinese translation)
14. International Standard Banking Practices (ISBP Amended) (Chinese translation)
15. Foreign-related Laws and Enforcement (Article)
16. Evidence and Service in Foreign-related Litigation in China (Article)

**Chronicle**

| | |
|---|---|
| 1968 | Born |
| 1985-1990 | Studied at Fudan University，majoring in physics and English literature consecutively |
| 1990-2008 | Worked at CCPIT up to department director and Deputy Secretary General of ICC CHINA (an affiliate of CCPIT). |
| 2002-2004 | Studied at Dept. of Laws of Peking University |
| 2008-2015 | Worked at Global Law Office as partner |
| 2015-2017 | Worked at ChemChina as Chief Legal Officer of its agrichemical division |
| 2017-present | Worked at law firms as partner, including Baker & McKenzie |