**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
Robin Howald
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DIDI GLOBAL INC. SECURITIES LITIGATION<br><br>This Document Related To: All Actions | Master Docket<br><br>21-CV-5807 (LAK)(VF)<br><br>**DECLARATION OF LAURENCE ROSEN IN FURTHER SUPPORT OF CLASS CERTIFICATION, RESPONDING TO DEFENDANTS' SUR-REPLY**<br><br><u>CLASS ACTION</u> |

I, Laurence Rosen, declare:

1. I am a member of the bar of this Court and an attorney for Lead Plaintiff Alaka Holdings Ltd., and named plaintiffs Shereen El-Nahas, Daniil Alimov, Bosco Wang, and Njal Larson (collectively, "Plaintiffs"). I make this Declaration in further support of class certification in conjunction with Plaintiffs' Response to Defendants' Sur-Reply, served and filed herewith.

2. I have personal knowledge and can competently testify as to the following facts.

3. On June 4, 2024, Plaintiffs served a Second Request for Production of Documents on DiDi Global Inc. Request No. 41 asked for the (general) period May 1, 2021, through September

1

30, 2021: "All documents that evidence, refer or relate to any transactions that the Underwriters conducted that had the potential for, or purpose of, stabilizing, maintaining, supporting, or otherwise affecting the market price of DiDi's ADS."

4. In a response to Request No. 41 served July 5, 2024, the Underwriters stated that they "will produce non-privileged documents, if any, that are sufficient to show the nature of the Lead Underwriters' stabilizing transactions for DiDi's June 2021 IPO between July 2 and July 7, 2021."

5. Plaintiffs objected that a response arbitrarily limiting search and production of responsive documents to six days in the middle of the class period was patently insufficient. In August, Plaintiffs narrowed the time period for their request to June 28 through August 9, 2021.

6. The Underwriters still refused to search for stabilizing transactions occurring after July 7 because: "our investigation to date indicates that [July 2 through July 7, 2021] is the period in which stabilizing transactions occurred." Ex. A, Letter from J. Rosenberg dated September 11, 2024.

7. Following yet another request I made on September 13, 2024, Mr. Rosenberg reiterated that based on his investigation, "[w]e are not aware of any stabilizing transactions after July 7" but he refused to actually have the Underwriters search their records to determine whether such stabilizing transactions occurred. Ex. B, Letter from J. Rosenberg dated September 25, 2024.

8. On October 4, 2024, I wrote another letter to Underwriters' counsel asking how Mr. Rosenberg's investigation could reliably indicate that no stabilizing transactions occurred after July 7 if the Underwriters have not searched their records for any such transactions.

9. On October 11, 2024, Underwriters' counsel responded once again that their investigation indicates no stabilizing transactions occurred after July 7 but "[n]onetheless .. will

2

perform the search described in the Responses for the period from June 28 to July 23, 2021." Ex. C, Letter from J. Rosenberg dated October 11, 2024.

10. Following review of the Underwriters' various document productions, Plaintiffs were unable to locate or identify any documents showing the stabilizing transactions.

11. On March 13, 2025, I emailed Underwriters' counsel and asked whether they had ever produced documents response to RFP No. 41 showing the stabilizing transactions.

12. After several follow up emails, on March 21, 2025, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████).

13. I provided this transaction information to Dr. Aggarwal for use in his expert report and analysis of the effect of the Underwriters' stabilizing trades.

14. Upon review, Dr. Aggarwal asked that we request the Underwriters provide more specific information on the transactions because ███████████████████████████████████████████████████████████████████████████████████████████████████████.

15. On March 31, 2025, I emailed Underwriters' Counsel and asked for more detailed information on the stabilizing transactions, to ensure that it was accurate, █████████████

---

[1] The emails showed the prices at which the purchases were purportedly made.

███████████████████████████████
██████.

16.     The Underwriters responded on April 1, 2025, suggesting it was too burdensome to produce the information. They asked for an explanation as to why plaintiffs wanted such details, which I immediately provided, explaining that it was necessary to address the Defendants arguments in their opposition to class certification that all the fraud-induced inflation had come out of DiDi stock following the July 6, 2021 media reports that the CAC had warned DiDi not to go public before completing, *inter alia*, a cybersecurity review.

17.     On April 9, 2025, Dr. Aggarwal filed his report showing that the stabilizing trades prevented a further decline in DiDi's share price during the Class Period ECF 355-2; 356-2.

18.     After much prodding, on April 30, 2025, the Underwriters agreed to produce within seven days the documents showing the details of the stabilizing transactions.

19.     On May 8, the Underwriters had still not produced the documents. Plaintiffs threatened an immediate motion to compel if the Underwriters did not produce the documents the next day.

20.     The next day, on May 9, the Underwriters produced ███████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
██████.

21.     Thus, the Underwriters' initial production falsely stated that ███████████
█████████████████████████████████████████.

22.     Although more detailed trading information was requested in late March, prior to the date on which Dr. Aggarwal's report was due (April 9, 2025), he was unable to include the

4

detailed trade information first produced on May 9, 2025, for the analyses contained in his report because of the Underwriters' refusal to honor their agreement to timely produce the responsive documents.

23. Both Defendants' brief (ECF 377 at 3 n.1) and their expert report (ECF 378-2 at 26) are critical of ███████████████████████████████████████████████ ███████████████████████████████████. However, despite the fact that Plaintiffs repeatedly requested the detailed trading information *for 10 months prior* to the issuance of Dr. Aggarwal's report it was not produced by the Underwriters until a month *after* the report was issued, more than 11 months after the document request was served, and only on the eve of Plaintiffs' filing a motion to compel production. Dr. Aggarwal's rebuttal report, filed herewith, updates certain calculations predicated on the new trading data produced to Plaintiffs on May 9.

24. Attached hereto are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit A: | Letter from J. Rosenberg dated September 11, 2024. |
| Exhibit B: | Letter from J. Rosenberg dated September 25, 2024. |
| Exhibit C: | Letter from J. Rosenberg dated October 11, 2024. |
| Exhibit D: | Goldman Sachs Regulation M Filing (GS-DIDI-00819289-291). |
| Exhibit E: | Emails from Morgan Stanley to Goldman Sachs (GS-DIDI-00819259-267) |
| Exhibit F: | Excerpts from the Deposition of Prof. Terrence Hendershott, Ph.D., taken May 28, 2025 |
| Exhibit G: | Rebuttal Report of Professor Rajesh Aggarwal, Ph.D., dated June 6, 2025 |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 6th day of June 2025, in New York, New York.

/s/ Laurence Rosen
Laurence Rosen

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen