UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

This document applies to:          All Actions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Master Docket
21-cv-5807 (LAK)

### MEMORANDUM AND ORDER

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED:  06/23/25            │
└─────────────────────────────────┘
```

Appearances:

Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
Robin Bronzaft Howald
THE ROSEN LAW FIRM, P.A.

Gregory Linkh
GLANCY PRONGAY & MURRAY LLP

*Attorneys for Plaintiffs*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP

Scott Musoff
Robert Fumerton
Michael Griffin
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*Attorneys for Defendant Didi Global Inc.*

Jonathan Rosenberg
Abby F. Rudzin
Shane A. Hunt
William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
*Attorneys for Defendants Goldman Sachs (Asia)*
*L.L.C., Morgan Stanley & Co. LLC, J.P. Morgan*
*Securities LLC, BofA Securities Inc., Barclays*
*Capital Inc., Citigroup Global Markets Inc.,*

2

*China Renaissance Securities (US) Inc., HSBC Securities (USA) Inc., UBS Securities LLC, and Mizuho Securities USA LLC*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Will Wei Cheng, Jean Qing Liu, Stephen Jingshi Zhu, Alan Yue Zhuo, and Daniel Yong Zhang*

Sheryl Shapiro Bassin
Ignacio E. Salceda (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
*Attorneys for Defendant Zhiyi Chen*

Matthew S. Kahn
Michael D. Celio (*pro hac vice*)
Kevin J. White
GIBSON DUNN & CRUTCHER LLP
*Attorneys for Defendant Martin Chi Ping Lau*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Defendants Adrian Perica and Kentaro Matsui*

Jeffrey T. Scott
Andrew M. Kaufman
SULLIVAN & CROMWELL LLP
*Attorneys for Defendant Kentaro Matsui*

LEWIS A. KAPLAN, *District Judge.*

"In this world nothing can be said to be certain, except death and taxes"[1] — and motions to compel in this litigation. In its opinions addressing several such motions, the Court has ordered defendant DiDi Global, Inc. ("DiDi") to provide deposition testimony from its Rule 30(b)(6)

---

[1] Letter from Benjamin Franklin to Jean Baptiste Le Roy (Nov. 13, 1789).

3

witness,[2] a revised log for documents withheld on the basis of People's Republic of China ("PRC") blocking statutes,[3] and an answer to an interrogatory.[4]  The Court also has denied certain relief sought, including the production of documents, based on international comity concerns.[5]

Plaintiffs now move for an order compelling DiDi to produce certain documents withheld based on PRC blocking statutes.[6]  Plaintiffs move also to compel documents withheld or redacted on privilege and work product grounds.[7]

*Background*

The Court assumes familiarity with the underlying facts and procedural history.  As set forth in the Court's opinion denying defendants' motion to dismiss, plaintiffs allege that:

> Didi decided to offer its American Depository Shares to the public and list on a U.S. stock exchange. Before it did so, however, the Cyberspace Administration of China ("CAC") directed Didi to postpone its IPO in the United States until after Didi had completed — to the CAC's satisfaction — a thorough self-inspection of its business, operations and policies.  This self-inspection was to include a cybersecurity review, to ensure compliance with all applicable laws and regulations concerning national security, network security, data security, and/or the collection and protection of private personal information. . . . Although Didi did not disclose the CAC Directives publicly, it privately gave the CAC the impression that it would follow the

---

[2] Dkt 276.

[3] Dkt 320.

[4] Dkt 336; *see also* Dkt 343.

[5] Dkt 320.

[6] Dkt 370.

[7] Dkt 383.

