**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DIDI GLOBAL INC. SECURITIES LITIGATION | Master Docket No. 1:21-cv-05807-LAK-VF<br><br><br>This Document Relates To: All Actions |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of December 9, 2025 (the "Stipulation"), is entered into between Class Representatives Alaka Holdings, Ltd., Shereen El-Nahas, Bosco Wang, Daniil Alimov, and Njal Larson (collectively, "Plaintiffs"), on behalf of themselves and each of the Class Members, and Defendants: DiDi Global Inc. ("DiDi"); Will Wei Cheng, Jean Qing Liu, Stephen Jinghsi Zhu, Alan Yue Zhuo, Zhiyi Chen, Martin Chi Ping Lau, Daniel Yong Zhang, Kentaro Matsui, Adrian Perica (collectively, the "Individual Defendants"); and Goldman Sachs (Asia) LLC, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, BofA Securities, Inc., Barclays Capital Inc., China Renaissance Securities (US) Inc., Citigroup Global Markets Inc., HSBC Securities (USA) Inc., UBS Securities LLC, and Mizuho Securities USA LLC (collectively, the "Underwriter Defendants") (DiDi, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants"), by and through their respective counsel of record in this Action.[1]  This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle all claims asserted in this Action against Defendants, subject

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

to the approval of the United States District Court for the Southern District of New York (the "Court") and the terms and conditions as set forth herein.

## PROCEDURAL HISTORY OF THE LITIGATION

A.      This consolidated action commenced in July of 2021, when a series of four related actions were filed in the Southern District of New York over the course of approximately two months: *Espinal v. DiDi Global Inc., et al.*, Case No. 1:21-cv-05807-LAK (July 6, 2021); *Chopra v. DiDi Global Inc., et al.,* Case No. 1:21-cv-05973-LAK (July 12, 2021); *Kucharski v. DiDi Global Inc., et al.*, Case No. 1:21-cv-06603-LAK (August 4, 2021); and *Hechler v. DiDi Global Inc., et al.*, Case No. 1:21-cv-07550-LAK (September 9, 2021).

B.      On October 12, 2021, the Court entered an order consolidating the above actions, appointing Junhong Cao as Lead Plaintiff for the Action pursuant to the Private Securities Litigation Reform Act of 1995, and appointing the Rosen Law Firm, P.A. as Lead Counsel for the putative class.  Dkt. No. 69.

C.      On January 7, 2022, Plaintiffs filed their first Amended Complaint.  Pursuant to stipulation of the Parties, following motions to dismiss filed by Defendants on March 8, 2022 (Dkt. Nos. 92, 95), Plaintiffs were granted leave to file a Second Amended Complaint.  Dkt. No. 105.

D.      On May 5, 2022, Plaintiffs filed their Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("the SAC").  Dkt. No. 106. The SAC asserted claims under (1) Sections 11 and 15 under the Securities Act of 1933 (the "Securities Act") for all purchasers of DiDi American Depositary Shares ("ADSs") pursuant and/or traceable to the Registration Statement and Prospectus in connection with DiDi's June 30, 2021, initial public offering ("IPO"); (2) Sections 12(a)(2) and 15 under the Securities Act for all purchasers at the IPO price directly from one of the underwriters in the IPO; (3) Sections 10(b) and 20(a) under

2

the Securities Exchange Act of 1934 (the "Exchange Act") for all purchasers of DiDi ADSs during the proposed class period; and (4) Sections 20A and 20(a) under the Exchange Act for all purchasers of DiDi ADSs contemporaneous with the sale by DiDi of DiDi ADSs.

E.    The SAC alleged, *inter alia,* that DiDi failed to disclose that the Chinese government had warned DiDi not to go forward with its IPO until it was in compliance with Chinese cybersecurity and data privacy and protection laws, and that DiDi misstated that it was in material compliance with Chinese cybersecurity and data privacy and protection laws. The SAC further alleged that, on July 2, 2021, just two days after the IPO, the Cyberspace Administration of China ("CAC") placed DiDi on Cybersecurity review and suspended its registration of new users on its ride sharing platform and that in the following days, the CAC announced DiDi was in violation of cybersecurity and data protection laws and implemented additional sanctions against DiDi. The SAC alleged that the CAC's sanctions caused DiDi's share price to decline substantially as these additional sanctions were announced over the three-week class period, damaging investors.

F.    On June 3, 2022, all of the Defendants moved to dismiss the SAC for failure to state a claim. Dkt. Nos. 112, 115. On July 22, 2022, certain Individual Defendants—Will Wei Cheng ("Cheng"), Jean Qing Liu ("Liu"), Alan Yue Zhuo ("Zhuo"), Stephen Jingshi Zhu, and Daniel Yong Zhang, as well as Martin Chi Ping Lau, writing separately—also moved to dismiss the SAC. Dkt. Nos. 128, 130. Finally, Individual Defendants Kentaro Matsui, and Adrian Perica, acting together, were later granted leave to file their own motion to dismiss the SAC, which they did on October 10, 2022. Dkt. No. 151. In total, Defendants filed five separate motions to dismiss the SAC.

G.     On March 14, 2024, in a 52-page opinion, the Court denied the five motions to dismiss.  The Court found that Plaintiffs had adequately stated a claim for six causes of action.  Under the Securities Act, the Court denied motions to dismiss: (1) a Section 11 claim against all defendants, (2) a Section 12(a)(2) claim against DiDi and the Underwriter Defendants, and (3) a Section 15 claim against Cheng and Liu as control persons.  With respect to the Exchange Act claims, the Court denied motions to dismiss: (1) Section 10(b) and Rule 10b-5(b) omission claims, and Rule 10b-5(a) and (c) scheme claims against DiDi, Cheng, Liu and Zhuo, (2) a Section 20A claim against DiDi, and (3) a Section 20(a) claim against Cheng and Liu as control persons.  Dkt. No. 158.

H.     Following the entry of the May 22, 2024 protective order and the May 29, 2024 scheduling order, counsel for Plaintiffs and Defendants began to engage in extensive fact and expert discovery, which continued until the Parties reached an agreement in principle to settle the Action on August 12, 2025.  In total, during the approximately fourteen months of discovery, Plaintiffs propounded eight sets of Requests for Production of Documents, four sets of written Interrogatories, and one set of written Requests for Admission upon DiDi and the Individual Defendants.  Plaintiffs also propounded five sets of Requests for Production of Documents and three sets of written Interrogatories on the Underwriter Defendants.  In addition, Plaintiffs received one set of Requests for Production of Documents and eight sets of written Interrogatories from Defendants.  Finally, Plaintiffs served four third-party subpoenas for production of documents on various third parties, including IPO counsel for both DiDi and the Underwriter Defendants, the employer of an Individual Defendant, and DiDi's public relations firm.