4

Directives. Instead, it moved forward with the IPO and listed on the New York Stock Exchange on June 30, 2021.[8]

In the course of this litigation, the Court has adjudicated seven motions to compel[9] and two motions seeking reconsideration or certification for appeal of the Court's decisions on those motions.[10] In one such motion, plaintiffs moved to compel the production of thousands of documents withheld or redacted on the grounds that PRC statutes prohibited their production. The Court denied the motion in substantial part (the "March 7 Order"), ruling that (1) Chinese law prohibited disclosure of the sought after documents, and (2) an order compelling disclosure was not warranted based on an international comity analysis.[11]

The Court did, however, order DiDi to "produce a revised log providing, for each withheld document, (1) which [document] request(s) the document is responsive to, and (2) a description of the document's contents sufficient for plaintiffs to determine the importance of the document to the litigation."[12] The March 7 Order further states that "[f]ollowing production of the revised withhold log, plaintiffs may file a motion to compel specific documents or categories of documents. Such a motion must state with specificity the plausible basis for inferring (1) the importance of the document(s) to the litigation, [and] (2) the inability to obtain the information in

---

[8]     Dkt 158 at 4–5 (cleaned up).

[9]     Dkts 203, 225, 240, 252, 276, 320, 336.

[10]     Dkts 329, 343.

[11]     Dkt 320.

[12]     *Id.* at 10–11.

the document(s) via other means."[13]

Plaintiffs now renew their motion to compel documents ("PRC Law Motion").[14] They here seek a total of 1,083 documents related to: (1) the CAC's cybersecurity review of DiDi announced on July 2, 2021 ("Cybersecurity Review Documents"), (2) government-ordered self-inspections ("Self-Inspection Documents"), and (3) network, data, and information security ("Security Documents").

Plaintiffs move also to compel documents withheld or redacted on privilege and work product grounds ("Privilege Motion").[15]  The Privilege Motion seeks to compel the production hundreds of documents that are withheld also based on PRC blocking statutes, along with a smaller batch of documents that have been withheld based only on privilege or work product grounds.

*Discussion*

I.    *PRC Law Motion*

A.    *Legal Standard*

As set forth in the March 7 Order and the Court's other opinions in this case, the Court conducts a two-step analysis to determine whether discovery should be compelled where a party invokes a foreign blocking statute.[16]  First, the Court analyzes whether disclosure of the

---

[13]      *Id.* at 10.

[14]      Dkt 370.

[15]      Dkt 383.

[16]      Dkt 320 at 4–6; *see also* Dkt 276 at 5–6; Dkt 329 at 7–12.

information sought would violate the foreign statute(s) at issue.  Second, the Court considers whether the Court should compel disclosure notwithstanding the foreign statute in consideration of the principles of international comity.  In the second step of the analysis, the Court analyzes the five factors set forth by the U.S. Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*[17] — (1) the importance of the information to the litigation, (2) the specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the information, and (5) the balance of national interests.  The Court considers also the good faith of the party resisting discovery and the potential hardship of compliance with an order compelling discovery.[18]

The parties dispute the significance of the March 7 Order's instruction to "state with specificity the plausible basis for inferring (1) the importance of the document(s) to the litigation, (2) the inability to obtain the information in the document(s) via other means."[19]  Plaintiffs construe this language to mean that the instant motion "is about those two narrow issues," while DiDi asserts that the Court must conduct a fulsome analysis consistent with the legal standard set forth above.[20]  DiDi further argues that plaintiffs have waived any arguments other than those regarding the importance of the documents to the litigation and alternative means of obtaining the information

---

[17]

    482 U.S. 522 (1987).

[18]

    *See* Dkt 329 at 7–11.

[19]

    Dkt 320 at 10; *see* Dkt 372-11 (correspondence among counsel disputing whether the instant motion "is about those two narrow issues").

[20]

    *See* Dkt 372-11 at 13–14.

7

because plaintiffs' motion only addresses those factors.[21]

DiDi is correct that the Court may grant a motion to compel only after analyzing all of the relevant factors. DiDi's waiver argument, however, is incorrect. Plaintiffs discussed all relevant considerations in their original motion and have followed the Court's instructions to focus particularly on two factors in its renewed motion. Moreover, DiDi does not point to any cases applying such a stringent waiver standard in the context of discovery motions.