I.      Over the course of discovery, Plaintiffs' Counsel reviewed and analyzed more than 2.7 million pages of documents produced by Defendants and third parties.  Between October 2024

and August 2025, Plaintiffs' Counsel took fourteen depositions of Defendants, their employees, and experts, and defended depositions of all five plaintiffs and of two of Plaintiffs' experts, with most of the depositions taking place in Hong Kong over the course of three separate trips. The depositions of DiDi's representatives and employees were conducted in Mandarin Chinese, and in some cases, took place over two days or were conducted over extended hours, to allow for interpretation time. This discovery was necessary in order to achieve this Settlement.

J.     The Parties also engaged in extensive discovery related motion practice in this Action. Between September 9, 2024, and July 30, 2025, Plaintiffs filed fifteen motions to compel seeking deposition testimony, document production and interrogatory responses withheld on the basis of Chinese blocking statutes, and contesting document search terms, the scope of document production, and attorney-client privilege designations. Dkt. Nos. 199, 203, 219, 230, 243, 244, 286, 314, 370, 384, 420, 429, 462, 478, 495. All of these motions to compel were fully briefed, including many with replies and sur-replies. Plaintiffs also moved for reconsideration of an order on a motion to compel responses to interrogatories. Dkt. No. 338. In support of these motions to compel, Plaintiffs retained three experts on Chinese law to testify on various issues related to Chinese laws and regulations. In addition, in response to the Court's January 22, 2025, order granting Plaintiffs' motion to compel deposition testimony (Dkt. No 276), on February 12, 2025, DiDi filed a motion for certificate of appealability (Dkt. No. 292), which Plaintiffs opposed on February 26, 2025. Dkt. No. 306. On March 17, 2025, the Court issued an opinion denying DiDi's Motion. Dkt. No. 329. Plaintiffs also responded to two motions for protective orders filed by Defendants. Dkt. Nos. 195, 457.

K.     On January 7, 2025, Plaintiffs filed a motion seeking to appoint named plaintiff Alaka Holdings, Ltd. as Lead Plaintiff, in place of former Lead Plaintiff Junhong Cao, who wished

to withdraw from the Action.  Dkt. No. 269.  On January 21, 2025, DiDi and certain Individual Defendants filed a response to Plaintiffs' motion.  Dkt. No. 275, and on January 23, 2025, the Court granted Plaintiffs' motion.  Dkt. No. 278.

L.      On January 6, 2025, Plaintiffs filed a motion seeking class certification.  Dkt. No. 261.  The Court referred the motion to Magistrate Judge Valerie Figueredo for a report and recommendation ("R&R").  Dkt. No. 280. Between January 21, 2025, and June 6, 2025, the Parties filed an opposition, a reply, and a sur-reply and a sur-sur-reply, with the extended briefing period allowing the Parties to conduct three expert depositions and exchange expert materials, all while fact discovery proceeded apace.  Dkt. Nos. 322, 355, 376, 400.  The Court held oral argument on Plaintiffs' class certification motion on June 27, 2025.  Dkt. No. 444.

M.      On July 7, 2025, Magistrate Judge Figueredo entered the R&R recommending the Court grant Plaintiffs' motion for class certification for their Securities Act claims under Sections 11, 12 and 15 in Counts IV, V and VI of the SAC, the Section 20(a) claim in Count III, and the Section 10(b) claim in Count I premised on a theory of scheme liability.  Dkt. No. 447.  The R&R further recommended the Court deny Plaintiffs' motion for class certification as to their remaining Exchange Act claims.  *Id.*  The R&R also recommended that all of the proposed class representatives be appointed class representatives and that the Rosen Law Firm be appointed as Class Counsel. *Id.*

N.      On July 21, 2025, DiDi filed an objection to the R&R, challenging the Court's report and recommendation to certify Plaintiffs' scheme liability claims.  Dkt. No. 464.  On August 4, 2025, Plaintiffs filed their response to Defendants' objection to the R&R (Dkt. No. 533) and on August 13, 2025, the Court issued a memorandum opinion rejecting DiDi's objection, adopting

Magistrate Judge Figueredo's recommendations in the R&R, and ordering that Plaintiffs' motion for class certification be granted in part, consistent with the R&R. Dkt. No. 549.

O.    In the spring of 2025, while the Parties continued fact discovery and briefing class certification, DiDi and Plaintiffs agreed to participate in a private mediation. The Parties selected former United States District Court Judge Layn R. Phillips to serve as mediator, and the mediation took place on April 22, 2025. In advance of that session, DiDi and Plaintiffs exchanged, and provided to Judge Phillips, detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The session ended without an agreement to settle, and the Parties continued with discovery and class-certification briefing.

P.    In the midst of the Parties' July-August 2025 deposition session in Hong Kong, with eight depositions conducted over the course of two weeks and thirteen more depositions planned for the following three weeks, DiDi and Plaintiffs continued to discuss a potential settlement. With the continued aid of Judge Phillips as mediator, and after extensive negotiations, DiDi and Plaintiffs ultimately agreed to settle this Action for a cash payment of seven hundred and forty million dollars (US$740,000,000.00).

Q.    After substantial further negotiations, the Parties' agreement in principle to settle the Action was memorialized in a term sheet dated August 12, 2025 (the "Term Sheet"). The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all Released Plaintiffs' Claims as against the Defendants' Releasees in return for a cash payment by DiDi of US$740,000,000.00 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplates the execution of a customary "long-form" stipulation and agreement of settlement and related papers consistent with the Term Sheet.

R.     This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties.  Upon execution, the Stipulation shall supersede and replace the Term Sheet.

S.     Based upon their investigation, prosecution and mediation of the case, Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Plaintiffs and the other members of the Class, and in their best interests. Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the claims that were asserted or could have been asserted in the Action pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the other members of the Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

T.     This Stipulation constitutes a compromise of matters that are in dispute between the Parties.  Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further litigation.  Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of Defendants' Releasees with respect to any claim or allegation of any fault or liability or wrongdoing or damages whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted.  Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity

in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

U.      Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Plaintiffs (individually and on behalf of all other members of the Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against Defendants' Releasees and all Released Defendants' Claims as against Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## **DEFINITIONS**

1.      As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)      "Action" means the consolidated securities class action in the matter styled *In re DiDi Global Inc. Securities Litigation*, Case No. 1:21-cv-05807-LAK-VF (S.D.N.Y.).

(b)      "Alternate Judgment" means a form of final judgment that may be entered by the Court in a form other than the form of Judgment provided for in this Stipulation and which judgment does not result in any Party terminating the Settlement.