Accordingly, the Court conducts a fulsome comity analysis based on the full record before it, including materials submitted in connection with plaintiffs' original motion to compel the production of documents.[22]

B.    *Prohibition on Disclosure*

In the March 7 Order, the Court concluded that Chinese law prohibited disclosure of the sought after documents. In so ruling, the Court relied on the representations of DiDi's general counsel that "DiDi submitted [the sought after] documents to Chinese authorities to obtain approval prior to producing them. Based on the 'feedback' it received, DiDi produced approximately 37,000 documents without redactions and 1,500 documents with redactions and withheld approximately 2,100 documents."[23] Plaintiffs do not challenge that conclusion in this motion.

Plaintiffs do, however, suggest that DiDi has not been forthcoming about its role in

---

[21]    Dkt 394 at 9, 12–14.

[22]    *See* Dkt 285.

[23]    Dkt 320 at 4.

8

the (non-)approval of the production of certain documents. In chief, plaintiffs highlight the production of 492 previously withheld documents on May 12 and 13 — shortly before the date on which plaintiffs had told DiDi they would be filing this motion.[24] DiDi denies any impropriety, stating that it "has continued in good faith to seek governmental approval to produce documents" and "has consistently produced documents as soon as it has received authorization to do so."[25] But DiDi has provided no explanation — let alone documentation — of the process by which it has sought approval from PRC authorities. Nor does it account for the belated authorization to produce 492 previously withheld documents.

DiDi does attach a "Notice of Assessment Result" from the CAC dated April 18, 2025 ("CAC Notice"), issued in response to DiDi's "application for the Security Assessment of Outbound Data Transfer."[26] That notice includes "four categories of data [that] are prohibited from being transferred abroad" — (1) "Reporting materials related to responding to government investigations, inquiries, and communications," (2) "Work reports made to government authorities during investigations," (3) "Information related to non-public meetings and communications with government authorities," and (4) "Inquiries and requests issued by government authorities to the company."[27] This document answers some questions while begging others. DiDi does not state what the contents of its application were, when the application was submitted, whether DiDi has received

---

[24]     Dkt 371 at 6–7; *see also* Dkt 372-11 at 6 ("[T]he timing of the production, on the eve of our filing a second motion to compel, is an interesting coincidence.").

[25]     Dkt 372-11 at 5–6.

[26]     Dkt 395-4.

[27]     *Id.*

9

similar notices in response to other applications, or what other communications with the CAC resulted in the May 12 and 13 production of previously withheld documents.

The withheld documents all appear to fall within the four categories listed in the CAC Notice. Accordingly, the Court concludes that Chinese law likely prohibits their disclosure. At the same time, doubts about the shifting, unexplained application of the prohibition on disclosure factors into the next step of the Court's analysis.

### C. *Comity Analysis*

#### 1. *Balance of National Interests*

In the March 7 Order, the Court recognized that China has a legitimate interest in nondisclosure based on its objection to the production of documents.[28] However, the unexplained, shifting authorizations outlined above indicate that these objections are provisional at most. The Court is left to rely on DiDi's vague accounts of instructions purportedly issued by the Chinese government, devoid of any details from which the Court could determine the strength of the interest at issue. Moreover, the timing of the belated production of previously withheld documents raises questions about the degree to which DiDi may be able to influence, to some undetermined degree, the authorization process. The Court recognizes China's interest in enforcing its laws by restricting the production of documents in the four categories stated in the CAC Notice. But it cannot, on the present record, conclude with certainty that this interest has been applied meaningfully and durably to the disputed documents at issue.

With respect to the United States, the March 7 Order recognized its interest in full

---

[28] Dkt 320 at 7–8.

and fair adjudication of matters before its courts.[29]  "This interest is strongest where the sought after information is important to the litigation and there are no other means of obtaining the information, factors discussed below."[30]

    2.    *Importance to the Litigation*

    i.    *Cybersecurity Review Documents*

The Cybersecurity Review Documents constitute the bulk of the documents at issue (912 out of 1,083).  These documents are responsive to request for production ("RFP") 5, which sought "[f]or the time period from July 2, 2021 to July 21, 2022, Documents evidencing, referring or relating to DiDi's cybersecurity review announced on July 2, 2021."[31]  Plaintiffs assert that these documents are relevant to their allegations that (1) the CAC ordered the cybersecurity review in response to DiDi's defiance of its directive not to move forward with the IPO, (2) defendants falsely stated in the underwriting agreement that it was in material compliance with applicable laws,(3) their losses were caused by DiDi's misstatements and omissions, (4) DiDi's executives falsely affirmed that they were in compliance with applicable laws and there were no material adverse events affecting DiDi.  Plaintiffs argue further that the documents will shed light on "who at DiDi was responsible for disobeying" alleged directives not to proceed with the IPO.[32]

---

[29]       *Id.* at 8.