(c)    "Authorized Claimant" means a Class Member who submits a valid Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

(d)    "Barred Claims" means (i) any claim for contribution or indemnity (whether by contract, by operation of law or equitable principles, or based on any other source) arising out of or related to the Released Claims in the Action, or (ii) any other claim of any type, whether arising under state, federal, common, or foreign law, for which the injury claimed is that person's or entity's actual or threatened liability to Plaintiff and/or members of the Class arising out of or related to the Released Claims, provided that (a) Barred Claims shall not include claims that arise out of or relate to a cause of action that has been or may be asserted by any person or entity that submits a Request for Exclusion from the Class that is accepted by the Court; and (b) Barred Claims shall not include claims that arise out of or relate to, and nothing in the Bar Order, (defined *infra*, ¶ 33), shall impact, affect, release or alter the rights and obligations under the terms of any written agreement among any of the Defendants' Releasees, including all rights and obligations of indemnity between and among Defendants which rights are specifically preserved.

(e)    "Claims" means any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, costs, sanctions, judgments, decrees, matters, issues and/or controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist (including, but not limited to, any claims arising under

10

federal, state or foreign law, common law, bankruptcy law, statute, rule, or regulation relating to alleged fraud, breach of any duty, negligence, fraudulent conveyance, avoidance, violations of the Securities Act of 1933, as amended and rules promulgated thereunder, violations of the Securities Exchange Act of 1934, as amended and rules promulgated thereunder, violations of other federal securities laws, or otherwise), whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental, or of any other type or in any other capacity.

(f)     "Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund.

(g)     "Claimant" means a person or entity who or that submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

(h)     "Claims Administrator" means Strategic Claims Services, the firm retained by Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

(i)     "Class" means the Court-certified class consisting of all persons and/or entities that purchased DiDi American Depositary Shares, during the period June 30, 2021 through July 21, 2021, inclusive.  Excluded from the Class are (a) all present and former officers and directors of DiDi, all Defendants, all underwriters in the IPO, Softbank Group, Corp., Uber Technologies, Inc, Alibaba Group Holding Limited, Tencent Holdings Limited, Boyu Capital and at all relevant times; such excluded persons' affiliates, subsidiaries, members of such excluded persons' immediate families and their legal representatives, heirs, successors, or assigns and (b)

any entity that any Defendant, or any excluded person under (a) controlled or has or had a majority ownership interest.  Also excluded from the Class is any Person who timely and validly requests exclusion from the Class.

(j)    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(k)    "Class Member(s)" means each person and entity who or that is a member of the Class.

(l)    "Class Period" means the period from June 30, 2021, through July 21, 2021, both dates inclusive.

(m)    "Court" means the United States District Court for the Southern District of New York.

(n)    "Defendants" means, collectively, DiDi, the Individual Defendants, and the Underwriter Defendants.

(o)    "Defendants' Counsel" means collectively Skadden, Arps, Slate, Meagher & Flom LLP, Quinn Emanuel Urquhart & Sullivan, LLP, O'Melveny & Myers LLP, Wilson Sonsini Goodrich & Rosati, P.C., Sullivan & Cromwell LLP, Simpson Thacher & Bartlett LLP, Gibson, Dunn & Crutcher LLP.

(p)    "Defendants' Releasees" means (A) DiDi, its past, present and future, direct or indirect, parent entities, associates, affiliates, and subsidiaries, each and all of their respective past, present, and future directors, officers, partners, stockholders, predecessors, successors and employees, and in their capacity as such, each and all of their underwriters, advisors, attorneys, auditors, consultants, trustees, insurers, co-insurers, reinsurers, representatives, and assigns; (B)

the Individual Defendants and their respective present, past and future spouses, parents, siblings, children, grandparents, and grandchildren, the present, past and future spouses of their respective parents, siblings and children, and the present, past and future parents and siblings of their respective spouses, including step and adoptive relationships; (C) the Underwriter Defendants and the other underwriters in the IPO (i.e., China Renaissance Securities (Hong Kong) Limited, BOCI Asia Limited, BOCOM International Securities Limited, CCB International Capital Limited, China International Capital Corporation Hong Kong Securities Limited, CLSA Limited, CMB International Capital Limited, Futu Inc., Guotai Junan Securities (Hong Kong) Limited, ICBC International Securities Limited, and Tiger Brokers (NZ) Limited, (collectively the "Other Underwriters")), and each of their past, present and future, direct or indirect, parent entities, associates, affiliates, and subsidiaries, each and all of their respective past, present, and future directors, officers, partners, stockholders, predecessors, successors and employees, and in their capacity as such; (D) any and all persons, firms, trusts, corporations, and other entities in which any of the Defendants or any past, present, and future directors or officers of DiDi has a financial interest or was a sponsor, founder, settler or creator of the entity, and, in their capacity as such, any and all officers, directors, employees, trustees, beneficiaries, settlers, creators, attorneys, consultants, agents, or representatives of any such person, firm, trust, corporation or other entity; (E) Softbank Group, Corp., Alibaba Group Holding Limited, Tencent Holdings Limited, Boyu Capital, and their respective past, present and future, direct or indirect, parent entities, associates, affiliates, and subsidiaries, each and all of their respective past, present, and future directors, officers, partners, stockholders, predecessors, successors and employees, and in their capacity as such, each and all of their underwriters, advisors, attorneys, auditors, consultants, trustees, insurers, co-insurers, reinsurers, representatives, and assigns; and (F) in their capacity as such, the

legal representatives, heirs, executors, administrators, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns of any of the foregoing.

(q)    "DiDi" means DiDi Global Inc.

(r)    "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 35 of this Stipulation have been met and have occurred or have been waived.

(s)    "Escrow Account" means an interest-bearing account established by the Escrow Agent at The Huntington National Bank, the financial institution into which the Settlement Amount shall be transferred and held, subject to the Court's supervisory authority and under the control of the Escrow Agent.

(t)    "Escrow Agent" means The Huntington National Bank.

(u)    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(v)    "Final," with respect to the Judgment or, if applicable, the Alternate Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) calendar days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any

appeal or proceeding seeking subsequent judicial review pertaining solely to an order with respect to (i) attorneys' fees, costs or expenses, or (ii) the Plan of Allocation of Settlement proceeds (as submitted or subsequently modified) shall not in any way delay or preclude a judgment from becoming Final.

(w)    "Immediate Family" means present, past and future children, parents, spouses, siblings, grandparents, grandchildren, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law, all of which include step and adoptive relationships.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(x)    "Individual Defendants" means, collectively, Will Wei Cheng, Jean Qing Liu, Stephen Jinghsi Zhu, Alan Yue Zhuo, Zhiyi Chen, Martin Chi Ping Lau, Daniel Yong Zhang, Kentaro Matsui, and Adrian Perica.