[30]       *Id.*

[31]       Dkt 371 at 10.

[32]       *Id.* at 10–12.

DiDi argues that the Cybersecurity Review Documents are not important because they post-date the IPO. On this view, these documents are not important because they do not "shed light on what DiDi knew about its noncompliance with the law *at the time of the IPO*."[33] But the mere fact that the documents post-date the IPO does not mean they are unimportant to claims concerning pre-IPO events. To the contrary, plaintiffs allege that the review focused on DiDi's pre-IPO compliance with cybersecurity laws. Documents related to the review therefore likely concern information important to plaintiffs' allegations about DiDi's pre-IPO compliance with PRC laws and any alleged CAC directives.

DiDi argues also that the Cybersecurity Review Documents are not important because they do not support plaintiffs' allegations. DiDi asserts this is the case because the documents are not responsive to other, more pertinent RFPs. For example, DiDi points to RFPs 2, 14, 16, and 17, which seek documents related to requests from the PRC authorities to postpone the IPO or those relating to DiDi's knowledge of non-compliance.[34] According to DiDi's logs, none of the Cybersecurity Review Documents is responsive to these RFPs and therefore, DiDi contends, they are not important because they do not support plaintiffs' allegations that the CAC directed DiDi to postpone its IPO.

The fact that the documents purportedly are non-responsive to more targeted requests does not render them unimportant. First, there is reason to doubt to DiDi's representations about their non-responsiveness to other RFPs. According to DiDi's logs, not a single document is

---

[33]    Dkt 394 at 6 (emphasis in original).

[34]    Dkt 395-5 at 3, 5–6.

responsive to more than one RFP.[35]  That result beggars belief, suggesting a restrictive interpretation of RFPs 2, 14, 16, and 17.  Second, determining whether a document is responsive to one of those RFPs involves a degree of discretion.  For example, RFP 2 seeks documents related to "suggestions, directives, orders, or requests by the PRC governmental representative to DiDi to postpone its IPO in the United States."[36]  It is possible, even likely, that plaintiffs' counsel and DiDi's counsel take a different view of whether a communication constitutes a "suggestion" to DiDi to postpone its IPO. Third, Cybersecurity Review Documents may be important to plaintiffs' allegations even if they are not responsive to RFPs 2, 14, 16, and 17.  While those requests seek documents that likely would provide direct evidence in support of their allegations, other non-responsive documents may provide circumstantial evidence supporting plaintiffs' claims.

### ii.    *Self-Inspection Documents*

The next category at issue is Self-Inspection Documents.  The 167 documents in this category are responsive to RFP 1, which seeks documents related to requests by PRC authorities to DiDi to perform a self-inspection of its business, operations, and policies.  Plaintiffs argue that "[t]hese documents are important because they concern key PRC regulators' concerns about DiDi's compliance with data privacy and data security laws, whether DiDi satisfactorily rectified non-compliance prior to the IPO, and whether any of these requests or directives related to the

---

[35]    *See* Dkt 394 at 14.

[36]    Dkt 395-5 at 3.

IPO."[37]

DiDi argues that these documents pertain to government inquiries that are unrelated to plaintiffs' claims. For example, 73 of the Self-Inspection Documents relate to an antitrust inquiry, which DiDi disclosed prior to the IPO.[38]

According to DiDi's interrogatory answers, DiDi "carried out a comprehensive self-inspection of its business operations and submitted a rectification report to [the State Administration for Market Regulation]" five weeks before the IPO.[39] This report included information on DiDi's policies and procedures relating to personal information collection and protection — topics that are directly related to plaintiffs' claims. Accordingly, plaintiffs have raised a plausible inference that Self-Inspection Documents related to the antitrust inquiry are important. Plaintiffs do not convincingly argue that documents related to the other inquiries are important to their claims.