(y)    "Judgment" means the judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(z)    "Lead Counsel" means The Rosen Law Firm, P.A.

(aa)    "Litigation Expenses" means costs and expenses incurred by Plaintiffs and Plaintiffs' Counsel in connection with commencing, prosecuting and settling the Action (which may include reimbursement of time and expenses awarded by the Court to Plaintiffs for serving as Class Representatives on behalf of the Class), for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

(bb)    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

(cc)   "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be disseminated to Class Members in the manner ordered by the Court.

(dd)   "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Class; and (ii) administering the Settlement, including but not limited to processing Submitted Claims, as well as the costs, fees and expenses incurred in connection with the Escrow Account.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing or of emailing the Notice and Claim Form, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the Submitted Claims), and the fees, if any, of the Escrow Agent.

(ee)   "Parties" means Defendants and Plaintiffs, on behalf of themselves and the Class.

(ff)   "Plaintiffs" means, collectively, Alaka Holdings, Ltd., Shereen El-Nahas, Bosco Wang, Daniil Alimov, and Njal Larson.

(gg)   "Plaintiffs' Counsel" means Lead Counsel and Glancy Prongay & Murray LLP who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Class in the Action.

(hh)   "Plaintiffs' Releasees" means Plaintiffs (defined above), all other plaintiffs in the Action, their respective attorneys, and all other members of the Class, and each of their

respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, current and former officers and directors, employees, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates.

(ii)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

(jj)    " Notice Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court approving the Notice and directing that notice of the Settlement be provided to the Class.

(kk)    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended.

(ll)    "Released Claims" means all Released Plaintiffs' Claims and Released Defendants' Claims.

(mm)    "Released Defendants' Claims" means any and all Claims and causes of action of every nature and description, whether known or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution or settlement of the claims asserted in Action.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

(nn)    "Released Plaintiffs' Claims" means any and all Claims, including Unknown Claims, that have been, could have been, or in the future can or might be asserted in any federal, state or foreign court, tribunal, forum or proceeding by or on behalf of any of the Plaintiff Releasees against any one or more of the Defendants' Releasees, regardless of whether any such Defendants' Releasee was named, served with process, or appeared in the Action, which directly

or indirectly arise out of or relate to or are in consequence of (i) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action, and (ii) arise out of, are based upon, or relate to in any way the purchase, acquisition, holding, sale, or disposition of any DiDi ADSs during the Class Period.  Released Plaintiffs' Claims do not include: (i) any claims to enforce the terms of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

(oo)    "Releasee(s)" means each and any of the Defendants' Releasee(s) and each and any of the Plaintiffs' Releasee(s).

(pp)    "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(qq)    "Settlement" means the settlement between Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

(rr)    "Settlement Amount" means seven hundred and forty million U.S. dollars (US$740,000,000.00).

(ss)    "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(tt)    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(uu)    "Submitted Claim" means a Claim Form that has been submitted by a Claimant to the Claims Administrator.

(vv)    "Summary Notice" means the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of

Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Notice Approval Order.

(ww) "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(xx) "Underwriter Defendants" means, collectively, Goldman Sachs (Asia) LLC, J.P. Morgan Securities LLC, Mizuho Securities USA LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., BofA Securities, Inc., China Renaissance Securities (US) Inc., Citigroup Global Markets Inc., HSBC Securities (USA) Inc., and UBS Securities LLC.

(yy) "Unknown Claims" means any Released Claims which any Plaintiff, any other Class member, or each of the Defendants or any of the other Releasees, does not know or suspect to exist in his, her or its favor at the time of the release which, if known by him, her or it, might have affected his, her or its settlement with and release of any of the other Releasees, or might have affected his, her or its decision not to opt-out or object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, the Parties shall expressly waive, and each of the other Class Members and Releasees shall be deemed to have waived, and by operation of the Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR

HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties shall expressly waive, and each of the other Class Members and Releasees shall be deemed to have, and by operation of the Final judgment shall have, expressly waived, any and all provisions, rights and benefits conferred by any law of any state, territory, foreign country or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Plaintiffs, any other Class member, Defendants, and the Releasees may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Parties stipulate and agree that, upon the Effective Date of the Settlement, the Parties shall expressly waive, and each of the other Class Members and Releasees shall be deemed to have waived, and by operation of the Final Judgment shall have, fully, finally and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and each of the other Class Members and each of the other Releasees shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**CLASS SETTLEMENT**

2.      The Action is being settled as a class action based on the Class certified by the Court on August 13, 2025, (Dkt. No. 539).

**COURT APPROVAL OF THE NOTICE**

3.      Within twenty (20) calendar days of the execution of this Stipulation, Plaintiffs will move for Court approval of the Notice, and the scheduling of a hearing for consideration of final approval of the Settlement.  Concurrently with the motion for approval of the Notice, Plaintiffs shall apply to the Court for entry of the Notice Approval Order, substantially in the form attached hereto as Exhibit A. Defendants agree to support Plaintiffs' motions for approval of Notice and final approval of the Settlement.

**RELEASE OF CLAIMS**

4.      The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action against Defendants; and (ii) the Releases provided for herein.

5.      Pursuant to the Judgment, or any Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs' Releasees (regardless of whether any such person or entity ever seeks or obtains by any means, including without limitation by submitting a Claim Form, any disbursement from the Settlement) shall be deemed to have, and by operation of the Final judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Plaintiffs' Claims against Defendants' Releasees, and shall have covenanted not to sue Defendants' Releasees with respect to all such Released Plaintiffs' Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Plaintiffs' Claim, either directly, representatively, derivatively, or in any other capacity, against any of Defendants'

Releasees.  This release shall not apply to any person or entity who or that submits a request for exclusion from the Class that is accepted by the Court.

6.      Pursuant to the Judgment, or any Alternate Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and each of their respective heirs, executors, administrators, predecessors, successors, assigns, parents, subsidiaries, affiliates, current and former officers and directors, agents, fiduciaries, beneficiaries or legal representatives, in their capacities as such, and any other person or entity legally entitled to bring Released Defendants' Claims on behalf of any Defendant, in that capacity, shall be deemed to have, and by operation of the Final judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against Plaintiffs' Releasees and shall have covenanted not to sue Plaintiffs' Releasees with respect to all such Released Defendants' Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Defendants' Claim, either directly, representatively, derivatively, or in any other capacity, against any of Plaintiffs' Releasees.  This release shall not apply to any person or entity who or that submits a request for exclusion from the Class that is accepted by the Court.