### iii.    Security Documents

The final category at issue is Security Documents. Plaintiffs provide no information or argument about the purported importance of these documents.[40] Without more information, the Court cannot conclude that these documents are relevant, much less important, to plaintiffs' claims.

---

[37]    Dkt 410 at 6.

[38]    Dkt 394 at 7.

[39]    Dkt 372-15 at 10.

[40]    Dkt 371 at 14–15.

### 3. *Alternate Means of Obtaining Information*

DiDi suggests that the relevant information in the sought after documents can be obtained via deposition testimony and interrogatories.[41]  However, DiDi previously has argued that the same limitations prohibiting them from producing documents apply with equal force to deposition testimony and interrogatory answers.[42]  There is no reason to conclude that information that DiDi is prohibited from producing in documentary form may be provided during a deposition or in interrogatory answers.  Further, even if no such prohibition applied to depositions and interrogatory answers, they are a complement to — not a substitute for — document discovery.  There are myriad reasons, from imperfect memory to intentional obfuscation, why written or oral answers are imperfect substitutes for document production.

### 4. *Remaining Factors*

As set forth in the March 7 Order,[43] the remaining factors do not point clearly in either direction: (1) the requests are specific, (2) the withheld documents originated in China, (3) DiDi may be subject to sanctions for producing documents, although they are unlikely to be severe,[44] and (4)

---

[41]    Dkt 394 at 11.

[42]    *See, e.g.*, Dkt 257 at 2; Dkt 326 at 1–2.

[43]    Dkt 320 at 9–10.

[44]    The fact that DiDi has not faced any sanctions for its compliance with the Court's orders compelling deposition testimony and interrogatory answers supports this conclusion.  So too does PRC authorities' shifting authorizations for production, which indicate that any prohibition is provisional at most.

the Court does not question DiDi's good faith with respect to the matter before the Court.[45]  The

Court's conclusions with respect to these factors remain substantially the same.


     *5.     Conclusion*

         In sum, the Court concludes that China's interest in non-production is opaque, while

the United States' interest in adjudication is strong.  That interest is buttressed by the importance of

most of the sought after documents to the litigation and the lack of viable alternative means of

obtaining those documents.  Accordingly, the Court will order DiDi to produce the Cybersecurity

Review Documents and Self-Inspection Documents related to PRC regulators' antitrust inquiry that

are not subject to valid privilege claims.


### III.    *Privilege Motion*

         The Privilege Motion seeks to compel the production of documents withheld based

on attorney-client privilege and work product protection.  Plaintiffs argue that DiDi has waived its

privilege and protection claims for the vast majority of the documents sought.  The Court first

addresses the waiver argument, and next considers DiDi's privilege and protection claims only in

so far as they have not been waived.

---

[45]    The timing of the authorizations to produce documents set forth above arguably calls into question DiDi's good faith.  But on the present record, the Court does not conclude that DiDi has acted in bad faith.

A.    *Waiver*

Plaintiffs assert that DiDi waived privilege or work product claims for 954 documents DiDi first listed on a privilege log on March 20, 2025.[46]  DiDi previously had listed these documents on logs listing documents withheld based on PRC blocking statutes, but it did not conduct a privilege review of those documents.[47]

Rule 26(b)(5) requires a party asserting a privilege or protection to "make the claim expressly and . . . describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection."  Local Civil Rule 26.2 also requires a party to "identify the nature of the privilege (including work product) which is being claimed."  "The purpose of Rule 26.2(c) . . . reflects the Court's preference that parties raise all objections at once, rather than in staggered batches, so that discovery does not become a game."[48]  "Failure to provide the information required by Rule 26 or Local Civil Rule 26.2 may result in a waiver of privilege."[49]

At the time plaintiffs first moved to compel the production of documents withheld

---

[46]

Dkt 383 at 1.  Plaintiffs represent that 105 of the withheld documents have since been "cleared" by PRC authorities and are being withheld only on the basis of privilege.