7.      Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternate Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or any Alternate Judgment, if applicable.

**THE SETTLEMENT CONSIDERATION**

8.      In consideration of the settlement of the Released Plaintiffs' Claims against Defendants' Releasees, DiDi, on behalf of all Defendants' Releasees, shall cause to be paid the

Settlement Amount into the Escrow Account no later than thirty (30) calendar days after the date

of entry by the Court of an order approving the Notice, provided that, on or before the day of the

Notice Approval Order, Lead Counsel provides DiDi's Counsel with the information necessary to

effectuate a transfer of funds to the Escrow Account, including a signed Internal Revenue Service

Form W-9, customary wire instructions for an account held by the Escrow Agent (name on the

account and accountholder address, American Bankers Association routing number, bank name,

account number), and a contact person from the Escrow Agent with a phone number to verbally

verify the payment instructions. The Settlement Amount is an all-in settlement number, meaning

that it includes all attorneys' fees, administrative costs, expenses, Class Member benefits, class

representative awards, and costs of any kind associated with the resolution of this Action. No

Defendant other than DiDi shall pay, or be liable to pay, any part of the Settlement Amount. Under

no circumstances shall DiDi be required to pay more than the Settlement Amount pursuant to this

Stipulation.

## USE OF SETTLEMENT FUND

9.      The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and

Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys'

fees awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net

Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 19-31 below. At

such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund

is not cost-effective, the remaining balance shall be contributed to Memorial Sloan Kettering

Cancer Center.

10.     Except as provided herein or pursuant to orders of the Court, the Net Settlement

Fund shall remain in the Escrow Account until the Effective Date. All funds held by the Escrow

Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation or (b) secured by instruments backed by the full faith and credit of the United States Government.  The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.  Defendants and Defendants' Releasees shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent or for the actions of the Escrow Agent or for any transaction executed by the Escrow Agent.

11.    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Defendants' Releasees shall not have any liability or responsibility whatsoever for any such Taxes or for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions

of this paragraph 11. Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  Defendants' Releasees shall not have any liability or responsibility whatsoever for any such Taxes.  Defendants' Releasees shall have no responsibility or liability whatsoever for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

13.    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

14.    The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement.  Upon the occurrence of the Effective Date, DiDi shall not have any right to the return of the Settlement Fund

or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

15.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, the Escrow Agent may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all reasonable and necessary Notice and Administration Costs paid or incurred, including any related fees and Taxes, shall not be returned or repaid to DiDi.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

16.     Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid by the Escrow Agent from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Plaintiffs' costs and expenses directly related to their representation of the Class, to be paid by the Escrow Agent from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Plaintiffs other than what is set forth in this Stipulation. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely by the Escrow Agent from the Settlement Fund.  Defendants' Releasees shall not have any liability or responsibility whatsoever for any such attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.

Neither Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

17.    The attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid by the Escrow Agent to Lead Counsel within three (3) business days following final approval of the Settlement and the Court's entry of an order awarding fees and expenses (the "Fee Award"), notwithstanding any objections to or appeals of the Settlement, the Fee Award, the Plan of Allocation, or that otherwise may be made or taken.  Should an appellate court later reverse the Court's final approval of the Settlement, Plaintiffs' Counsel shall be jointly and severally obligated to repay all such attorneys' fees and expenses awarded.  If the Settlement is terminated or if, as a result of any appeal or further proceedings, the Fee Award is reduced or reversed, Plaintiffs' Counsel shall repay fees and expenses accordingly, including accrued interest at the same net rate as is earned by the Settlement Fund.

18.    Lead Counsel shall, in its sole discretion, allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner that it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.  Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.

## NOTICE AND SETTLEMENT ADMINISTRATION

19.    As part of the Notice Approval Order, Plaintiffs shall seek appointment of the Claims Administrator.  The Claims Administrator shall administer the Settlement, including but not limited to the processes of providing notice to the Class and receiving, reviewing and approving or denying Submitted Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Other than DiDi's obligation to provide or cause to be provided records as provided in

¶ 20 below, none of Defendants' Releasees shall have any involvement in or any responsibility, authority or liability whatsoever for the selection of the Claims Administrator, providing notice to the Class, the Plan of Allocation, the administration of the Settlement, the processing of Submitted Claims, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Plaintiffs, any other Class Members or Plaintiffs' Counsel in connection with the foregoing.

20.    In accordance with the terms of the Notice Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim and Release Form ("Claim Form") and/or email the link to the Notice and Claim Form to those members of the Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Notice Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Class, within ten (10) calendar days of the date of entry of the Notice Approval Order, DiDi shall provide or cause to be provided to the Claims Administrator in electronic format such as PDF or Excel (at no cost to the Settlement Fund, Plaintiffs' Counsel or the Claims Administrator) any ADS holder lists then in its possession or in the possession of its transfer agent(s), consisting of names, addresses and, if available, email addresses, listing purchasers of DiDi ADSs during the Class Period.

21.    The Claims Administrator shall determine whether each Submitted Claim is valid, in whole or part, and, for each valid Submitted Claim, determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of

Allocation set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

22.    The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation.  Defendants' Releasees will take no position on the Plan of Allocation or any other plan of allocation.  No Defendants' Releasee shall have any involvement with or liability, obligation or responsibility whatsoever for the application or implementation of the Plan of Allocation.

23.    Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and this Settlement, including the terms of the Judgment or, the Alternate Judgment, if applicable, to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

24.    Any Class Member seeking to exclude himself, herself or itself from the Class must timely submit records of all of his, her or its transactions in DiDi ADSs during the Class Period sufficient to calculate the amount of his, her or its losses as calculated under the Plan of Allocation.