[47]

Dkt 404 at 1.

[48]

*In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

[49]

*AU New Haven, LLC v. YKK Corp.*, No. 15-cv-3411(GHW)(SN), 2018 WL 333828, at *2 (S.D.N.Y. Jan. 5, 2018) (citing cases).

17

on the basis of PRC blocking statutes,[50] DiDi had not indicated that any of the sought after documents were privileged.  DiDi did not raise potential privilege claims in its opposition to that motion.[51]  The withholding logs it had produced up to that point included a "withholding basis" column, listing various PRC laws that prohibited production of the sought after documents.[52]  Those logs included also a "description" column, which stated only "Government Information" or "Non-public Transportation Statistical Data" for every withheld document.[53]  Had the Court granted the relief sought by plaintiffs, DiDi would have been compelled to produce the documents.  In denying that relief without prejudice, the Court recognized that neither it nor plaintiffs had sufficient information about the withheld documents, owing to DiDi's failure to provide sufficient information in its withholding logs.  In effect, DiDi now seeks to benefit from the delay caused by its deficient logs in order to raise untimely privilege claims.

DiDi states that it "first placed . . . documents on a PRC law log without conducting a privilege review."[54]  This approach flies in the face of Rule 26 and Local Civil Rule 26.2, which do not "permit any party to make its assertions of privilege a moving target."[55]  "[T]he Court and parties are entitled to rely on the information contained in a privilege log. . . . The iterative process

---

[50]    Dkt 285.

[51]    Dkt 310.

[52]    Dkts 285-2, 285-3, 285-4.

[53]    *Id.*

[54]    Dkt 404 at 1.

[55]    *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 166 (S.D.N.Y. 2014).

proposed by [DiDi], if permitted, would lead to endless litigation at the expense of the Plaintiffs and further expend judicial resources."[56]

DiDi argues that its "good faith and production efforts are nowhere close to the threshold for waiver of privilege."[57] The decisions DiDi cites in support mainly involved minor defects in privilege logs — not wholesale failures to assert privilege claims.[58] Courts in this District frequently have found waiver of untimely asserted privilege claims over withheld documents where a party originally asserted a different privilege or protection.[59]

---

[56]

*AU New Haven*, 2018 WL 333828, at *1.

[57]

Dkt 404 at 1.

[58]

*See In re Welspun Litig.*, No. 16-cv-6792 (RJS), 2018 WL 4693587, at *3 (S.D.N.Y. Sept. 21, 2018) (no waiver where privilege log "lack[ed] job titles and dates and therefore fail[ed] to include all of the required elements of a privilege log"); *Chevron Corp. v. Donziger*, No. 11-cv-691 (LAK), 2013 WL 4045326, at *3 (S.D.N.Y. Aug. 9, 2013) (no waiver where litigant "specified the documents with sufficient identifying information as well as specified the privilege claimed; it is only the descriptions supporting the assertion of the privilege that are insufficiently detailed"). DiDi does cite a case in which the court permitted defendants to revise belatedly their privilege log to assert attorney client privilege, where the existing log listed only work product protection. *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 159 (E.D.N.Y. 1994). This case is 31 years old, from another court, and at odds with the authority cited by plaintiffs. Further, the privilege claim there first was raised by the court after conducting an in camera review of the documents. The Court is not in a comparable position here to pass on DiDi's privilege claims.

[59]

*See Yorkville Advisors*, 300 F.R.D. at 165–66 (finding waiver where revised privilege log "abandon[ed] the law enforcement and intergovernmental investigative privileges in favor of claims of privilege that were never previously asserted"); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y. 1990) ("In failing to specify work product as the particular privilege protecting its various documents, [the claimant litigant] . . . waived work product immunity for the documents"); *see also In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003) (party may waive privilege claim "if it fails to assert it in a privilege log, but instead asserts a different privilege"); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (waiver where privilege log did not identify which privilege was being asserted).