25.    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendants' Releasee shall be entitled to contest or object to any Claim Form, or any decision of

the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Submitted Claim.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

26.    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, the identity of all beneficial owners and their percentage interests in any entity submitting a Claim Form, and such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, deem necessary and acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Notice Approval Order and specified in the Notice.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or any Alternate Judgment, if applicable. Provided that it is submitted online on the settlement website or mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when submitted online or postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions set forth in the Notice.  In all other cases, the Claim Form shall

be deemed to have been submitted on the date on which it was actually received by the Claims Administrator;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Submitted Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary.    In determining whether a Claimant is an Authorized Claimant, the term "controlled" as used in the definition of the Class in ¶1(i) shall not exclude investment management vehicles, asset managed accounts, separately managed accounts, collective investment trusts, pooled investment funds (such as mutual funds, retirement accounts, etc.), or wealth management accounts, where an IPO underwriter or one of its affiliates provided or provides investment management or investment advisory or wealth management services. The Underwriters' short-covering activity and all "stabilization transactions," during the Class Period shall be excluded from the Class.    The Claims Administrator's review of and decisions regarding Submitted Claims by any such vehicle, fund, account, or trust shall be subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)    Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Submitted Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, either by mail or by email, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.    The Claims Administrator shall notify, in a timely fashion and in writing, either by mail or by email, all Claimants whose Submitted Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose

31

Submitted Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Submitted Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing or emailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Submitted Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

27.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Submitted Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Submitted Claim.  No discovery whatsoever shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

28.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Submitted Claims; (b) approving payment of any Notice and Administration Costs associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

29.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Submitted Claims are not approved by the

Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

30.    No person or entity shall have any Claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any other agent designated by Lead Counsel, any Defendants' Releasee, or any of their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.  Plaintiffs and Defendants, and their respective counsel, and Plaintiffs' damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Submitted Claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

31.    All proceedings with respect to the administration, processing and determination of Submitted Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Submitted Claims, shall be subject to the jurisdiction of the Court.  ALL CLASS MEMBERS AND PARTIES TO THIS SETTLEMENT EXPRESSLY WAIVE TRIAL BY JURY (TO THE EXTENT ANY SUCH RIGHT MAY EXIST)

AND ANY RIGHT OF APPEAL OR REVIEW WITH RESPECT TO DETERMINATIONS RELATED TO SUBMITTED CLAIMS.

## **TERMS OF THE JUDGMENT**

32.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

33.     The Judgment, or Alternate Judgment if applicable, shall contain a bar order ("Bar Order") that, upon the Effective Date: (1) permanently bars, enjoins, and restrains any person or entity from commencing, maintaining, prosecuting, or asserting any Barred Claims against any of the Defendants' Releasees, whether as claims, cross-claims, counterclaims, third-party claims, or otherwise, and whether asserted in the Action or any other proceeding, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere; and (2) permanently bars, enjoins, and restrains the Defendants from commencing, maintaining, prosecuting, or asserting any Barred Claims against any other person or entity, whether as claims, cross-claims, counterclaims, third-party claims, or otherwise, and whether asserted in the Action or any other proceeding, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

34.     The Bar Order shall also provide that any final verdict or judgment in any action other than this Action that may be obtained by or on behalf of the Class or a Class Member against any person or entity subject to the Bar Order based upon, arising out of, relating to, or in connection with in any way in part or in whole any Released Claim shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of Defendants for common damages;

or (b) the amount paid by or on behalf of Defendants to the Class or Class Member for common damages.

**CONDITIONS OF SETTLEMENT AND EFFECT OF**
**DISAPPROVAL, CANCELLATION OR TERMINATION**

35.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     the Court has entered the Notice Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

(b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

(c)     Defendants have not validly exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 39 below);

(d)     Plaintiffs have not validly exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(e)     the Court has approved the Settlement as described herein, following the period set forth for notice under the Class Action Fairness Act ("CAFA"), and following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment or an Alternate Judgment; and the Judgment or the Alternate Judgment, if applicable, has become Final.

36.     Upon the occurrence of all of the events referenced in ¶ 35 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

37.     If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

(b)     Plaintiffs and Defendants shall revert to their respective positions in the Action as of August 11, 2025.

(c)     The terms and provisions of this Stipulation, with the exception of this ¶ 37 and ¶¶ 15, 17, 43, and 64, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternate Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)     Within ten (10) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 17 above), less any reasonable and necessary Notice and Administration Costs actually incurred, paid or payable and less any Taxes paid, due or owing shall be refunded by the Escrow Agent to DiDi.

38.     It is further stipulated and agreed that Plaintiffs, provided they unanimously agree, and DiDi shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within thirty (30) calendar days of: (a) the Court's refusal to enter the Notice Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material

part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; or (d) the date on which the Judgment or Alternate Judgment, if applicable, is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternate Judgment, if applicable, and shall not be grounds for termination of the Settlement.

39.     In addition to the grounds set forth in ¶ 38 above, DiDi shall have the unilateral right to terminate the Settlement in the event that Class Members timely and validly requesting exclusion from the Class meet the conditions set forth in DiDi's confidential supplemental agreement with Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement (the "Opt-Out Threshold"). The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Plaintiffs and Defendants concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* or file it under seal and request that the Court afford it confidential treatment.

40.     If DiDi (or its designee(s) or successor(s)) does not pay or cause to be paid the Settlement Amount within the time specified in paragraph 8 of this Stipulation, then Lead Counsel, in its sole discretion, may elect, at any time prior to the Court entering the Judgment: (i) to terminate the Settlement by providing written notice to Defendants' Counsel; or (ii) to enforce the

terms of the Settlement and this Stipulation and seek entry of a judgment against DiDi effecting the terms in this Stipulation.

## <u>NO RELATED SETTLEMENT CONTINGENCIES</u>:

41.     To the extent that DiDi or any of the other Defendants enter(s) into any agreement to resolve any future or existing actions or investigations, or proceedings, whether with a private person or entity, with the U.S. Securities & Exchange Commission, or any other regulator or government entity in any country relating to the same conduct and/or injury as this Action ("Related Action"), DiDi and the other Defendants agree they shall not (i) condition the amount of any settlement, payment, penalty, fine or restitution in such Related Action on the approval of this Settlement or the amount of this Settlement; or (ii) create an offset of this Settlement against any payments in such Related Action.  For the avoidance of doubt, Defendants agree they shall not make any settlement or payment in any Related Action contingent on the approval of this Settlement or the amount of this Settlement.  The purpose of this provision is to avoid a similar result as the denial of final approval of the class action settlement in *In re Vanguard Chester Funds Litigation*, No. 2:22-cv-00955-JFM (E.D. Pa.), that was caused by a provision defendant Vanguard put in its settlement agreement with the SEC by which the SEC Fair Fund Settlement would be increased if the Court denied approval of the class action Settlement.

42.     This Settlement and the corresponding Settlement Amount are not contingent upon the settlement or dismissal of the putative class action *Dina Horowitz v. DiDi Global Inc. et al,* Index #656953/2021 filed in Supreme Court for New York County ("*Horowitz*") and/or any other class action or other action or proceeding, including derivative actions concerning the same conduct and/or injury as this Action.  No amount of this Settlement Amount shall be allocated to the settlement of any other action or proceeding; <u>provided, however</u>, that the Bar Order entered in the Judgment shall prohibit *Horowitz* from proceeding as a class action and, to the extent that such

Bar Order is not entered in the Judgment in this Action, Defendants that are parties to *Horowitz* shall have the right to terminate this Settlement.