19

Accordingly, DiDi's claims of attorney-client privilege and work production protection raised for the first time in its amended second supplemental privilege withhold log have been waived.

B.    *Remaining Documents*

1.    *Applicable Law*

For a subset of the sought after documents, plaintiffs assert that PRC law governs the applicability of privileges and protections. DiDi counters that U.S. law applies. Although the briefs are not a model of clarity, it appears that this dispute applies to documents for which, per the Court's ruling above, DiDi's privilege and work product protection claims have been waived. For those documents, the Court does not rule on (1) which law applies to the privilege and protection claims asserted as to those documents, and (2) whether attorney-client privilege and work product protection are available under PRC law. For the remaining documents, the Court analyzes DiDi's privilege and protection claims under U.S. law.

2.    *Legal Advice from In-House Counsel*

Plaintiffs assert that "DiDi improperly withheld documents that contain legal advice, or requests for the same, from DiDi's unlicensed in-house counsel."[60] Plaintiffs cite nine entries on DiDi's privilege logs supposedly referencing legal advice from allegedly unlicensed in-house

---

[60] Dkt 383 at 4.

counsel,[61] but only five actually do.[62]  Those five entries list "Jennifer Zhou" as the custodian.  They

do not name any other individuals involved in their creation or transmission.

As the proponent of the privilege claim, DiDi bears the burden "to establish those

facts that are essential elements of a privileged relationship."[63]  The record does not indicate who Ms.

Zhou is, whether she is a licensed attorney, or even whether she is the in-house counsel rendering

legal advice.  Accordingly, DiDi has not satisfied its burden to establish its privilege claim as to

these documents.

### 3. *Communications with Auditor*

Plaintiffs seek twenty withheld documents that are communications with auditor

PricewaterhouseCoopers Zhong Tian LLP ("PwC").

"[I]t is well established that documents exchanged between a company's in-house or

outside counsel and its auditors are not protected by the attorney-client privilege."[64]  DiDi cites two

cases in which courts denied motions to compel documents shared with auditors that were withheld

---

[61]

*Id.*

[62]

Dkt 383-3, Nos. 33–36, 40.  The Privilege Motion cites Dkt 383-1, No. 890, but this citation does not correspond to an entry on this log, which only contains 297 rows.  The motion cites also Dkt 383-2, Nos. 78, 248, 296, but the log indicates that these documents contain legal advice from outside counsel — not purportedly unlicensed in-house counsel.

[63]

*Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) quoting *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)).

[64]

*Vacco v. Harrah's Operating Co.*, No. 1:07-c-v-663(TJM/DEP), 2008 WL 4793719, at *5 (N.D.N.Y. Oct. 29, 2008).

as attorney work product.[65]  But DiDi did not assert work product protection over these documents. DiDi does not identify any authority supporting the application of attorney-client privilege to documents shared with auditors.  Accordingly, DiDi's privilege claims as to these documents is not valid.

### *Conclusion*

For the foregoing reasons, plaintiffs' motions to compel the production of documents (Dkt 370; Dkt 383) are granted to the following extent:

DiDi shall produce the 912 Cybersecurity Review Documents, 73 Self-Inspection Documents related to the antitrust inquiry, 20 documents involving communications with auditor PricewaterhouseCoopers Zhong Tian LLP, documents listed at Nos. 33–36 and 40 on the First Supplemental Privilege Withhold Log (Dkt 383-3), and 105 documents listed on the Amended Second Supplemental Privilege Withholding Log (Dkt 383-4) no longer being withheld based on PRC blocking statutes.

---

[65]    Dkt 404 at 4 (citing *Merrill Lynch & Co. v. Allegheny Energy*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) (denying compulsion of independent auditor's reports); *United States v. Petit*, 438 F. Supp. 3d 212, 214 n.2 (S.D.N.Y. 2020) (no waiver for work product provided to independent auditor).

The motions otherwise are denied.


SO ORDERED.

Dated:        June 23, 2025

                                                                _____
                                                                        Lewis A. Kaplan
                                                                United States District Judge