## **NO ADMISSION OF WRONGDOING**

43.      Neither the Term Sheet executed by the Parties on August 12, 2025, this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)      shall be offered against any of Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any Claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of Defendants' Releasees or in any way referred to for any other reason as against any of Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)      shall be offered against any of Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of Plaintiffs' Releasees that any of their claims are without merit, that any of Defendants' Releasees had meritorious defenses, or that damages recoverable under the SAC would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any

kind, or in any way referred to for any other reason as against any of Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## NOTICE AS REQUIRED BY CAFA

44.    No later than ten (10) calendar days following the filing of this Stipulation with the Court, DiDi, on behalf of all Defendants, shall serve, or cause to be served, the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), including all costs and expenses associated with such notices.   No later than twenty-one (21) calendar days following the filing of this Stipulation with the Court, DiDi shall file with the Court an affidavit or declaration regarding Defendants' compliance with the CAFA notice requirements.  DiDi shall be solely responsible for any costs incurred in serving or causing the service of CAFA notice, and Plaintiffs, the Class, and the Settlement Fund shall bear no responsibility for any such costs.

## MISCELLANEOUS PROVISIONS

45.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

46.    In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs in their sole discretion, Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternate Judgment, if applicable, entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the releases and Judgment, or Alternate Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 37 above and any cash amounts remaining in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 37.

47.    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs and any other Class Members against all of Defendants' Releasees with respect to the Released Plaintiffs' Claims. Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that this Action was frivolous, or was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, or other court rule or statute, relating to the institution, prosecution, defense, or settlement of this Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process overseen by former U.S. District Court Judge Layn

R. Phillips of Phillips ADR, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses. The Parties agree to act in good faith and take all reasonably necessary actions to effectuate the terms of the Settlement.

48.    There will be no public announcements regarding the Settlement until DiDi has announced or disclosed it. Plaintiffs and Plaintiffs' Counsel and Defendants and Defendants' Counsel shall not make any accusations of wrongful or actionable conduct or bad faith by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

49.    Plaintiffs and Plaintiffs' Counsel agree that they continue to be bound by the terms of the "Stipulation and Protective Order Regarding Confidential Information and Highly Confidential Information," entered on May 22, 2024 in the Action (Dkt. No. 190), and further agree that within sixty (60) days from the Effective Date, they will "identify and destroy all[] Confidential Discovery Material and Highly Confidential Discovery Material, as applicable, including all copies thereof and material derived therefrom" (including, but not limited to deposition transcripts, exhibits, and video and audio recordings) and that each Plaintiff and Plaintiffs' Counsel firm shall certify such destruction in writing to Defendants' counsel by the aforementioned date.

50.    The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of Plaintiffs and Defendants (or their successors-in-interest).

51.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

52.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Class Members.

53.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

54.    This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Plaintiffs and Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

55.    This Stipulation may be executed in one or more counterparts, including by signature, or by a .pdf/.tif image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

56.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate or reorganize.

57.    The construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

58.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

59.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

60.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

61.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Notice Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

62.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Plaintiffs or Lead Counsel:          The Rosen Law Firm, P.A.
                                           Attn:   Laurence Rosen, Esq.
                                                   Phillip Kim, Esq.
                                           275 Madison Avenue, 40th Floor
                                           New York, NY 10016
                                           Telephone:  (212) 686-1060
                                           Email: lrosen@rosenlegal.com
                                                  philkim@rosenlegal.com

                                           *Lead Counsel for Plaintiffs and the Class*

If to Defendants:                                Skadden, Arps, Slate, Meagher & Flom LLP
                                                 Attn:  Robert Fumerton, Esq.
                                                        Michael Griffin, Esq.
                                                 One Manhattan West
                                                 New York, New York 10001
                                                 Telephone:  (212) 735-3902
                                                 Email: robert.fumerton@skadden.com
                                                        michael.griffin@skadden.com

                                                                  -and-

                                                 Quinn Emanuel Urquhart & Sullivan, LLP
                                                 Attn:  Corey Worcester
                                                        Renita Sharma
                                                 51 Madison Avenue, 22nd Floor
                                                 New York, New York 10038
                                                 Telephone: (212) 849-7000
                                                 Email: coreyworcester@quinnemanuel.com
                                                        renitasharma@quinnemanuel.com

                                                 *Counsel for Defendants DiDi Global Inc.,
                                                 Will Wei Cheng, Jean Qing Liu, Stephen
                                                 Jingshi Zhu, Alan Yue Zhuo, and Adrian
                                                 Perica*

                                                 O'Melveny & Myers LLP
                                                 Attn:  Jonathan Rosenberg
                                                        Abby F. Rudzin
                                                 1301 Avenue of the Americas, Suite 1700
                                                 New York, NY 10019
                                                 Telephone:  (212) 326-2000
                                                 Email: jrosenberg@omm.com
                                                        arudzin@omm.com

                                                 *Counsel for Defendants Goldman Sachs (Asia)
                                                 L.L.C.; Morgan Stanley & Co. LLC; J.P.
                                                 Morgan Securities LLC; BofA Securities, Inc.;
                                                 Barclays Capital Inc.; Citigroup Global
                                                 Markets Inc.; HSBC Securities (USA) Inc.; UBS
                                                 Securities LLC; Mizuho Securities USA
                                                   LLC; and China Renaissance Securities (US)
                                                   Inc.*

Wilson Sonsini Goodrich & Rosati, P.C.
Attn: Sheryl Shapiro Bassin
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone:  (212) 999-5800
Email: SBassin@wsgr.com

      - and –

Wilson Sonsini Goodrich & Rosati, P.C.
Attn: Ignacio E. Salceda
650 Page Mill Road
Palo Alto, California 94304
Tel: (650) 493-9300
Fax: (650) 493-6811
ISalceda@wsgr.com

*Counsel for Defendant Zhiyi Chen*

Simpson Thacher & Bartlett LLP
Attn: Stephen P. Blake
2475 Hanover Street
Palo Alto, CA 94304
Telephone:  (650) 251-5000
Email:  sblake@stblaw.com
        bryan.jin@stblaw.com

*Counsel for Defendant Daniel Yong Zhang*

Sullivan & Cromwell LLP
Attn:  Jeffrey T. Scott
        Emily Grasso
125 Broad Street
New York, New York 10004-2498
Telephone:  (212) 558-3082
Email: scottj@sullcrom.com
        grassoe@sullcrom.com

*Counsel for Defendant Kentaro Matsui*

Gibson, Dunn & Crutcher LLP
Attn: Matthew S. Kahn
One Embarcadero Center
Suite 2600
San Francisco, California 94111
Tel: (415) 393-8200
Fax: (415) 393-8306
mkahn@gibsondunn.com

- and –

Gibson, Dunn & Crutcher LLP
Attn: Michael D. Celio
       Kevin  J. White
310 University Avenue
Palo Alto, California 94301
Telephone: (650) 849-5300
Email: mcelio@gibsondunn.com
       kwhite@gibsondunn.com

*Counsel for Defendant Martin Chi Ping Lau*

Sullivan & Cromwell LLP
 Attn: Alexander J. Willscher
125 Broad Street
New York, New York 10004-2498
Telephone:  (212) 558-3082
Email: willschera@sullcrom.com

*Counsel for Defendant Adrian Perica*

63.    Except as otherwise provided herein, each Party shall bear its own costs.

64.    Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, and proceedings in connection with the Stipulation confidential.

65.    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement.

66.    If any of the dates or deadlines specified herein falls on a weekend or legal holiday,

the applicable date or deadline shall fall on the next business day.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed,

by their duly authorized attorneys, as of  December 9, 2025.

Laurence Rosen
Phillip Kim
THE ROSEN LAW FIRM, PA.
275 Madison Avenue, Fl. 40
New York, NY 10016
Tel: (212) 686-1060
lrosen@rosenlegal.com
philkim@rosenlegal.com

*Lead Counsel for Plaintiffs and the
Class*

Corey Worcester
Renita Sharma
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10038
Tel: (212) 849-7000
Fax: (212) 849-7100
coreyworcester@quinnemanuel.com
renitasharma@quinnemanuel.com

*Counsel for Defendants DiDi Global
Inc., Will Wei Cheng, Jean Qing Liu,
Stephen Jingshi Zhu, Alan Yue Zhuo,
and Adrian Perica*

Scott Musoff
Robert Fumerton
Michael Griffin
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel: (212) 735-3902
Fax: (212) 777-3902
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants DiDi Global
Inc., Will Wei Cheng, Jean Qing Liu,
Stephen Jingshi Zhu, Alan Yue Zhuo,
and Adrian Perica*

Jonathan Rosenberg
Abby F. Rudzin
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Tel: (212) 326-2000
jrosenberg@omm.com
arudzin@omm.com

*Counsel for Defendants Goldman Sachs
(Asia) L.L.C.; Morgan Stanley & Co.
LLC; J.P. Morgan Securities LLC; BofA
Securities, Inc.; Barclays Capital Inc.;
Citigroup Global
Markets Inc.; HSBC Securities (USA)
Inc.; UBS Securities LLC; Mizuho*

*Securities USA
LLC; and China Renaissance Securities
(US) Inc.*

*Sheryl Shapiro Bassin*

Sheryl Shapiro Bassin
WILSON SONSINI GOODRICH &
ROSATI, P.C.
31 West 52nd Street, Fifth Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
SBassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac
vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Tel: (650) 493-9300
Fax: (650) 493-6811
ISalceda@wsgr.com

*Counsel for Defendant Zhiyi Chen*

Stephen P. Blake
SIMPSON THACHER & BARTLETT
LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
sblake@stblaw.com
bryan.jin@stblaw.com

*Counsel for Defendant Daniel Yong
Zhang*

Alexander J. Willscher
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-3082
Fax:  (212) 291-9138
willschera@sullcrom.com

*Counsel for Defendant Adrian Perica*

*Securities USA*
*LLC; and China Renaissance Securities*
*(US) Inc.*

_____
Sheryl Shapiro Bassin
WILSON SONSINI GOODRICH &
ROSATI, P.C.
31 West 52nd Street, Fifth Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
SBassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Tel: (650) 493-9300
Fax: (650) 493-6811
ISalceda@wsgr.com

*Counsel for Defendant Zhiyi Chen*

_____
Stephen P. Blake
SIMPSON THACHER & BARTLETT
LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
sblake@stblaw.com
bryan.jin@stblaw.com

*Counsel for Defendant Daniel Yong*
*Zhang*

_____
Alexander J. Willscher
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-3082
Fax:  (212) 291-9138
willschera@sullcrom.com

*Counsel for Defendant Adrian Perica*

*Securities USA LLC; and China Renaissance Securities (US) Inc.*

---

Sheryl Shapiro Bassin
WILSON SONSINI GOODRICH &
ROSATI, P.C.
31 West 52nd Street, Fifth Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
SBassin@wsgr.com

Ignacio E. Salceda (admitted *pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Tel: (650) 493-9300
Fax: (650) 493-6811
ISalceda@wsgr.com

*Counsel for Defendant Zhiyi Chen*

---

Stephen P. Blake
SIMPSON THACHER & BARTLETT
LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
sblake@stblaw.com
bryan.jin@stblaw.com

*Counsel for Defendant Daniel Yong Zhang*

Alexander J. Willscher
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel: (212) 558-3082
Fax: (212) 291-9138
willschera@sullcrom.com

*Counsel for Defendant Adrian Perica*

Jeffrey T. Scott
Emily Grasso
SULLIVAN & CROMWELL LLP
 125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-3082
Fax:  (212) 291-9138
scottj@sullcrom.com
grassoe@sullcrom.com

*Counsel for Defendant Kentaro Matsui*

_____

Matthew S. Kahn
GIBSON, DUNN & CRUTCHER
LLP
One Embarcadero Center
Suite 2600
San Francisco, California 94111
Tel: (415) 393-8200
Fax: (415) 393-8306
mkahn@gibsondunn.com

Michael D. Celio (admitted *pro hac
vice*)
Kevin J. White
GIBSON, DUNN & CRUTCHER
LLP
310 University Avenue
Palo Alto, California 94301
Tel: (650) 849-5300
Fax: (650) 949-5333
mcelio@gibsondunn.com
kwhite@gibsondunn.com

*Counsel for Defendant Martin Chi
Ping Lau*

50

Jeffrey T. Scott
Emily Grasso
SULLIVAN & CROMWELL LLP
 125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-3082
Fax:  (212) 291-9138
scottj@sullcrom.com
grassoe@sullcrom.com

*Counsel for Defendant Kentaro Matsui*

Matthew S. Kahn
GIBSON, DUNN & CRUTCHER
LLP
One Embarcadero Center
Suite 2600
San Francisco, California 94111
Tel: (415) 393-8200
Fax: (415) 393-8306
mkahn@gibsondunn.com

Michael D. Celio (admitted *pro hac
vice*)
Kevin J. White
GIBSON, DUNN & CRUTCHER
LLP
310 University Avenue
Palo Alto, California 94301
Tel: (650) 849-5300
Fax: (650) 949-5333
mcelio@gibsondunn.com
kwhite@gibsondunn.com

*Counsel for Defendant Martin Chi
Ping Lau*